# Exhibit 2

Case 1:21-cv-00230-... Document 3 Filed 02/16/21 Page 1 of 1 PageID #: 93

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court for the District of Delaware on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| | 2/16/2021 | for the District of Delaware |

| PLAINTIFF | DEFENDANT |
|---|---|
| Kaneka Corporation | Designs For Health, Inc. and American River Nutrition LLC |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 7,145,044 | 12/5/2006 | Kaneka Corporation |
| 2 7,829,080 | 11/9/2010 | Kaneka Corporation |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director** **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director** **Copy 4—Case file copy**

AO 120 (Rev. 08/10)

| | |
|---|---|
| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court for the District of Delaware on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 20cv232-RGA | 2/18/2020 | for the District of Delaware |

| PLAINTIFF | DEFENDANT |
|---|---|
| KANEKA CORPORATION, A Japanese Corporation | GLANBIA NUTRITIONALS, INC., A Delaware Corporation<br><br>ANTHEM BIOSCIENCES PRIVATE LIMITED, An Indian Company |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 7,145,044 | 12/5/2006 | KANEKA CORPORATION, A Japanese Corporation |
| 2 7,829,080 | 11/9/2010 | KANEKA CORPORATION, A Japanese Corporation |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| see attached Notice of Voluntary Dismissal |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| John A. Cerino | [signature] | 3/16/2020 |

**Copy 1—Upon initiation of action, mail this copy to Director** **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director** **Copy 4—Case file copy**

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court for the District of Delaware on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED<br>2/18/2020 | U.S. DISTRICT COURT<br>for the District of Delaware |
|---|---|---|
| PLAINTIFF<br>KANEKA CORPORATION,<br>A Japanese Corporation | | DEFENDANT<br>GLANBIA NUTRITIONALS, INC., A Delaware Corporation<br>ANTHEM BIOSCIENCES PRIVATE LIMITED, An Indian Company |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 7,145,044 | 12/5/2006 | KANEKA CORPORATION, A Japanese Corporation |
| 2 7,829,080 | 11/9/2010 | KANEKA CORPORATION, A Japanese Corporation |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director** **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director** **Copy 4—Case file copy**

AO 120 (Rev. 08/10)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Eastern District of New York on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>16cv000271 SJF-AYS | DATE FILED<br>1/21/2016 | U.S. DISTRICT COURT<br>Eastern District of New York |
|---|---|---|
| PLAINTIFF<br>Kaneka Corporation | | DEFENDANT<br>Piping Rock Health Products, LLC. |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 US 7,829,080 B2 | 11/9/2010 | SEE ATTACHED COMPLAINT AND EXHIBITS. |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| DOUGLAS C. PALMER | Michael Shatinsky | 1/21/2016 |

**Copy 1—Upon initiation of action, mail this copy to Director Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director Copy 4—Case file copy**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 11/09/2010 | 7829080 | 701554 | 2693 |

23460 7590 10/20/2010

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

23460 7590 07/23/2010

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| | |
|---|---|
| John Kilyk, Jr. | (Depositor's name) |
| [signature] | (Signature) |
| October 4, 2010 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

TITLE OF INVENTION: STABILIZATION METHOD OF REDUCED COENZYME Q10

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/25/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HOBBS, LISA JOE | 1657 | 424-094100 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Leydig, Voit & Mayer, Ltd.
2 ____
3 ____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE: Kaneka Corporation

(B) RESIDENCE: (CITY and STATE OR COUNTRY): Osaka-shi, Japan

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☑ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☑ Issue Fee
☑ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies ____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number 12-1216 (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature [signature] Date October 4, 2010

Typed or printed name John Kilyk, Jr. Registration No. 30,763

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11741290 |
| **Filing Date:** | 27-Apr-2007 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Attorney Docket Number:** | 701554 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1510 | 1510 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
| --- | --- | --- | --- | --- |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **1810** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8556049 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 04-OCT-2010 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 16:52:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $1810 |
| RAM confirmation Number | 3358 |
| Deposit Account | 121216 |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | IssueFeeTransmittal.pdf | 216696<br>d16f22722fa2de5423187905a51d444e1e47c2a4 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 32062<br>14ca98604cf2cc11f6e258cd537b69bcfd52e81d | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 248758 | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

23460 7590 07/23/2010

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

| EXAMINER | |
|---|---|
| HOBBS, LISA JOE | |
| ART UNIT | PAPER NUMBER |
| 1657 | |

DATE MAILED: 07/23/2010

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

TITLE OF INVENTION: STABILIZATION METHOD OF REDUCED COENZYME Q10

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/25/2010 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

23460 7590 07/23/2010

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

(Depositor's name)

(Signature)

(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

TITLE OF INVENTION: STABILIZATION METHOD OF REDUCED COENZYME Q10

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/25/2010 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HOBBS, LISA JOE | 1657 | 424-094100 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   - ❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   - ❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
   (1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
   (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.
   1 ____________________
   2 ____________________
   3 ____________________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. The following fee(s) are submitted:
- ❑ Issue Fee
- ❑ Publication Fee (No small entity discount permitted)
- ❑ Advance Order - # of Copies ____________

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
- ❑ A check is enclosed.
- ❑ Payment by credit card. Form PTO-2038 is attached.
- ❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number ________ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
- ❑ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
- ❑ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature ____________________ Date ____________________

Typed or printed name ____________________ Registration No. ____________________

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

23460 7590 07/23/2010

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

| EXAMINER | |
|---|---|
| HOBBS, LISA JOE | |
| ART UNIT | PAPER NUMBER |
| 1657 | |

DATE MAILED: 07/23/2010

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.



KAN0000025

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

| Notice of Allowability | Application No. 11/741,290 | Applicant(s) UEDA ET AL. | |
|---|---|---|---|
| | Examiner Lisa J. Hobbs | Art Unit 1657 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *response of 10 May 2010*.

2. ☒ The allowed claim(s) is/are *1,4-7,10-18,20 and 22-24*.

3. ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☒ All b) ☐ Some* c) ☐ None of the:
   1. ☒ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE**.

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
   1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

## REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance: as discussed in the response submitted 10 May 2010, the prior art does not teach nor suggest a reduced coenzyme Q10-containing composition comprising reduced coenzyme Q10 and one or both of (a) and (b):

(a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme Q9 relative to reduced coenzyme Q10, and

(b) reduced coenzyme Q ll

wherein not less than 0.01 wt% of reduced coenzyme Q10 is contained in the composition and wherein the proportion of reduced coenzyme Q10.relative to the total amount of coenzyme Q10 is not less than 90 wt% along with methods for using the composition and methods for making the composition.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Lisa J. Hobbs whose telephone number is 571-272-3373. The examiner can normally be reached on Hotelling - Generally, 9-6 M-F.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jon P. Weber can be reached on 571-272-0925. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Lisa J. Hobbs/
Primary Examiner
Art Unit 1657

ljh

| *Index of Claims* | Application/Control No. 11741290 | Applicant(s)/Patent Under Reexamination UEDA ET AL. |
|---|---|---|
| | Examiner Lisa J Hobbs | Art Unit 1657 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☒ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/27/2008 | 03/30/2009 | 12/07/2009 | 07/19/2010 | | | | | |
| | 1 | N | N | N | = | | | | | |
| | 2 | N | - | - | - | | | | | |
| | 3 | N | N | - | - | | | | | |
| | 4 | N | N | N | = | | | | | |
| | 5 | N | N | N | = | | | | | |
| | 6 | N | N | N | = | | | | | |
| | 7 | ✓ | ✓ | ✓ | = | | | | | |
| | 8 | ✓ | - | - | - | | | | | |
| | 9 | ✓ | - | - | - | | | | | |
| | 10 | ✓ | ✓ | ✓ | = | | | | | |
| | 11 | ✓ | ✓ | ✓ | = | | | | | |
| | 12 | ✓ | ✓ | ✓ | = | | | | | |
| | 13 | ✓ | ✓ | ✓ | = | | | | | |
| | 14 | ✓ | ✓ | ✓ | = | | | | | |
| | 15 | ✓ | ✓ | ✓ | = | | | | | |
| | 16 | ✓ | ✓ | ✓ | = | | | | | |
| | 17 | ✓ | ✓ | ✓ | = | | | | | |
| | 18 | N | N | N | = | | | | | |
| | 19 | N | - | - | - | | | | | |
| | 20 | N | N | N | = | | | | | |
| | 21 | N | - | - | - | | | | | |
| | 22 | | ✓ | ✓ | = | | | | | |
| | 23 | | ✓ | ✓ | = | | | | | |
| | 24 | | | ✓ | = | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11741290 | UEDA ET AL. |
| | **Examiner** | **Art Unit** |
| | Lisa J Hobbs | 1657 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Text search performed. | 27 Sept 2008 | LJH |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST and STN searched, searches attached. | 27 Sept 2008 | LJH |
| Inventor names searched in eDAN. | 27 Sept 2008 | LJH |
| Consulted E. Kemmerer on restriction, Y. Eyler on oath, R. Wax on claim language. | 27 Sept 2008 | LJH |
| EAST, STN and inventor name searches updated. | 29 Mar 2009 | LJH |
| Updated EAST, STN, and inventor name searches. | 07 Dec 2009 | LJH |
| Consulted related cases and prosecution histories. Consulted R. Wax on claim language and response. | 07 Dec 2009 | LJH |
| EAST STN, Google and inventor names searched with terms as before., | 19 July 2010 | LJH |
| Consulted related cases, prosecution histories, and examiners. Consulted J. Weber on claim language and response. | 19 July 2010 | LJH |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | EAST searched, attached. | 19 July 2010 | LJH |

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11741290 | UEDA ET AL. |
| | **Examiner** | **Art Unit** |
| | Lisa J Hobbs | 1657 |

| ORIGINAL | |
|---|---|
| CLASS | SUBCLASS |
| 424 | 94.1 |

CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| 424 | 451 | 455 | 456 | | |

INTERNATIONAL CLASSIFICATION

| CLAIMED | | | | | NON-CLAIMED |
|---|---|---|---|---|---|
| A | 6 | 1 | K | 9 / 64 (2006.01.01) | |
| A | 6 | 1 | K | 38 / 43 (2006.01.01) | |
| A | 6 | 1 | K | 38 / 54 (2006.01.01) | |

☒ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | |
|---|---|
| NONE<br>(Assistant Examiner) (Date) | **Total Claims Allowed:**<br>18 |
| /Lisa J Hobbs/<br>Primary Examiner.Art Unit 1657 07/19/2010<br>(Primary Examiner) (Date) | O.G. Print Claim(s): 1<br>O.G. Print Figure: none |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 2693**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007<br>RULE | 435 | 1657 | 701554 |

**APPLICANTS**

Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

** **CONTINUING DATA** *************************

** **FOREIGN APPLICATIONS** *************************

JAPAN 2006-126897 04/28/2006

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **

05/22/2007

| | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| Foreign Priority claimed ☑ Yes ☐ No<br>35 USC 119(a-d) conditions met ☑ Yes ☐ No<br>Verified and Acknowledged /LISA J. HOBBS/ Examiner's Signature | ☐ Met after Allowance<br>Initials | JAPAN | 2 | 21 | 4 |

**ADDRESS**

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731
UNITED STATES

**TITLE**

STABILIZATION METHOD OF REDUCED COENZYME Q10

| FILING FEE RECEIVED | | |
|---|---|---|
| 1380 | FEES: Authority has been given in Paper No.____________ to charge/credit DEPOSIT ACCOUNT No.____________ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other ________________<br>☐ Credit |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 0 | ((coenzyme near ("Q" adj "10")) and (coenzyme near ("Q" adj "11")) and reduce$2 and (coenzyme near ("Q" adj "9"))).clm. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2010/07/19 19:41 |
| L6 | 0 | ((coenzyme$2 near ("Q" near "10")) and (coenzyme$2 near ("Q" near "11")) and reduce $2 and (coenzyme$2 near ("Q" near "9"))).clm. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2010/07/19 19:42 |
| L7 | 0 | ((coenzyme$2 near ("Q" near "10")) and (coenzyme$2 near ("Q" near "11")) and reduce $2).clm. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2010/07/19 19:43 |
| L8 | 0 | ((coenzyme$2 near ("Q" near "10")) same (coenzyme$2 near ("Q" near "11")) same reduce $2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2010/07/19 19:43 |
| L9 | 130 | ((coenzyme$2 near ("Q" near "10")) same reduce $2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2010/07/19 19:44 |
| L10 | 0 | (coenzyme$2 near ("Q" near "10")) same reduce $2 same (coenzyme$2 near ("Q" near "11")) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2010/07/19 19:44 |
| S45 | 688 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S46 | 447 | S45 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S47 | 56 | S46 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:31 |
| S48 | 16 | coenzyme ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S49 | 2 | coenzyme ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S50 | 2 | coenzyme near ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S51 | 16 | coenzyme near ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:35 |
| S52 | 28681 | ubiquinol$2 or ubiquinone$2 or ubidecarenone$2 or ubihydroquinone$2 or (dimethyoxy near dimethyl near decaprenyl) or (dimethyoxy near methyl) or benzoquinone | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:05 |
| S53 | 15417 | S52 and (stable or stabiliz$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S54 | 12413 | S53 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S55 | 5896 | S54 and "Q" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:07 |
| S56 | 17 | S55 and "wt%" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:08 |
| S57 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:44 |
| S58 | 0 | S57 and (Q adj "9") and (Q adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |
| S59 | 1 | S57 and ("9") and ("10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |
| S60 | 1 | S57 and ("9") and ("10") and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S61 | 1 | S60 and "40" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S62 | 0 | S61 and (coQ9H2) and (coQ10H2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S63 | 1 | S61 and ("q.sub.10") and ("q.sub.9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:51 |
| S64 | 0 | S62 and ("q.sub.11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:52 |
| S65 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 22:30 |
| S66 | 20 | "6184255" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:08 |
| S67 | 26 | "6184255" or S65 or S57 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:09 |
| S68 | 29 | cis adj reduced | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:10 |
| S69 | 2 | S68 and coenzyme | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:10 |

KAN0000036

| | | | | | | |
|---|---|---|---|---|---|---|
| S70 | 2 | coenzyme adj "q. sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:12 |
| S71 | 0 | coq11 oe coq11h2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:13 |
| S72 | 1 | coq11 or coq11h2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:13 |
| S73 | 19 | ubichromenol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:14 |
| S74 | 109228 | ueda.in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:18 |
| S75 | 159 | S74 and coenzyme | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:18 |
| S76 | 30 | S75 and "q.sub.10" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:19 |
| S77 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S78 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S79 | 26 | "6184255" or S78 or S77 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S80 | 48 | S76 or S79 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S81 | 2 | S80 and ("q.sub.11" or ubichromenol$2 or (cis adj reduced)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:28 |
| S82 | 2 | coenzyme adj "q" adj crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:38 |
| S83 | 6 | coenzyme near "q" near crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:38 |
| S84 | 65 | ueda.in. and coenzyme and crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:40 |
| S85 | 46 | S84 and (ubichromenol or cis or "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:40 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S86 | 7 | S84 and "q.sub.8" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:48 |
| S87 | 26 | S84 and impurit$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:54 |
| S88 | 8 | ueda.in. and ("q.sub.10" or "q.sub.9" or "q. sub.8" or "q.sub.11") and impurity | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:57 |
| S89 | 6 | coenzyme and cis and ueda.in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:19 |
| S90 | 46 | coenzyme and cis and "q.sub.10" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:20 |
| S91 | 127 | coenzyme and "q. sub.10" and crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:36 |
| S92 | 1 | 2005/0008630 or 2004/0197886 or 2005/0074860 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:56 |
| S93 | 7 | "20050008630" or "20040197886" or "20050074860" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:56 |

KAN0000039

Case 1:23-cv-07483-SJB-SDE Document 100-4 Filed 12/01/25 Page 29 of 330
PageID #: 5491

| | | | | | | |
|---|---|---|---|---|---|---|
| S94 | 7 | "20050008630" or "20040197886" or "20050074860" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:27 |
| S95 | 5 | S94 and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:27 |
| S96 | 0 | S94 and ".sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:28 |
| S97 | 0 | S94 and "q.sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:30 |
| S98 | 730 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S99 | 480 | S98 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S100 | 59 | S99 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S101 | 1 | S100 and "q.sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |

KAN0000040

| | | | | | | |
|---|---|---|---|---|---|---|
| S102 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/07/24 22:37 |
| S103 | 0 | S102 and ((co$2 or coenzyme$2) near q$2 near "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/07/24 22:38 |
| S104 | 1 | S102 and ("11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/07/24 22:39 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 572 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; UPAD | ADJ | OFF | 2010/07/19 19:39 |
| L3 | 0 | ((coenzyme near ("Q" adj "10")) and (coenzyme near ("Q" adj "11")) and reduce $2 and (coenzyme near ("Q" adj "9"))).clm. | US-PGPUB; USPAT; UPAD | ADJ | OFF | 2010/07/19 19:41 |
| L4 | 0 | ((coenzyme$2 near ("Q" adj "10")) and (coenzyme$2 near ("Q" adj "11")) and reduce$2 and (coenzyme$2 near ("Q" adj "9"))).clm. | US-PGPUB; USPAT; UPAD | ADJ | OFF | 2010/07/19 19:42 |
| L5 | 0 | ((coenzyme$2 near ("Q" near "10")) and (coenzyme$2 near ("Q" near "11")) and reduce$2 and (coenzyme$2 near ("Q" near "9"))).clm. | US-PGPUB; USPAT; UPAD | ADJ | OFF | 2010/07/19 19:42 |
| L11 | 96 | ((coenzyme$2 near ("Q" near "10")) same reduce$2) | US-PGPUB; USPAT; UPAD | ADJ | OFF | 2010/07/19 19:44 |
| L12 | 14 | ((coenzyme$2 near ("Q" near "10")) same reduce$2).clm. | US-PGPUB; USPAT; UPAD | ADJ | OFF | 2010/07/19 19:45 |

**7/19/2010 7:46:43 PM**
**C:\ Documents and Settings\ lhobbs\ My Documents\ EAST\ Workspaces\ coenzyme Q10 stabilization.wsp**

KAN0000042

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Takahiro Ueda

Filed: April 27, 2007

TC/AU: 1657

Examiner: Lisa Joe Hobbs

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**REPLY TO OFFICE ACTION**

Sir:

In reply to the Office Action dated December 11, 2009, please enter the following amendments and consider the following remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 6 of this paper.

*AMENDMENTS TO THE CLAIMS*

This listing of claims replaces all prior versions, and listings, of claims in the application.

1. (Withdrawn and Currently Amended) A method for stabilizing reduced coenzyme $Q_{10}$, which method comprises preparing a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$,

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition, and

wherein the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is not less than 90 wt%,

thereby stabilizing reduced coenzyme $Q_{10}$.

2.-3. (Canceled)

4. (Withdrawn) The method of claim 1, wherein the method comprises

preparing one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

5. (Withdrawn) The method of claim 1, wherein the method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

6. (Withdrawn) The method of claim 1, wherein the reduced coenzyme $Q_{10}$-containing composition is prepared under a deoxygenation atmosphere.

7. (Currently Amended) A reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition, and

wherein the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is not less than 90 wt%.

8.-9. (Canceled)

10. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is in crystalline form.

11. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is dissolved or suspended in a solvent.

12. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is a melt.

13. (Original) The composition of claim 7, which further comprises a pharmaceutically acceptable carrier.

14. (Original) The composition of claim 7, which is in a form suitable for administration to a mammal and comprises reduced coenzyme $Q_{10}$ as an active ingredient.

15. (Original) The composition of claim 7, which further comprises at least one component selected from the group consisting of an excipient, a disintegrant, a lubricant, a binder, an antioxidant, a coloring agent, an anticoagulant, an absorption promoter, a solubilizing

agent for the active ingredient, a stabilizer, an active ingredient other than reduced coenzyme $Q_{10}$, and combinations thereof.

16. (Original) An oral dosage form comprising the composition of claim 15, which dosage form is a capsule.

17. (Original) The oral dosage form of claim 16, wherein the capsule is a microcapsule, a soft capsule, or a hard capsule.

18. (Withdrawn and Currently Amended) A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

preparing one or both of (a) reduced coenzyme $Q_9$ and (b) reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$, ~~and~~

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition, and

wherein the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is not less than 90 wt%.

19. (Canceled)

20. (Withdrawn and Currently Amended) A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$, ~~and~~

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition, and

wherein the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is not less than 90 wt%.

21. (Canceled)

22. (Previously Presented) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

23. (Previously Presented) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises reduced coenzyme $Q_{11}$.

24. (Currently Amended) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than ~~80~~ 96 wt% of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$.

*REMARKS/ARGUMENTS*

*The Pending Claims*

Claims 1, 4-7, 10-18, 20, and 22-24 are pending and are directed to a reduced coenzyme $Q_{10}$-containing composition (claims 7, 10-15, and 22-24), an oral dosage form comprising the reduced coenzyme $Q_{10}$-containing composition (claims 16 and 17), a method for stabilizing reduced coenzyme $Q_{10}$ by utilizing the reduced coenzyme $Q_{10}$-containing composition (claims 1 and 4-6), and methods for producing the reduced coenzyme $Q_{10}$-containing composition (claims 18 and 20). Claims 1, 4-6, 18, and 20 have been withdrawn since the claims are directed to non-elected subject matter belonging to Groups I, III, and IV identified in the restriction requirement set out in the Office Action dated October 1, 2008.

As set forth in the Office Action dated October 1, 2008 (see pages 5-6) and in accordance with MPEP § 806.05(f), when the Office requires restriction between product and process claims and Applicants elect claims directed to the product, which claims are subsequently found to be allowable, withdrawn process claims that depend from or otherwise include all of the limitations of the allowable product claims will be rejoined in accordance with the provisions of MPEP § 821.04. Process claims that depend from or otherwise include all of the limitations of the patentable product will be entered as a matter of right if the amendment is presented prior to final rejection or allowance, whichever is earlier. In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR § 1.104.

Non-elected claims 1, 4-6, 18, and 20 are directed to methods employing the elected composition. In particular, claims 1, 4-6, 18, and 20 include all of the limitations of at least claim 7 of elected Group II. Such claims, therefore, are subject to rejoinder and examination, and Applicants request that, upon a finding by the Office that a claim of elected Group II is in condition for allowance, the restriction requirement as to the process claims (i.e., the claims of Groups I, III, and IV) be withdrawn.

*Amendments to the Claims*

Claims 1, 7, 18, and 20 have been amended to recite that the proportion of reduced coenzyme $Q_{10}$ in the total amount of coenzyme $Q_{10}$ is not less than 90 wt%. Claim 24 has been amended to recite that the proportion is not less than 96%. These amendments to the claims are supported by the specification at, for example, page 7, line 26, through page 8, line 2.

Accordingly, no new matter has been added by way of these amendments to the claims.

*Summary of the Office Action*

The Office maintains the rejection of claims 7, 10-17, and 22-24 under 35 U.S.C. § 103(a) as allegedly unpatentable over Matsura et al. (*Biochim. Biophys. Acta, 1127*: 277-283 (1992)), Wakabayashi et al. (*Biol. Pharm. Bull., 17(8)*: 997-1002 (1994)), Ueda et al. (U.S. Patent Application Publication 2005/0008630), and Chopra (International Patent Application Publication WO 01/52822).

Reconsideration of this rejection is hereby requested.

*Discussion of the Obviousness Rejection*

The Office maintains the obviousness rejection of the pending claims in view of the disclosures of the Matsura, Wakabayashi, Ueda, and Chopra references. In response to Applicants' previous arguments, the Office contends that the reduced coenzyme $Q_9$ and coenzyme $Q_{10}$ proportions recited in the pending claims are within the range found in human serum as demonstrated by the cited references.

In an effort to advance prosecution, the pending claims have been amended to recite that the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is not less than 90 wt%. The concept of the present invention is that reduced coenzyme $Q_{10}$ is present in a reduced coenzyme-containing composition in an extremely high ratio relative to the total amount of coenzyme $Q_{10}$ (e.g., not less than 90 wt%) and impurities such as reduced coenzyme $Q_9$ and reduced coenzyme $Q_{11}$ also are present (e.g., not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$). This concept is not taught or suggested by any of the cited references when considered alone or in combination.

In particular, none of the cited references teaches or suggests a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition, and wherein the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is not less than 90 wt%, as recited in the pending claims.

The Matsura reference discloses rat hepatocytes containing *an excess* of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ (see, e.g., Table 1). Accordingly, the Matsura reference does not disclose a composition comprising not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, as required by the pending claims.

Additionally, the amount of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ in the rat hepatocytes of the Matsura reference is not 90 wt% or greater, as required by the pending claims. At most, the proportion of reduced coenzyme $Q_{10}$ to the total amount of coenzyme $Q_{10}$ is 68 wt% as exemplified by the data in Table 1 ($CoQ_{10}H_2$ / Total $CoQ_{10}$).

Similarly, the Wakabayashi reference discloses that the biological tissues of rat contain *an excess* of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ (see, e.g., Table II). Accordingly, the rat tissues do not comprise not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, as required by the pending claims. With regard to human serum, the Wakabayashi reference discloses a concentration of reduced coenzyme $Q_{10}$ in serum ranging from 1141.8 ng/mL to 1561.2 ng/mL, which is equivalent to at most 0.00015 wt% when calculated at a serum specific gravity of 1.025 (see, e.g., Table III). Accordingly, the Wakabayashi reference does not disclose a composition comprising not less than 0.01 wt% of reduced coenzyme $Q_{10}$, as required by the pending claims.

Additionally, the amount of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ in the rat tissues, rat serum, and human serum of the Wakabayashi reference is not 90 wt% or greater, as required by the pending claims. At most, the proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ is 68 wt% as exemplified by the data in Tables II and III ($CoQ_{10}H_2$ / ($CoQ_{10}H_2$ + $CoQ_{10}$)).

Furthermore, neither of the disclosures of the Matsura and Wakabayashi references provides any reason for one of ordinary skill in the art to alter the content of the reduced coenzyme $Q_9$ or $Q_{10}$ to the claimed ranges in a coenzyme $Q_{10}$-containing composition.

The Ueda and Chopra references disclose compositions comprising reduced coenzyme $Q_{10}$ as an active ingredient (e.g., a coenzyme $Q_{10}$ crystal having extremely high quality). In such compositions, it is desirable to decrease the levels of impurities, i.e., substances other than reduced coenzyme $Q_{10}$ (see, e.g., paragraph 0082 of the Ueda reference and page 14, last paragraph, of the Chopra reference).

The Ueda reference discloses reducing the amount of reduced coenzyme $Q_9$ in coenzyme $Q_{10}$ compositions to as low as possible, and the highest amount of coenzyme $Q_9$ reported in the compositions of the Examples of the Ueda reference is not less than 0.52 wt%, which falls outside the 1.5 wt% to 99 wt% concentration range recited in the pending claims. Based on the disclosure of the Ueda reference, one of ordinary skill in the art would not have had any reason to increase the amount of coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ in the composition to the claimed levels. Similarly, one of ordinary skill in the art would not have had any reason to add reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$-containing composition.

The Chopra reference discloses a composition containing reduced coenzyme Q and a reducing agent to stabilize reduced coenzyme Q. However, reduced coenzyme $Q_9$ and other coenzyme Q analogs are not included in the numerous examples of the reducing agent recited in the Chopra reference. In general, appropriate reducing agents and antioxidants vary depending on the stability and the substance to be reduced. Although reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ were known to act as antioxidants action in the body, reduced coenzyme $Q_9$ was not known at the time of the filing of the present application to act as an antioxidant towards reduced coenzyme $Q_{10}$, which has a structure similar to that of reduced coenzyme $Q_9$. Therefore, based on the disclosure of the Chopra reference and what was known in the art at the time of the filing of the present, one of ordinary skill in the art would have had any reason to select reduced coenzyme $Q_9$ as a reducing agent suitable for reduced coenzyme $Q_{10}$.

For the above-described reasons, the pending claims are not obvious in view of the cited references when considered alone or in combination. Therefore, the obviousness rejection should be withdrawn.

*Conclusion*

Applicants respectfully submit that the present application is in condition for allowance. If, in the opinion of the Examiner, a telephone conference would expedite the prosecution of the present application, the Examiner is invited to telephone the undersigned attorney.

Respectfully submitted,

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: May 10, 2010

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11741290 |
| **Filing Date:** | 27-Apr-2007 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Filer:** | John Jr. Kilyk/Frank Beardslee |
| **Attorney Docket Number:** | 701554 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 2 months with $0 paid | 1252 | 1 | 490 | 490 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **490** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7584295 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Frank Beardslee |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 10-MAY-2010 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 18:44:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $490 |
| RAM confirmation Number | 5413 |
| Deposit Account | 121216 |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Authorization for Extension of Time all replies | ROATransmittal-4th.pdf | 50294<br>2b5f6e28dc1a691ffc14effa3487df8dd238b191 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Amendment/Req. Reconsideration-After Non-Final Reject | ROA-4th.pdf | 436459<br>55cb2394ad94463dc9228740554ffb3a82f5a669 | no | 10 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Fee Worksheet (PTO-875) | fee-info.pdf | 30355<br>a9668ebe7f06a6ad3c7b43bb8c7570d89f939e07 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 517108 | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

FORM PTO-1083

**PATENT**
Attorney Docket No. 701554
Client Reference No. 201659
Date: May 10, 2010

In re Application of: Takahiro Ueda
Application No. 11/741,290
Confirmation No. 2693
Filed: April 27, 2007

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith is a reply to office action in the subject application.

☐ Small entity status is claimed for this application under 37 CFR 1.27.

☒ Petition for an extension of time for the period noted below, as well as for any additional period necessary to render the present submission timely. Please charge Deposit Account No. 12-1216 for the appropriate petition fee.

☐ Other:

☒ Please charge Deposit Account No. 12-1216 in the total amount indicated below.

| | | | | | SMALL ENTITY | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| TIME EXTENSION PETITION FEE | | | two-month | | $ 0.00 | | $490.00 | |
| subtract time extension fee previously paid | | | none | | ($ 0.00) | | ($ 0.00) | |
| | | | | | | | | |
| CLAIM FEE | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | EXTRA CLAIMS PRESENT | RATE | ADD'L CLAIM FEE | RATE | ADD'L CLAIM FEE |
| TOTAL | 18 | MINUS | 21 | = 0 | x 26 = | $ | x 52 = | $0.00 |
| INDEPENDENT | 4 | MINUS | 4 | = 0 | x 110 = | $ | x 220 = | $0.00 |
| ☐ FIRST PRESENTATION OF MULTIPLE CLAIM | | | | | + 195 = | $ | + 390 = | $0.00 |
| OTHER FEES AS DESCRIBED: | | | | | | $ | | $0.00 |
| | | | | | | | | |
| **TOTAL AMOUNT TO BE CHARGED TO DEPOSIT ACCOUNT** | | | | | TOTAL | $ | TOTAL | $490.00 |

☒ The Commissioner is hereby authorized to charge any deficiencies in the following fees associated with this communication or credit any overpayment to Deposit Account No. 12-1216.

☒ Any filing fees under 37 CFR 1.16 for the presentation of extra claims.

☒ Any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

LEYDIG, VOIT & MAYER, LTD.

By John Kilyk, Jr.
John Kilyk, Jr., Reg. No. 30,763

LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/741,290 | 04/27/2007 | ☐ To be Mailed |

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY ☐ RATE ($) | FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT | 05/10/2010 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | X $ = | | OR | X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | ***3 | = 1 | X $ = | | OR | X $220= | 220 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | **220** |

| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | OR | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/DAVID SASFAI/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/741,290 | 04/27/2007 | ☐ To be Mailed |

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY ☐ RATE ($) | SMALL ENTITY FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY FEE ($) |
|---|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| | | | TOTAL | | | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## APPLICATION AS AMENDED – PART II

| AMENDMENT 05/10/2010 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | X $ = | | OR | X $52= | 0 |
| Independent (37 CFR 1.16(h)) | * 4 | Minus | ***3 | = 1 | X $ = | | OR | X $220= | 220 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | **220** |

| AMENDMENT | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/DAVID SASFAI/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

23460 7590 12/11/2009
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

| EXAMINER | |
|---|---|
| HOBBS, LISA JOE | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1657 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/11/2009 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

Chgpatent@leydig.com
Chgpatent1@leydig.com

| *Office Action Summary* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 11/741,290 | UEDA ET AL. | |
| | Examiner | Art Unit | |
| | Lisa J. Hobbs | 1657 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *10 September 2009*.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1,4-7,10-18,20 and 22-24* is/are pending in the application.

4a) Of the above claim(s) *1,4-6,18 and 20* is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *7,10-15 and 22-24* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☒ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection. Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission filed on 10 September 2009 has been entered.

### *Priority*

Receipt is acknowledged of papers submitted under 35 U.S.C. 119(a)-(d), which papers have been placed of record in the file.

Should applicant desire to obtain the benefit of foreign priority under 35 U.S.C. 119(a)-(d) prior to declaration of an interference, a certified English translation of the foreign application must be submitted in reply to this action. 37 CFR 41.154(b) and 41.202(e).

Failure to provide a certified translation may result in no benefit being accorded for the non-English application.

### *Claim Status*

Claims 1, 4-7, 10-18, 20, 22-24 are active in the case. Claims 2-3, 8-9, 19 and 21 have been cancelled by amendment. Claims 7, 10-17, 22-24 are under examination; claims 1, 4-6, 18, 20 are withdrawn as drawn to a non-elected invention.

***Claim Rejections - 35 USC § 102***

The rejection of claims 7, 11, 13-15, and 22 under 35 U.S.C. 102(b) is withdrawn in light of the amendments to the claims.

***Claim Rejections - 35 USC § 103***

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

Claims 7, 10-17, 22-24 are rejected under 35 U.S.C. 103(a) as being unpatentable over Matsura et al., Wakabayashi et al. Ueda et al., and Chopra (WO 01/52822 A1). Matsura et al. teach that both CoQ10H2 and CoQ9H2 are potent antioxidants with independent activity in radical scavenging to protect cells against oxidative stress (p. 282, col. 2). Each of Matsura et al., Wakabayashi et al. and Ueda et al., as discussed above, teach compositions of the active ingredient CoQ10H2 comprising varying amounts of CoQ9H2 with solubilizing agents, pharmaceutically acceptable carriers and further comprising additional components, for example citric acid for stabilization properties (Ueda et al. [0079]). Ueda et al. teach crystallization of the reduced coenzyme ([0080-0096]).

Chopra teaches the administration of CoQ10H2 compositions as medicaments. He teaches pharmaceutical compositions comprised within oral dosage forms such as soft gel capsules (p. 5), hard gel capsules (p. 17), and other medical preparations (p. 18-19) such as lozenges and gum. He discloses reducing agents (p. 9) used in order to maintain the effectiveness of the coenzyme and solubilization agents (p. 9) which are pharmaceutically acceptable.

It would have been obvious to one of ordinary skill at the time the invention was made to combine the teachings of Matsura et al. with those of Wakabayashi et al., Ueda et al., and Chopra to obtain the invention as recited in the instant claims. One would be motivated to do so in the interests of creating a bioavailable nutritional supplement that assists in free radical scavenging, hopefully ameliorating disease states associated with oxidative tissue damage or mitochondrial dysfunction (Chopra p. 1). One would have a reasonable expectation of success in that Matsura et al. and Wakabayashi et al. disclose that CoQ9H2 is present in normal serum, blood, and

tissues along with CoQ10H2 and each of the references discloses the beneficial properties of reduced coenzyme Q10. Matsura et al. teach that CoQ9H2 has similar properties and Ueda et al. teach methods of creating stabilized preparations for administration, including crystals.

***Response to Arguments***

Applicants argue that the rejection of the claims under 35 USC 103(a) should be withdrawn because the claimed range of CoQ9H2 relative to CoQ10H2 are not disclosed in any of the cited references. Applicants cite table I of Matsura et al. and Table II of Wakabayshi et al. However, as discussed above, Wakabayashi et al. disclose in Fig. 3 and Table III that human serum comprises reduced CoQ9 and CoQ10 in proportions that are within the range claimed in the instant claim. Applicants also argue that Ueda et al. and Chopra et al. do not teach the ranges claimed in the instant claims, however Wakabayashi et al. teach that the range recited in the instant claims encompasses the levels of compounds naturally present in humans. Ueda et al. do teach that reduced CoQ9, CoQ8 and CoQ7 are known to be present in humans, see claim 62. Chopra et al. also disclose that"[t]he term "coenzyme Q" or "ubiquinone" is used throughout the present specification to describe a group of lipid soluble benzoquinones involved in electron transport in mitochondrial preparations, i.e., in the oxidation of succinate or reduced nicotine adenine dinucleotide (NADH) via the cytochrome system. According to the existing dual system of nomenclature, the compounds can be described as: coenzyme Qn, where n is 1-12 or ubiquinone (x) in which x designates the total number of carbon atoms in the side chain and can be any multiple of 5. Differences in properties are due to the difference in the chain length. The preferred ubiquinone for use in the present invention is the reduced form of coenzyrme Q10

(Ubidecarenone) or ubiquinol" [page 6]. They teach that those of skill in the prior art know that CoQnH2 compounds encompass 9, 10 or 11. At page 7 they teach that they envision the reduced CoQ10 to be preferably 1-3 times the amount of the agent that keeps it in the reduced state; "[t]he amount of ubiquinol which is included in compositions to be encapsulated ranges from about 0.1 to about 10.0 times, more preferably about 1 to about 3 times the amount (in weight percent) of the lipid soluble reducing agent which is included in compositions according to the present invention".

Applicants argue that one of skill would not have modified Ueda et al. or Chopra et al. to add the various components of the instant composition to their compositions, however the references are not considered individually. When taken as a whole, the references teach that compositions comprising reduced CoQ9 and reduced CoQ10 at the levels claimed in the instant claims are known in the art, the presence of reduced CoQ11 and other CoQn compounds in these mixed compositions is known. Crystallization of CoQn compounds and reduced CoQn compounds is known. Medicaments of various kinds comprising CoQn compounds and reduced CoQn compounds is known. As well, applicants argue that one of skill would not have known of the superior effects and provision of protection that the instant compound affords. However, the various components of the instant composition are known, i.e., reduced CoQ9-11, and the range of the recited relationship between the compounds is known as comprising the levels present in human serum, which would make a medicament comprising such a range desirable since one of skill would want to mimic the natural condition.

***Art of Record***

The examiner notes the following prior art not relied upon in a rejection: Lekli et al. ((2008) J. Agric. Food Chem. 56: 5331-5337). Although published recently, not before April 2006, Lekli et al. disclose current research into cardioprotection of CoQ9H2 in addition to CoQ10H2 and the beneficial effects of administration of both compounds. Also noted is Morre et al. (US 6878514 B2) a reference which teaches the administration of ubiquinone mixtures, not ubiquinol, for the treatment of a particular medical condition however it is noted the mixtures comprise all natural variants of CoQ10 from CoQ2 – CoQ12.

***Conclusion***

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Lisa J. Hobbs whose telephone number is 571-272-3373. The examiner can normally be reached on Hotelling - Generally, 9-6 M-F.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jon P. Weber can be reached on 571-272-0925. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Lisa J. Hobbs/
Primary Examiner
Art Unit 1657

ljh

| *Index of Claims* | Application/Control No. 11741290 | Applicant(s)/Patent Under Reexamination UEDA ET AL. |
|---|---|---|
| | Examiner Lisa J Hobbs | Art Unit 1657 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/27/2008 | 03/30/2009 | 12/07/2009 | | | | | | | |
| | 1 | N | N | N | | | | | | | |
| | 2 | N | - | - | | | | | | | |
| | 3 | N | N | - | | | | | | | |
| | 4 | N | N | N | | | | | | | |
| | 5 | N | N | N | | | | | | | |
| | 6 | N | N | N | | | | | | | |
| | 7 | ✓ | ✓ | ✓ | | | | | | | |
| | 8 | ✓ | - | - | | | | | | | |
| | 9 | ✓ | - | - | | | | | | | |
| | 10 | ✓ | ✓ | ✓ | | | | | | | |
| | 11 | ✓ | ✓ | ✓ | | | | | | | |
| | 12 | ✓ | ✓ | ✓ | | | | | | | |
| | 13 | ✓ | ✓ | ✓ | | | | | | | |
| | 14 | ✓ | ✓ | ✓ | | | | | | | |
| | 15 | ✓ | ✓ | ✓ | | | | | | | |
| | 16 | ✓ | ✓ | ✓ | | | | | | | |
| | 17 | ✓ | ✓ | ✓ | | | | | | | |
| | 18 | N | N | N | | | | | | | |
| | 19 | N | - | - | | | | | | | |
| | 20 | N | N | N | | | | | | | |
| | 21 | N | - | - | | | | | | | |
| | 22 | | ✓ | ✓ | | | | | | | |
| | 23 | | ✓ | ✓ | | | | | | | |
| | 24 | | | ✓ | | | | | | | |

## EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S45 | 688 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S46 | 447 | S45 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S47 | 56 | S46 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:31 |
| S48 | 16 | coenzyme ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S49 | 2 | coenzyme ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S50 | 2 | coenzyme near ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S51 | 16 | coenzyme near ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:35 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S52 | 28681 | ubiquinol$2 or ubiquinone$2 or ubidecarenone$2 or ubihydroquinone$2 or (dimethyoxy near dimethyl near decaprenyl) or (dimethyoxy near methyl) or benzoquinone | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:05 |
| S53 | 15417 | S52 and (stable or stabiliz$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S54 | 12413 | S53 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S55 | 5896 | S54 and "Q" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:07 |
| S56 | 17 | S55 and "wt%" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:08 |
| S57 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:44 |
| S58 | 0 | S57 and (Q adj "9") and (Q adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |
| S59 | 1 | S57 and ("9") and ("10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S60 | 1 | S57 and ("9") and ("10") and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S61 | 1 | S60 and "40" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S62 | 0 | S61 and (coQ9H2) and (coQ10H2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S63 | 1 | S61 and ("q.sub.10") and ("q.sub.9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:51 |
| S64 | 0 | S62 and ("q.sub.11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:52 |
| S65 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 22:30 |
| S66 | 20 | "6184255" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:08 |
| S67 | 26 | "6184255" or S65 or S57 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:09 |

KAN0000072

| | | | | | | |
|---|---|---|---|---|---|---|
| S68 | 29 | cis adj reduced | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:10 |
| S69 | 2 | S68 and coenzyme | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:10 |
| S70 | 2 | coenzyme adj "q. sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:12 |
| S71 | 0 | coq11 oe coq11h2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:13 |
| S72 | 1 | coq11 or coq11h2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:13 |
| S73 | 19 | ubichromenol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:14 |
| S74 | 109228 | ueda.in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:18 |
| S75 | 159 | S74 and coenzyme | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:18 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S76 | 30 | S75 and "q.sub.10" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:19 |
| S77 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S78 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S79 | 26 | "6184255" or S78 or S77 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S80 | 48 | S76 or S79 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S81 | 2 | S80 and ("q.sub.11" or ubichromenol$2 or (cis adj reduced)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:28 |
| S82 | 2 | coenzyme adj "q" adj crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:38 |
| S83 | 6 | coenzyme near "q" near crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:38 |

KAN0000074

| | | | | | | |
|---|---|---|---|---|---|---|
| S84 | 65 | ueda.in. and coenzyme and crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:40 |
| S85 | 46 | S84 and (ubichromenol or cis or "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:40 |
| S86 | 7 | S84 and "q.sub.8" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:48 |
| S87 | 26 | S84 and impurit$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:54 |
| S88 | 8 | ueda.in. and ("q.sub.10" or "q.sub.9" or "q. sub.8" or "q.sub.11") and impurity | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:57 |
| S89 | 6 | coenzyme and cis and ueda.in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:19 |
| S90 | 46 | coenzyme and cis and "q.sub.10" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:20 |
| S91 | 127 | coenzyme and "q. sub.10" and crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:36 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S92 | 1 | 2005/0008630 or 2004/0197886 or 2005/0074860 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:56 |
| S93 | 7 | "20050008630" or "20040197886" or "20050074860" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:56 |
| S94 | 7 | "20050008630" or "20040197886" or "20050074860" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:27 |
| S95 | 5 | S94 and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:27 |
| S96 | 0 | S94 and ".sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:28 |
| S97 | 0 | S94 and "q.sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:30 |
| S98 | 730 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S99 | 480 | S98 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S100 | 59 | S99 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S101 | 1 | S100 and "q.sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S102 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/07/24 22:37 |
| S103 | 0 | S102 and ((co$2 or coenzyme$2) near q$2 near "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/07/24 22:38 |
| S104 | 1 | S102 and ("11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/07/24 22:39 |

**EAST Search History (Interference)**

<This search history is empty>

**12/7/2009 10:15:42 AM**
**C:\ Documents and Settings\ lhobbs\ My Documents\ EAST\ Workspaces\ coenzyme Q10 stabilization.wsp**

KAN0000077

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 2693**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007<br>RULE | 435 | 1657 | 701554 |

**APPLICANTS**

Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

** **CONTINUING DATA** *************************

** **FOREIGN APPLICATIONS** *************************

JAPAN 2006-126897 04/28/2006

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **

05/22/2007

| Foreign Priority claimed ☑ Yes ☐ No<br>35 USC 119(a-d) conditions met ☑ Yes ☐ No<br>Verified and Acknowledged /LISA J. HOBBS/ Examiner's Signature | ☐ Met after Allowance<br>Initials | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| | | JAPAN | 2 | 21 | 4 |

**ADDRESS**

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731
UNITED STATES

**TITLE**

STABILIZATION METHOD OF REDUCED COENZYME Q10

| FILING FEE RECEIVED | FEES: Authority has been given in Paper | |
|---|---|---|
| 1380 | No.____________ to charge/credit DEPOSIT ACCOUNT<br>No.____________ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other ________________<br>☐ Credit |

| ***Search Notes*** | **Application/Control No.** 11741290 | **Applicant(s)/Patent Under Reexamination** UEDA ET AL. |
|---|---|---|
| | **Examiner** Lisa J Hobbs | **Art Unit** 1657 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Text search performed. | 27 Sept 2008 | LJH |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST and STN searched, searches attached. | 27 Sept 2008 | LJH |
| Inventor names searched in eDAN. | 27 Sept 2008 | LJH |
| Consulted E. Kemmerer on restriction, Y. Eyler on oath, R. Wax on claim language. | 27 Sept 2008 | LJH |
| EAST, STN and inventor name searches updated. | 29 Mar 2009 | LJH |
| Updated EAST, STN, and inventor name searches. | 07 Dec 2009 | LJH |
| Consulted related cases and prosecution histories. Consulted R. Wax on claim language and response. | 07 Dec 2009 | LJH |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

Express Mail Label No. (if applicable)

# Request for Continued Examination (RCE) Transmittal

Address to:
Mail Stop RCE
Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| | |
|---|---|
| Application No. | 11/741,290 |
| Confirmation No. | 2693 |
| Filing Date | April 27, 2007 |
| First Named Inventor | Takahiro Ueda |
| Group Art Unit | 1657 |
| Examiner Name | Lisa Joe Hobbs |
| Attorney Docket No. | 701554 |
| Client Reference No. | 201659 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

1. **Submission required under 37 CFR 1.114**
   a. ☒ Previously submitted
      i. ☒ Consider the amendment(s)/reply under 37 CFR 1.116 previously filed on July 10, 2009
      (Any unentered amendment(s) referred to above will be entered.)
      ii. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on
      iii. ☐ Other:
   b. ☒ Enclosed
      i. ☒ Amendment/Reply
      ii. ☐ Affidavit(s)/Declaration(s)
      iii. ☐ Information Disclosure Statement (IDS)
      iv. ☐ Form PTO-1449
      v. ☐ Copies of References listed in Form PTO-1449 (except for U.S. patents and applications)
      vi. ☐ Other:
2. **Miscellaneous**
   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months. (Period of suspension shall not exceed 3 months; fee under 37 CFR 1.17(i) required.)
   b. ☐ Applicant claims small entity status. See 37 CFR 1.27
   c. ☐ Other:
3. **Fees** - The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.
   a. ☒ Please charge Deposit Account No. 12-1216 in the total amount indicated below.
      i. ☒ RCE fee of $810.00 (large entity) required under 37 CFR 1.17(e) — $810.00
      ii. ☒ Two-month extension of time fee of $ 0.00 (37 CFR 1.136 and 1.17) — $490.00
      iii. ☐ An extension for has already been secured and the fee paid therefor of $ 0.00 is deducted from the total fee due for the total amount of extension now requested.
      iv. ☒ Petition for an extension of time (including the period noted above, if checked), as well as for any additional period necessary to render the present submission timely. Please charge Deposit Account No. 12-1216 for the appropriate petition fee.
      v. ☐ Suspension of action fee of $130.00 (37 CFR 1.17(i)) — $ 0.00
      vi. ☐ Other:
      vii. ☐ Claim fee

| Claim Fee | Claims Remaining After Amendment | | Highest Number Previously Paid For | Extra Claims Present | Rate | Add'l Claim Fee | Rate | Add'l Claim Fee | |
|---|---|---|---|---|---|---|---|---|---|
| Total | 18 | Minus | 21 | = 0 | x 26 = | | x 52 = | $0.00 | |
| Independent | 4 | Minus | 4 | = 0 | x 110 = | | x 220 = | $0.00 | |
| ☐ First Presentation of Multiple Claim | | | | | + 195 = | | + 390 = | $0.00 | |
| **Total amount to be charged to Deposit Account** | | | | | | | | | $1,300.00 |

   b. ☒ The Commissioner is hereby authorized to charge any deficiencies in the above fees or to credit any overpayments to Deposit Account No. 12-1216.

| ***SIGNATURE OF APPLICANT, ATTORNEY OR AGENT REQUIRED*** | | | |
|---|---|---|---|
| *Name (Print/Type)* | John Kilyk, Jr. | *Registration No. (Attorney/Agent)* | 30,763 |
| *Signature* | [signature] | *Date* | September 10, 2009 |
| *Address* | Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza, Suite 4900<br>180 North Stetson Avenue<br>Chicago, Illinois 60601-6731 | *Phone* | (312) 616-5600 (telephone)<br>(312) 616-5700 (facsimile) |

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11741290 |
| **Filing Date:** | 27-Apr-2007 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Filer:** | John Jr. Kilyk/Frank Beardslee |
| **Attorney Docket Number:** | 701554 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 2 months with $0 paid | 1252 | 1 | 490 | 490 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 1801 | 1 | 810 | 810 |
| | | **Total in USD ($)** | | **1300** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6050478 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Frank Beardslee |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 10-SEP-2009 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 17:46:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $1300 |
| RAM confirmation Number | 4238 |
| Deposit Account | 121216 |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment After Final | ROA.pdf | 531635<br>1318658213f261c89bd0127c46311c0643d541d5 | no | 12 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Request for Continued Examination (RCE) | RCE.pdf | 88154<br>c651b768f88f300b13b861686ec491ded2040719 | no | 2 |
| **Warnings:** | | | | | |
| This is not a USPTO supplied RCE SB30 form. | | | | | |
| **Information:** | | | | | |
| 3 | Fee Worksheet (PTO-875) | fee-info.pdf | 32200<br>d7cf8ffe2fb0971334e9def9fd6175c85d2ab05e | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 651989 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Takahiro Ueda

Filed: April 27, 2007

TC/AU: 1657

Examiner: Lisa Joe Hobbs

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**REPLY TO OFFICE ACTION**

Sir:

In reply to the Advisory Action dated July 28, 2009, please enter the following amendments and consider the following remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 6 of this paper.

*AMENDMENTS TO THE CLAIMS*

This listing of claims replaces all prior versions, and listings, of claims in the application.

1. (Withdrawn and Currently Amended) A method for stabilizing reduced coenzyme $Q_{10}$, which method comprises preparing a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$,

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition,

thereby stabilizing reduced coenzyme $Q_{10}$.

2.-3. (Canceled)

4. (Withdrawn) The method of claim 1, wherein the method comprises

preparing one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

5. (Withdrawn) The method of claim 1, wherein the method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

6. (Withdrawn) The method of claim 1, wherein the reduced coenzyme $Q_{10}$-containing composition is prepared under a deoxygenation atmosphere.

7. (Currently Amended) A reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$ ~~$Q_{11}$~~

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition.

8.-9. (Canceled)

10. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is in crystalline form.

11. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is dissolved or suspended in a solvent.

12. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is a melt.

13. (Original) The composition of claim 7, which further comprises a pharmaceutically acceptable carrier.

14. (Original) The composition of claim 7, which is in a form suitable for administration to a mammal and comprises reduced coenzyme $Q_{10}$ as an active ingredient.

15. (Original) The composition of claim 7, which further comprises at least one component selected from the group consisting of an excipient, a disintegrant, a lubricant, a binder, an antioxidant, a coloring agent, an anticoagulant, an absorption promoter, a solubilizing agent for the active ingredient, a stabilizer, an active ingredient other than reduced coenzyme $Q_{10}$, and combinations thereof.

16. (Original) An oral dosage form comprising the composition of claim 15, which dosage form is a capsule.

17. (Original) The oral dosage form of claim 16, wherein the capsule is a microcapsule, a soft capsule, or a hard capsule.

18. (Withdrawn and Currently Amended) A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

preparing one or both of (a) reduced coenzyme $Q_9$ and (b) reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$, and

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition.

19. (Canceled)

20. (Withdrawn and Currently Amended) A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$, and

wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition.

21. (Canceled)

22. (Previously Presented) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

23. (Previously Presented) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises reduced coenzyme $Q_{11}$.

24. (New) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 80 wt% of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$.

*REMARKS/ARGUMENTS*

*The Pending Claims*

Claims 1, 4-7, 10-18, 20, and 22-24 are pending and are directed to a reduced coenzyme $Q_{10}$-containing composition (claims 7, 10-15, and 22-24), an oral dosage form comprising the reduced coenzyme $Q_{10}$-containing composition (claims 16 and 17), a method for stabilizing reduced coenzyme $Q_{10}$ by utilizing the reduced coenzyme $Q_{10}$-containing composition (claims 1 and 4-6), and methods for producing the reduced coenzyme $Q_{10}$-containing composition (claims 18 and 20). Claims 1, 4-6, 18, and 20 have been withdrawn since the claims are directed to non-elected subject matter belonging to Groups I, III, and IV identified in the restriction requirement set out in the Office Action dated October 1, 2008.

As set forth in the Office Action dated October 1, 2008 (see pages 5-6) and in accordance with MPEP § 806.05(f), when the Office requires restriction between product and process claims and Applicants elect claims directed to the product, which claims are subsequently found to be allowable, withdrawn process claims that depend from or otherwise include all of the limitations of the allowable product claims will be rejoined in accordance with the provisions of MPEP § 821.04. Process claims that depend from or otherwise include all of the limitations of the patentable product will be entered as a matter of right if the amendment is presented prior to final rejection or allowance, whichever is earlier. In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR § 1.104.

Non-elected claims 1, 4-6, 18, and 20 are directed to methods employing the elected composition. Thus, claims 1, 4-6, 18, and 20 include all of the limitations of at least claim 7 of elected Group II. Such claims must be rejoined and examined together with the product claims. Applicants therefore request that, upon a finding by the Office that a claim of elected Group II is in condition for allowance, the restriction requirement as to the process claims (i.e., the claims of Groups I, III, and IV) be withdrawn.

*Amendments to the Claims*

Claims 1, 7, 18, and 20 have been amended to recite that not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the reduced coenzyme $Q_{10}$-containing composition. This amendment to the claims is supported by the specification at, for example, page 20, lines 32-35.

Claim 24 is new and is supported by the specification at, for example, page 7, line 26, through page 8, line 6.

Accordingly, no new matter has been added by way of these amendments to the claims.

*Summary of the Office Action*

The Office maintains the rejection of claims 7-11, 13-15, and 22 under 35 U.S.C. § 102(b) as allegedly anticipated by Wakabayashi et al. (*Biol. Pharm. Bull., 17(18)*: 997-1002 (1994)).

The Office maintains the rejection of claims 7, 10-17, 22 and 23 under 35 U.S.C. § 103(a) as allegedly unpatentable over Matsura et al. (*Biochim. Biophys. Acta, 1127*: 277-283 (1992)), Wakabayashi et al., Ueda et al. (U.S. Patent Application Publication 2005/0008630), and Chopra (International Patent Application Publication WO 01/52822).

Reconsideration of these rejections is hereby requested.

*Discussion of the Anticipation Rejection*

The Office contends that Wakabayashi et al. teaches a range of amounts of reduced and oxidized coenzyme $Q_{10}$ and coenzyme $Q_9$ that allegedly falls within the ranges recited in the rejected claims. This rejection is traversed for the following reasons.

The pending claims, as amended, recite that the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.01 wt% of reduced coenzyme $Q_{10}$. Table III of the Wakabayashi reference discloses that the concentration of reduced coenzyme $Q_{10}$ in serum ranges from 1141.8 ng/mL to 1561.2 ng/mL, which is equivalent to at most 0.00015 wt% when calculated at a serum specific gravity of 1.025. Therefore, the composition disclosed in the Wakabayashi reference significantly differs from the composition defined by the pending claims

in that the composition of the Wakabayashi reference does not contain at least 0.01 wt % of reduced coenzyme $Q_{10}$, as required by the pending claims.

Furthermore, the amount of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ in the human serum of the Wakabayashi reference falls outside the amount recited in new claim 24. In Table III of the Wakabayashi reference, the amount of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ in the human serum ranges from about 64% to about 68%. Claim 24 recites that the reduced coenzyme $Q_{10}$-containing composition comprises not less than 80 wt% of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$.

Since the Wakabayashi reference does not disclose each and every element of the pending claims, the Wakabayashi reference cannot be considered to anticipate the subject matter of the pending claims. Accordingly, Applicants request that the anticipation rejection be withdrawn.

*Discussion of the Obviousness Rejection*

The Office contends that the pending claims are obvious in view of the disclosures of the Matsura, Wakabayashi, Ueda, and Chopra references. The obviousness rejection is traversed for the following reasons.

For subject matter defined by a claim to be considered obvious, the Office must demonstrate that the differences between the claimed subject matter and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); see also *Graham v. John Deere Co*., 383 U.S. 1, 148 U.S.P.Q. 459 (1966). The ultimate determination of whether an invention is or is not obvious is based on certain factual inquiries including: (1) the scope and content of the prior art, (2) the level of ordinary skill in the prior art, (3) the differences between the claimed invention and the prior art, and (4) objective evidence of nonobviousness. *Graham*, 383 U.S. at 17-18, 148 U.S.P.Q. at 467.

Consideration of the aforementioned *Graham* factors here indicates that the present invention, as defined by the pending claims, is unobvious in view of the cited references.

As regards the scope and content of the prior art, the Matsura, Wakabayashi, and Ueda references disclose compositions comprising reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$. The Chopra reference discloses that a formulation comprising ubiquinol (reduced coenzyme Q, and preferably reduced coenzyme $Q_{10}$) can be administered as a pharmaceutical.

For the purposes of the present discussion, one of ordinary skill in the art can be considered to be someone with an advanced degree and/or at least a few years of experience in a field relevant to the present invention

The present invention, as defined by the rejected claims, is directed to a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition.

None of the cited references teaches or suggests a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, wherein not less than 0.01 wt% of reduced coenzyme $Q_{10}$ is contained in the composition, as recited by the rejected claims.

The Matsura reference discloses assays of rat hepatocytes. The assayed hepatocytes contain an excess of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ (see, e.g., Table 1). Accordingly, the Matsura reference does not disclose a composition comprising not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, as recited by the rejected claims. Nor does the Matsura reference provide any reason for one of ordinary skill in the art to reduce the content of the reduced coenzyme $Q_9$ to the claimed range in a coenzyme $Q_{10}$-containing composition.

The Wakabayashi reference discloses assays of biological tissues of rat and human. The Wakabayashi reference discloses that the biological tissues of rat contain an excess of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ (see, e.g., Table II). With regard to human serum, the Wakabayashi reference discloses a concentration of reduced coenzyme $Q_{10}$ in serum ranging from 1141.8 ng/mL to 1561.2 ng/mL, which is equivalent to at most 0.00015 wt% when

calculated at a serum specific gravity of 1.025 (see, e.g., Table III). Accordingly, the Wakabayashi reference does not disclose a composition comprising not less than 0.01 wt% of reduced coenzyme $Q_{10}$, as required by the rejected claims.

The inventive composition, which contains reduced coenzyme $Q_{10}$ as an active ingredient, can be used as a food (e.g., a food with nutrient function claims, a food for specified health uses, a drink, an animal feed, and a pet food), a medicament (e.g., a nutritional product, a nutritional supplement, an animal drug, a cosmetic, a pharmaceutical product, a therapeutic drug, a prophylactic drug, and the like), or a material therefor (see, e.g., specification page 1, lines 23-27). The small concentration of reduced coenzyme $Q_{10}$ in the human serum of the Wakabayashi reference cannot satisfactorily serve the aforementioned purposes.

The Ueda and Chopra references disclose compositions comprising reduced coenzyme $Q_{10}$ as an active ingredient. In such compositions, it is desirable to decrease levels of impurities other than reduced coenzyme $Q_{10}$ (see, e.g., paragraph 0082 of Ueda et al. and page 14, last paragraph, of Chopra). In particular, Ueda et al. discloses reducing the amount of reduced coenzyme $Q_9$ in coenzyme $Q_{10}$ compositions, wherein both the starting and ending values of reduced coenzyme $Q_9$ fall outside the claimed range (e.g., 0.40% of reduced coenzyme $Q_9$ in Examples 1, 5, and 7 and 1.00% in Example 8 were further reduced to 0.21%, 0.24%, 0.23%, and 0.52%, respectively, all of which fall outside the 1.5 wt% to 99 wt% concentration range recited in the rejected claims).

One of ordinary skill in the art would not have had any reason to increase the amount of reduced coenzyme $Q_9$ in the composition of the Ueda reference since it is clear that the Ueda reference aims to decrease the amount of coenzyme $Q_9$ as much as possible. Similarly, one of ordinary skill in the art would not have had any reason to add reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$-containing composition.

As of the effective filing date of the present application, one of ordinary skill in the art would not have appreciated the superior effects provided by the inventive composition from the disclosures of the cited references. In particular, the inventive composition provides for the protection of reduced coenzyme $Q_{10}$ from oxidation and improvement in the absorbance of coenzyme Q (see, e.g., specification page 3, lines 13-34).

While Chopra discloses a formulation to stabilize reduced coenzyme $Q_{10}$, Chopra does not teach or suggest the inclusion of reduced coenzyme $Q_9$ in the reduced coenzyme $Q_{10}$ formulation. Indeed, while Chopra discloses a number of agents, including antioxidants, to stabilize reduced enzyme $Q_{10}$ (see pages 8-9), none of the disclosed stabilization agents is even a reduced coenzyme Q analog, let alone reduced coenzyme $Q_9$ or reduced coenzyme $Q_{11}$.

As of the effective filing date of the present application, one of ordinary skill in the art would not have appreciated that reduced coenzyme $Q_9$ is conducive to the oxidative stability of reduced coenzyme $Q_{10}$. The portion of a reduced coenzyme Q analog that exhibits antioxidant activity is a hydroquinone moiety. Reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ have a common hydroquinone moiety and have the same basic structure (except the length of the isoprenyl group bonded to the hydroquinone skeleton, which differs by one unit). Accordingly, one of ordinary skill in the art would have considered that reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ have the same basic structure and the same active site, such that one of ordinary skill in the art would have expected reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ to have the same level of antioxidant activity. One of ordinary skill in the art would have been aware of the common belief that, when substances having the same level of antioxidant activity are co-present, the substances do not influence the oxidative stability of each other. Therefore, as of the effective filing date of the present application, one of ordinary skill in the art would not have expected reduced coenzyme $Q_9$ to stabilize reduced coenzyme $Q_{10}$ in a coenzyme $Q_{10}$-containing composition.

Considering all of the *Graham* factors together, it is clear that the present invention – as defined by the pending claims – would not have been obvious to one of ordinary skill in the art at the relevant time in view of the combined disclosures of the Matsura, Wakabayashi, Ueda, and Chopra references. Accordingly, the obviousness rejection should be withdrawn.

*Conclusion*

Applicants respectfully submit that the patent application is in condition for allowance. If, in the opinion of the Examiner, a telephone conference would expedite the prosecution of the subject application, the Examiner is invited to call the undersigned attorney.

Respectfully submitted,

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: September 10, 2009

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/741,290 | Filing Date<br>04/27/2007 | ☒ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY ☐ RATE ($) | FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT | 09/10/2009 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 21 | = 0 | X $ = | | OR | X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | ***4 | = 0 | X $ = | | OR | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/GOIGA N. DUCKETT/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

23460 7590 07/28/2009
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

| EXAMINER | |
|---|---|
| HOBBS, LISA JOE | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1657 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/28/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Advisory Action Before the Filing of an Appeal Brief** | **Application No.** 11/741,290 | **Applicant(s)** UEDA ET AL. | |
|---|---|---|---|
| | **Examiner** Lisa J. Hobbs | **Art Unit** 1657 | |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

THE REPLY FILED 10 July 2009 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

1. ☒ The reply was filed after a final rejection, but prior to or on the same day as filing a Notice of Appeal. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. The reply must be filed within one of the following time periods:
   a) ☒ The period for reply expires 3 months from the mailing date of the final rejection.
   b) ☐ The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.
   Examiner Note: If box 1 is checked, check either box (a) or (b). ONLY CHECK BOX (b) WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

NOTICE OF APPEAL

2. ☐ The Notice of Appeal was filed on ____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

AMENDMENTS

3. ☐ The proposed amendment(s) filed after a final rejection, but prior to the date of filing a brief, will not be entered because
   (a) ☐ They raise new issues that would require further consideration and/or search (see NOTE below);
   (b) ☐ They raise the issue of new matter (see NOTE below);
   (c) ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or
   (d) ☐ They present additional claims without canceling a corresponding number of finally rejected claims.
   NOTE: ____. (See 37 CFR 1.116 and 41.33(a)).
4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).
5. ☐ Applicant's reply has overcome the following rejection(s): ____.
6. ☐ Newly proposed or amended claim(s) ____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).
7. ☐ For purposes of appeal, the proposed amendment(s): a) ☐ will not be entered, or b) ☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.
   The status of the claim(s) is (or will be) as follows:
   Claim(s) allowed: ____.
   Claim(s) objected to: ____.
   Claim(s) rejected: ____.
   Claim(s) withdrawn from consideration: ____.

AFFIDAVIT OR OTHER EVIDENCE

8. ☐ The affidavit or other evidence filed after a final action, but before or on the date of filing a Notice of Appeal will not be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).
9. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will not be entered because the affidavit or other evidence failed to overcome all rejections under appeal and/or appellant fails to provide a showing a good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).
10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

REQUEST FOR RECONSIDERATION/OTHER

11. ☒ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: See Continuation Sheet.
12. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). ____
13. ☐ Other: ____.

/Lisa J. Hobbs/
Primary Examiner
Art Unit: 1657

Continuation of 11. does NOT place the application in condition for allowance because: applicant's arguments have been carefully considered but are not deemed persuasive. Applicant argues that the rejection under 35 USC 102(b) should be withdrawn since the compositions in Wakabayashi et al. do not encompass the range enumerated in the independent claim. However, Wakabayashi et al. teach in Fig. 3, panel A, that in healthy human serum there is a mix of CoQnH2 comprising CoQ9H2 and CoQ10H2 wherein the level of CoQ9H2 is about half the level of the CoQ10H2, which level is within the 1.5% to 99% range recited in claim 7. As well, Wakabayashi et al. teach in Table III that the levels of CoQnH2 in human serum comprise about 2% to 4% CoQ9H2 to CoQ10H2.

Applicants also argue that the rejection of the claims under 35 USC 103(a) should be withdrawn because the claimed range of CoQ9H2 relative to CoQ10H2 are not disclosed in any of the the cited references. Applicants cite table I of Matsura et al. and Table II of Wakabayshi et al. However, as discussed above, Wakabayashi et al. disclose in Fig. 3 and Table III that human serum comprises reduced CoQ9 and CoQ10 in proportions that are within the range claimed in the instant claim. Applicants also argue that Ueda et al. and Chopra et al. do not teach the ranges claimed in the instant claims, however Wakabayashi et al. teach that the range recited in the instant claims encompasses the leves of compounds naturally present in humans. Ueda et al. do teach that reduced CoQ9, CoQ8 and CoQ7 are known to be present in humans, see claim 62. Chopra et al. also disclose that"[t]he term "coenzylne Q" or "ubiquinone" is used throughout the present specification to describe a group of lipid soluble benzoquinones involved in electron transport in mitochondrial preparations, i.e., in the oxidation of succinate or reduced nicotine adenine dinucleotide (NADH) via the cytochrome system. According to the existing dual system of nomenclature, the compounds can be described as: coenzyme Qn, where n is 1-12 or ubiquinone (x) in which x designates the total number of carbon atoms in rthe side chain and can be any multiple of 5. Differences in properties are due to to the difference in the chain length. The preferred ubiquinone for use in the present invention is the reduced form of coenz3rme Q~0 (Ubidecarenone) or ubiquinol" [page 6]. They teach that those of skill in the prior art know that CoQnH2 compounds encompass 9, 10 or 11. At page 7 they teach that they envision the reduced CoQ10 to be preferably 1-3 times the amount of the agent that keeps it in the reduced state; "[t]he amount of ubiqunol which is included in compositions to be encapsulated ranges from about 0.1 to about 10.0 times, more preferably about 1 to about 3 times the amount (in weight percent) of the lipid soluble reducing agent which is included in compositions accordmg to the present invention".

Applicants argue that one of skill would not have modified Ueda et al. or Chopra et al. to add the various components of the instant composition to their compositions, however the references are not considered individually. When taken as a whole, the references teach that compositions comprising reduced CoQ9 and reduced CoQ10 at the levels claimed in the instant claims are known in the art, the presence of reduced CoQ11 and other CoQn compounds in these mixed compositions is known. Crystallization of CoQn compounds and reduced CoQn compounds is known. Medicaments of various kinds comprising CoQn compounds and reduced CoQn compounds is known. As well, applicants argue that one of skill would not have known of the superior effects and provision of protection that the instant compound affords. However, the various components of the instant composition are known, i.e., reduced CoQ9-11, and the range of the recited relationship between the compounds is known as comprising the levels present in human serum, which would make a medicament comprising such a range desirable since one of skill would want to mimic the natural condition.

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Takahiro Ueda

Filed: April 27, 2007

TC/AU: 1657

Examiner: Lisa Joe Hobbs

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

**RESPONSE UNDER 37 CFR 1.116**
**EXPEDITED PROCEDURE**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**REPLY TO OFFICE ACTION**

Sir:

In reply to the Office Action dated April 10, 2009, please consider the following remarks.

**Remarks/Arguments** begin on page 2 of this paper.

*REMARKS/ARGUMENTS*

*The Pending Claims*

Claims 1, 4-7, 10-18, 20, 22, and 23 are pending and are directed to a reduced coenzyme $Q_{10}$-containing composition (claims 7, 10-15, 22, and 23), an oral dosage form comprising the reduced coenzyme $Q_{10}$-containing composition (claims 16 and 17), a method for stabilizing reduced coenzyme $Q_{10}$ by utilizing the reduced coenzyme $Q_{10}$-containing composition (claims 1 and 4-6), and methods for producing the reduced coenzyme $Q_{10}$-containing composition (claims 18 and 20). Claims 1, 4-6, 18, and 20 have been withdrawn since the claims are directed to non-elected subject matter belonging to Groups I, III, and IV identified in the restriction requirement set out in the Office Action dated October 1, 2008.

As set forth in the Office Action dated October 1, 2008 (see pages 5-6) and in accordance with MPEP § 806.05(f), when the Office requires restriction between product and process claims and Applicants elect claims directed to the product, which claims are subsequently found to be allowable, withdrawn process claims that depend from or otherwise include all of the limitations of the allowable product claims will be rejoined in accordance with the provisions of MPEP § 821.04. Process claims that depend from or otherwise include all of the limitations of the patentable product will be entered as a matter of right if the amendment is presented prior to final rejection or allowance, whichever is earlier. In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR § 1.104.

Non-elected claims 1, 4-6, 18, and 20 are directed to methods employing the elected composition. Thus, claims 1, 4-6, 18, and 20 include all of the limitations of at least claim 7 of elected Group II. Such claims must be rejoined and examined together with the product claims. Applicants therefore request that, upon a finding by the Office that a claim of elected Group II is in condition for allowance, the restriction requirement as to the process claims (i.e., the claims of Groups I, III, and IV) be withdrawn.

*Summary of the Office Action*

The Office rejects claims 7-11, 13-15, and 22 under 35 U.S.C. § 102(b) as allegedly anticipated by Wakabayashi et al. (*Biol. Pharm. Bull., 17(18)*: 997-1002 (1994)).

The Office rejects claims 7, 10-17, 22 and 23 under 35 U.S.C. § 103(a) as allegedly unpatentable over Matsura et al. (*Biochim. Biophys. Acta, 1127*: 277-283 (1992)), Wakabayashi et al., Ueda et al. (U.S. Patent Application Publication 2005/0008630), and Chopra (International Patent Application Publication WO 01/52822).

Reconsideration of these rejections is hereby requested.

*Discussion of the Anticipation Rejection*

The Office contends that Wakabayashi et al. teaches a range of amounts of reduced and oxidized $CoQ_{10}$ and $CoQ_9$ that allegedly fall within the claimed range. This rejection is traversed for the following reasons.

The Wakabayashi reference discloses the amounts of reduced coenzyme $Q_9$ and $Q_{10}$ in samples of rat cells as measured by HPLC. In the samples, the content of reduced coenzyme $Q_9$ is higher than that of (i.e., exceeds 100% relative to) reduced coenzyme $Q_{10}$ (see Table II). Thus, the content of reduced enzyme $Q_9$ is higher than the maximum of 99 wt% relative to reduced coenzyme $Q_{10}$, as recited in the pending claims (see Table II).

Since Wakabayashi et al. does not disclose a composition containing "not less than 1.5% to not more than 99% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$", or reduced coenzyme $Q_{11}$, as required by the pending claims, Wakabayashi et al. cannot be considered to anticipate the subject matter of the pending claims. Therefore, Applicants request that the anticipation rejection be withdrawn.

*Discussion of the Obviousness Rejection*

The Office contends that the pending claims are obvious in view of the disclosures of the Matsura, Wakabayashi, Ueda, and Chopra references. The obviousness rejection is traversed for the following reasons.

For subject matter defined by a claim to be considered obvious, the Office must demonstrate that the differences between the claimed subject matter and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); see also *Graham v. John Deere Co*., 383 U.S. 1, 148 U.S.P.Q. 459 (1966). The ultimate determination of whether an invention is or is not obvious is based on certain factual inquiries including: (1) the scope and content of the prior art, (2) the level of ordinary skill in the prior art, (3) the differences between the claimed invention and the prior art, and (4) objective evidence of nonobviousness. *Graham*, 383 U.S. at 17-18, 148 U.S.P.Q. at 467.

Consideration of the aforementioned *Graham* factors here indicates that the present invention, as defined by the pending claims, is unobvious in view of the cited references.

As regards the scope and content of the prior art, the Matsura, Wakabayashi, and Ueda references disclose compositions, wherein the amount of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ falls outside the claimed range of 1.5 wt% to 99 wt%. The Chopra reference discloses that a formulation comprising ubiquinol (reduced coenzyme Q, and preferably reduced coenzyme $Q_{10}$) can be administered as a pharmaceutical. The Chopra reference does not teach or suggest the inclusion of reduced coenzyme $Q_9$ in the formulation. None of the cited references discloses reduced coenzyme $Q_{11}$.

The present invention, as defined by the pending claims, is directed to a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, as well as methods employing the reduced coenzyme $Q_{10}$-containing composition.

None of the cited references teaches or suggests a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, as recited by the pending claims.

The Matsura and Wakabayashi references disclose assays of biological tissues of rat and human, which tissues mainly contain coenzyme $Q_9$ as coenzyme Q. The assayed tissues contain

an excess of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ (see, e.g., Table 1 of Matsura et al. and Table II of Wakabayashi et al.). Accordingly, the Matsura and Wakabayashi references do not disclose a composition comprising not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, as recited by the pending claims. Nor do these references provide any rationale for reducing the reduced coenzyme $Q_9$ content to the claimed range in a coenzyme $Q_{10}$-containing composition.

The Ueda and Chopra references disclose a composition comprising reduced coenzyme $Q_{10}$ as an active ingredient. In such compositions, it is desirable to decrease levels of impurities other than reduced coenzyme $Q_{10}$ (see, e.g., paragraph [0082] of Ueda et al. and page 14, last paragraph, of Chopra). In particular, Ueda et al. discloses reducing the amount of reduced coenzyme $Q_9$ in coenzyme $Q_{10}$ compositions, wherein both the starting and ending values of reduced coenzyme $Q_9$ fall outside the claimed range (e.g., 0.40% of reduced coenzyme $Q_9$ in Examples 1, 5, and 7 and 1.00% in Example 8 were further reduced to 0.21%, 0.24%, 0.23%, and 0.52%, respectively, all of which fall outside the 1.5 wt% to 99 wt% required by the pending claims).

One of ordinary skill in the art would not had any reason to increase the amount of reduced coenzyme $Q_9$ in the Ueda reference since it is clear that the Ueda reference aims to decrease the amount of coenzyme $Q_9$ as much as possible. Similarly, one of ordinary skill in the art would not have had any reason to add reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$-containing composition.

As of the effective filing date of the present application, one of ordinary skill in the art would not have appreciated the superior effects provided by the inventive composition from the disclosures of the cited references. In particular, the inventive composition provides for the protection of reduced coenzyme $Q_{10}$ from oxidation and improvement in the absorbance of coenzyme Q (see, e.g., page 3, lines 13-34, of the specification).

While Chopra discloses a formulation to stabilize reduced coenzyme $Q_{10}$, Chopra does not teach or suggest the inclusion of reduced coenzyme $Q_9$ in the reduced coenzyme $Q_{10}$ formulation. Chopra discloses a number of reducing agents, including antioxidants, to stabilize reduced enzyme $Q_{10}$ (see pages 8-9); however, none of the disclosed reducing agents are reduced coenzyme Q analogs, such as reduced coenzyme $Q_9$ or reduced coenzyme $Q_{11}$.

As of the effective filing date of the present application, one of ordinary skill in the art would not have appreciated that reduced coenzyme $Q_9$ is conducive to the oxidative stability of reduced coenzyme $Q_{10}$. The unit showing antioxidant activity in a reduced coenzyme Q analog is a hydroquinone moiety. Reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ have a common hydroquinone moiety and have the same basic structure (except the length of the isoprenyl group bonded to the hydroquinone skeleton, which differs by one unit). Accordingly, one of ordinary skill in the art would have considered that reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ have the same basic structure and the same active site, such that they have the same level of antioxidant activity. One of ordinary skill in the art would have been aware of the common belief that when substances having the same level of antioxidant activity are co-present, they do not influence the oxidative stability of each other. Therefore, as of the effective filing date of the present application, one of ordinary skill in the art would not have recognized that reduced coenzyme $Q_9$ would stabilize reduced coenzyme $Q_{10}$ in a coenzyme $Q_{10}$-containing composition.

Considering all of the *Graham* factors together, it is clear that the present invention – as defined by the pending claims – would not have been obvious to one of ordinary skill in the art at the relevant time in view of the combined disclosures of the Matsura, Wakabayashi, Ueda, and Chopra references. Accordingly, the obviousness rejection should be withdrawn.

*Conclusion*

Applicants respectfully submit that the patent application is in condition for allowance. If, in the opinion of the Examiner, a telephone conference would expedite the prosecution of the subject application, the Examiner is invited to call the undersigned attorney.

Respectfully submitted,

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: July 10, 2009

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5682500 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Frank Beardslee |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 10-JUL-2009 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 17:04:06 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Authorization for Extension of Time all replies | ROATransmittal-2nd.pdf | 48746<br>a6cee33165a850c8e8d1553f6f05e953002e9403 | no | 1 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Amendment After Final | ROA-2nd.pdf | 308262<br>fee7a4ffccbb05e4d8d80231c92774fe4426d4fb | no | 6 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 357008 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

FORM PTO-1083

**PATENT**
Attorney Docket No. 701554
Client Reference No. 201659
Date: July 10, 2009

In re Application of: Takahiro Ueda
Application No. 11/741,290
Confirmation No. 2693
Filed: April 27, 2007

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith is a reply to office action in the subject application.

☐ Small entity status is claimed for this application under 37 CFR 1.27.

☒ Petition for an extension of time for the period noted below, as well as for any additional period necessary to render the present submission timely. Please charge Deposit Account No. 12-1216 for the appropriate petition fee.

☐ Other:

☒ Please charge Deposit Account No. 12-1216 in the total amount indicated below.

| | | | | | SMALL ENTITY | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| TIME EXTENSION PETITION FEE | | | none | | $ 0.00 | | $ 0.00 | |
| subtract time extension fee previously paid | | | none | | ($ 0.00) | | ($ 0.00) | |
| | | | | | | | | |
| CLAIM FEE | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | EXTRA CLAIMS PRESENT | RATE | ADD'L CLAIM FEE | RATE | ADD'L CLAIM FEE |
| TOTAL | 17 | MINUS | 21 | = 0 | x 26 = | $ | x 52 = | $0.00 |
| INDEPENDENT | 4 | MINUS | 4 | = 0 | x 110 = | $ | x 220 = | $0.00 |
| ☐ FIRST PRESENTATION OF MULTIPLE CLAIM | | | | | + 195 = | $ | + 390 = | $0.00 |
| | | | | | | | | |
| **TOTAL AMOUNT TO BE CHARGED TO DEPOSIT ACCOUNT** | | | | | TOTAL | $ | TOTAL | $0.00 |

☒ The Commissioner is hereby authorized to charge any deficiencies in the following fees associated with this communication or credit any overpayment to Deposit Account No. 12-1216.
- ☒ Any filing fees under 37 CFR 1.16 for the presentation of extra claims.
- ☒ Any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

LEYDIG, VOIT & MAYER, LTD.

By [signature]
John Kilyk, Jr., Reg. No. 30,763

LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/741,290 | Filing Date<br>04/27/2007 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY ☐ RATE ($) | SMALL ENTITY FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY FEE ($) |
|---|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT 07/10/2009 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 17 | Minus | ** 21 | = 0 | X $ = | | OR | X $52= | 0 |
| Independent (37 CFR 1.16(h)) | * 4 | Minus | ***4 | = 0 | X $ = | | OR | X $220= | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 0 |

| AMENDMENT | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/Kim Downing/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

23460 7590 04/10/2009
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

| EXAMINER | |
|---|---|
| HOBBS, LISA JOE | |
| **ART UNIT** | **PAPER NUMBER** |
| 1657 | |
| **MAIL DATE** | **DELIVERY MODE** |
| 04/10/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| ***Office Action Summary*** | **Application No.**<br>11/741,290 | **Applicant(s)**<br>UEDA ET AL. | |
|---|---|---|---|
| | **Examiner**<br>Lisa J. Hobbs | **Art Unit**<br>1657 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *30 December 2008*.

2a)☒ This action is **FINAL**. 2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1,4-7,10-18,20,22 and 23* is/are pending in the application.

4a) Of the above claim(s) *1,4-6,18 and 20* is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *7,10-17,22 and 23* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

## DETAILED ACTION

### *Election/Restrictions*

Applicant's affirmation of the election with traverse of Group II in the reply filed on 30 December 2008 is acknowledged. The traversal is on the ground(s) that there would not be a serious search burden since all groups recite similar coenzyme Q10-containing compositions within the methods or products of the group. This is not found persuasive because the considerations for method claims, regarding enablement, scope, new matter and utility are very different from the determinations for a specific composition. Upon indication of allowable material in the composition claims, the appropriate process claims will be rejoined and examined.

The requirement is still deemed proper and is therefore made FINAL.

### *Priority*

Receipt is acknowledged of papers submitted under 35 U.S.C. 119(a)-(d), which papers have been placed of record in the file.

Should applicant desire to obtain the benefit of foreign priority under 35 U.S.C. 119(a)-(d) prior to declaration of an interference, a certified English translation of the foreign application must be submitted in reply to this action. 37 CFR 41.154(b) and 41.202(e).

Failure to provide a certified translation may result in no benefit being accorded for the non-English application.

### *Oath/Declaration*

The new oath has been received and entered.

***Claim Status***

Claims 1, 4-7, 10-18, 20, 22-23 are active in the case. Claims 2, 8-9, 19 and 21 have been cancelled by amendment. Claims 7, 10-17, 22-23 are under examination; claims 1, 4-6, 18, 20 are withdrawn as drawn to a non-elected invention.

***Claim Rejections - 35 USC § 102***

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The rejection of claims 7, 11, and 13-15 under 35 U.S.C. 102(b) as being anticipated by Matsura et al. ((1992) Biochim. Biophys. Acta 1127: 277-283 is withdrawn in light of the amendments to the claims.

Claims 7, 11, 13-15, and 22 are rejected under 35 U.S.C. 102(b) as being anticipated by Wakabayashi et al. ((1994) Biol. Pharm. Bull. 17(8): 997-1002). Wakabayashi et al. teach a composition comprising CoQ10H2 and not less than 1 wt% of CoQ9H2 (see p. 1001, col. 1 and Table II), wherein the composition is in a pharmaceutically acceptable carrier (normal human and rat blood, plasma, and serum and the same samples in ethanol, p. 998, col. 1, and p. 1001, col. 1), which could be administered to a mammal, is also suspended in a solvent, distilled water, ethanol, menaquinone and hexane (p. 998, col. 1), further comprises another component (ethanol, a solubilizing agent), and comprises CoQ10H2 as an active ingredient.

The rejection of claims 7-11, and 13-15 under 35 U.S.C. 102(b) as being anticipated by Ueda et al. (US 2005/0008630 A1) is withdrawn in light of the amendments to the claims.

***Response to Arguments***

Applicant's arguments filed 30 December 2008 have been fully considered but they are not persuasive. The Wakabayashi et al. reference teaches a range of amounts of reduced and oxidized CoQ10 and CoQ9. Table II teaches some compositions where the amounts of the two components are roughly equal. Therefore the rejection is maintained.

***Claim Rejections - 35 USC § 103***

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

Claims 7, 10-17, 22 and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable over Matsura et al., Wakabayashi et al. Ueda et al., and Chopra (WO 01/52822 A1). Matsura et al. teach that both CoQ10H2 and CoQ9H2 are potent antioxidants with independent activity in radical scavenging to protect cells against oxidative stress (p. 282, col. 2). Each of Matsura et al., Wakabayashi et al. and Ueda et al., as discussed above, teach compositions of the active ingredient CoQ10H2 comprising varying amounts of CoQ9H2 with solubilizing agents, pharmaceutically acceptable carriers and further comprising additional components, for example citric acid for stabilization properties (Ueda et al. [0079]). Ueda et al. teach crystallization of the reduced coenzyme ([0080-0096]).

Chopra teaches the administration of CoQ10H2 compositions as medicaments. He teaches pharmaceutical compositions comprised within oral dosage forms such as soft gel capsules (p. 5), hard gel capsules (p. 17), and other medical preparations (p. 18-19) such as lozenges and gum. He discloses reducing agents (p. 9) used in order to maintain the effectiveness of the coenzyme and solubilization agents (p. 9) which are pharmaceutically acceptable.

It would have been obvious to one of ordinary skill at the time the invention was made to combine the teachings of Matsura et al. with those of Wakabayashi et al., Ueda et al., and Chopra to obtain the invention as recited in the instant claims. One would be motivated to do so in the interests of creating a bioavailable nutritional supplement that assists in free radical scavenging, hopefully ameliorating disease states associated with oxidative tissue damage or mitochondrial dysfunction (Chopra p. 1). One would have a reasonable expectation of success in that Matsura et al. and Wakabayashi et al. disclose that CoQ9H2 is present in normal serum, blood, and tissues along with CoQ10H2 and each of the references discloses the beneficial properties of reduced coenzyme Q10. Matsura et al. teach that CoQ9H2 has similar properties and Ueda et al. teach methods of creating stabilized preparations for administration, including crystals.

***Response to Arguments***

Applicant's arguments filed 30 December 2008 have been fully considered but they are not persuasive. Applicants argue that the amounts of CoQ9 and CoQ10 in the prior art do not specifically meet the newly added limitations to the claims and that Chopra does not teach or suggest using CoQ9H2. However, as discussed above, the references teach preparations of CoQ10H2 comprising CoQ9H2 in varying amounts. They teach that natural compositions have combined some CoQ9H2 with the CoQ10H2 and that the preparations may beneficially comprise both types of CoQ, as well as other components, such as small amounts of CoQ11 and other variants of CoQ10 that are known by those of skill in the art to be present in vivo. Chopra teaches that medical administration of CoQ preparations is known in the art as is the fact that maintaining a reduced state is important to the efficacy of the CoQ10H2. Applicant argues that

the instant aim of protecting the CoQ10H2 from oxidation is not taught in the prior art, however Chopra teaches “a composition in oral dosage form comprising: ubiquinol; an amount of a reducing agent effective to reduce or eliminate the oxidation of said ubiquinol to ubiquinone…” (claim 27). Therefore the rejection is maintained.

### *Art of Record*

The examiner notes the following prior art not relied upon in a rejection: Lekli et al. ((2008) J. Agric. Food Chem. 56: 5331-5337). Although published recently, not before April 2006, Lekli et al. disclose current research into cardioprotection of CoQ9H2 in addition to CoQ10H2 and the beneficial effects of administration of both compounds. Also noted is Morre et al. (US 6878514 B2) a reference which teaches the administration of ubiquinone mixtures, not ubiquinol, for the treatment of a particular medical condition however it is noted the mixtures comprise all natural variants of CoQ10 from CoQ2 – CoQ12.

### *Conclusion*

No claims are allowed.

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Lisa J. Hobbs whose telephone number is 571-272-3373. The examiner can normally be reached on Hotelling - Generally, 9-6 M-F.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jon P. Weber can be reached on 571-272-0925. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Lisa J. Hobbs/
Primary Examiner
Art Unit 1657

ljh

| *Notice of References Cited* | Application/Control No.<br>11/741,290 | Applicant(s)/Patent Under Reexamination<br>UEDA ET AL. | |
|---|---|---|---|
| | Examiner<br>Lisa J. Hobbs | Art Unit<br>1657 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,878,514 | 04-2005 | Morre et al. | 435/4 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. 11741290 | Applicant(s)/Patent Under Reexamination UEDA ET AL. |
|---|---|---|
| | Examiner Lisa J Hobbs | Art Unit 1657 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/27/2008 | 03/30/2009 | | | | | | | | |
| | 1 | N | N | | | | | | | | |
| | 2 | N | - | | | | | | | | |
| | 3 | N | N | | | | | | | | |
| | 4 | N | N | | | | | | | | |
| | 5 | N | N | | | | | | | | |
| | 6 | N | N | | | | | | | | |
| | 7 | ✓ | ✓ | | | | | | | | |
| | 8 | ✓ | - | | | | | | | | |
| | 9 | ✓ | - | | | | | | | | |
| | 10 | ✓ | ✓ | | | | | | | | |
| | 11 | ✓ | ✓ | | | | | | | | |
| | 12 | ✓ | ✓ | | | | | | | | |
| | 13 | ✓ | ✓ | | | | | | | | |
| | 14 | ✓ | ✓ | | | | | | | | |
| | 15 | ✓ | ✓ | | | | | | | | |
| | 16 | ✓ | ✓ | | | | | | | | |
| | 17 | ✓ | ✓ | | | | | | | | |
| | 18 | N | N | | | | | | | | |
| | 19 | N | - | | | | | | | | |
| | 20 | N | N | | | | | | | | |
| | 21 | N | - | | | | | | | | |
| | 22 | | ✓ | | | | | | | | |
| | 23 | | ✓ | | | | | | | | |

| ***Search Notes*** | **Application/Control No.**<br>11741290 | **Applicant(s)/Patent Under Reexamination**<br>UEDA ET AL. |
|---|---|---|
| | **Examiner**<br>Lisa J Hobbs | **Art Unit**<br>1657 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Text search performed. | 27 Sept 2008 | LJH |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST and STN searched, searches attached. | 27 Sept 2008 | LJH |
| Inventor names searched in eDAN. | 27 Sept 2008 | LJH |
| Consulted E. Kemmerer on restriction, Y. Eyler on oath, R. Wax on claim language. | 27 Sept 2008 | LJH |
| EAST, STN and inventor name searches updated. | 29 Mar 2009 | LJH |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 2693**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007<br>**RULE** | 435 | 1657 | 701554 |

**APPLICANTS**
Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

** **CONTINUING DATA** *************************

** **FOREIGN APPLICATIONS** *************************
JAPAN 2006-126897 04/28/2006

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **
05/22/2007

| | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| Foreign Priority claimed ☑ Yes ☐ No<br>35 USC 119(a-d) conditions met ☑ Yes ☐ No<br>Verified and Acknowledged /LISA J. HOBBS/ Examiner's Signature | ☐ Met after Allowance<br>Initials | JAPAN | 2 | 21 | 4 |

**ADDRESS**

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731
UNITED STATES

**TITLE**

STABILIZATION METHOD OF REDUCED COENZYME Q10

| FILING FEE RECEIVED | FEES: Authority has been given in Paper | |
|---|---|---|
| 1380 | No.____________ to charge/credit DEPOSIT ACCOUNT<br>No.____________ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other ________________<br>☐ Credit |

**EAST Search History**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L10 | 7 | "20050008630" or "20040197886" or "20050074860" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:27 |
| L11 | 5 | L10 and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:27 |
| L12 | 0 | L10 and ".sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:28 |
| L13 | 0 | l10 and "q.sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:30 |
| L14 | 730 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| L15 | 480 | L14 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| L16 | 59 | L15 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |

KAN0000126

| | | | | | | |
|---|---|---|---|---|---|---|
| L17 | 1 | L16 and "q.sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2009/03/30 10:31 |
| S45 | 688 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S46 | 447 | S45 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S47 | 56 | S46 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:31 |
| S48 | 16 | coenzyme ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S49 | 2 | coenzyme ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S50 | 2 | coenzyme near ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S51 | 16 | coenzyme near ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:35 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S52 | 28681 | ubiquinol$2 or ubiquinone$2 or ubidecarenone$2 or ubihydroquinone$2 or (dimethyoxy near dimethyl near decaprenyl) or (dimethyoxy near methyl) or benzoquinone | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:05 |
| S53 | 15417 | S52 and (stable or stabiliz$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S54 | 12413 | S53 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S55 | 5896 | S54 and "Q" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:07 |
| S56 | 17 | S55 and "wt%" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:08 |
| S57 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:44 |
| S58 | 0 | S57 and (Q adj "9") and (Q adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |
| S59 | 1 | S57 and ("9") and ("10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S60 | 1 | S57 and ("9") and ("10") and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S61 | 1 | S60 and "40" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S62 | 0 | S61 and (coQ9H2) and (coQ10H2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| S63 | 1 | S61 and ("q.sub.10") and ("q.sub.9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:51 |
| S64 | 0 | S62 and ("q.sub.11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:52 |
| S65 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 22:30 |
| S66 | 20 | "6184255" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:08 |
| S67 | 26 | "6184255" or S65 or S57 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:09 |

KAN0000129

| | | | | | | |
|---|---|---|---|---|---|---|
| S68 | 29 | cis adj reduced | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:10 |
| S69 | 2 | S68 and coenzyme | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:10 |
| S70 | 2 | coenzyme adj "q. sub.11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:12 |
| S71 | 0 | coq11 oe coq11h2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:13 |
| S72 | 1 | coq11 or coq11h2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:13 |
| S73 | 19 | ubichromenol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 23:14 |
| S74 | 109228 | ueda.in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:18 |
| S75 | 159 | S74 and coenzyme | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:18 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S76 | 30 | S75 and "q.sub.10" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:19 |
| S77 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S78 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S79 | 26 | "6184255" or S78 or S77 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S80 | 48 | S76 or S79 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:26 |
| S81 | 2 | S80 and ("q.sub.11" or ubichromenol$2 or (cis adj reduced)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 09:28 |
| S82 | 2 | coenzyme adj "q" adj crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:38 |
| S83 | 6 | coenzyme near "q" near crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:38 |

KAN0000131

| | | | | | | |
|---|---|---|---|---|---|---|
| S84 | 65 | ueda.in. and coenzyme and crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:40 |
| S85 | 46 | S84 and (ubichromenol or cis or "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:40 |
| S86 | 7 | S84 and "q.sub.8" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:48 |
| S87 | 26 | S84 and impurit$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:54 |
| S88 | 8 | ueda.in. and ("q.sub.10" or "q.sub.9" or "q.sub.8" or "q.sub.11") and impurity | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 10:57 |
| S89 | 6 | coenzyme and cis and ueda.in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:19 |
| S90 | 46 | coenzyme and cis and "q.sub.10" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:20 |
| S91 | 127 | coenzyme and "q.sub.10" and crystal$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:36 |

Case 1:23-cv-07483-SJB-SDE Document 100-4 Filed 12/01/25 Page 122 of 330
PageID #: 5584

| | | | | | | |
|---|---|---|---|---|---|---|
| S92 | 1 | 2005/0008630 or 2004/0197886 or 2005/0074860 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:56 |
| S93 | 7 | "20050008630" or "20040197886" or "20050074860" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/28 11:56 |

**3/30/2009 10:51:28 AM**
**C:\ Documents and Settings\ lhobbs\ My Documents\ EAST\ Workspaces\ coenzyme Q10 stabilization.wsp**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4539374 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Frank Beardslee |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 30-DEC-2008 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 17:47:29 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Authorization for Extension of Time all replies | ROATransmittal-1st.pdf | 49158<br>a26feb2a8a0e1ae97c53ac2962d751b94237a01c | no | 1 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Amendment/Req. Reconsideration-After Non-Final Reject | ROA-1st.pdf | 490585<br>bab0dd03c8990fdd03920ab9e5feeedae2b8c65c | no | 11 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Oath or Declaration filed | Declaration.pdf | 129864<br>7e16e0b87217c08a1cbbbffcd300b79b88a1eec1 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 669607 | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Lisa Joe Hobbs

Filed: April 27, 2007

TC/AU: 1657

Examiner: Takahiro Ueda

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REPLY TO OFFICE ACTION

Sir:

In reply to the Office Action dated October 1, 2008, please enter the following amendments and consider the following remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 5 of this paper.

*AMENDMENTS TO THE CLAIMS*

This listing of claims replaces all prior versions, and listings, of claims in the application.

1. (Withdrawn and Currently Amended) A method for stabilizing reduced coenzyme $Q_{10}$, which method comprises preparing a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than ~~0.6~~ 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$,

thereby stabilizing reduced coenzyme $Q_{10}$.

2.-3. (Canceled)

4. (Withdrawn) The method of claim 1, wherein the method comprises

preparing one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

5. (Withdrawn) The method of claim 1, wherein the method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

6. (Withdrawn) The method of claim 1, wherein the reduced coenzyme $Q_{10}$-containing composition is prepared under a deoxygenation atmosphere.

7. (Currently Amended) A reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than ~~0.6~~ 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$.

8.-9. (Canceled)

10. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is in crystalline form.

11. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is dissolved or suspended in a solvent.

12. (Original) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is a melt.

13. (Original) The composition of claim 7, which further comprises a pharmaceutically acceptable carrier.

14. (Original) The composition of claim 7, which is in a form suitable for administration to a mammal and comprises reduced coenzyme $Q_{10}$ as an active ingredient.

15. (Original) The composition of claim 7, which further comprises at least one component selected from the group consisting of an excipient, a disintegrant, a lubricant, a binder, an antioxidant, a coloring agent, an anticoagulant, an absorption promoter, a solubilizing agent for the active ingredient, a stabilizer, an active ingredient other than reduced coenzyme $Q_{10}$, and combinations thereof.

16. (Original) An oral dosage form comprising the composition of claim 15, which dosage form is a capsule.

17. (Original) The oral dosage form of claim 16, wherein the capsule is a microcapsule, a soft capsule, or a hard capsule.

18. (Withdrawn and Currently Amended) A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

preparing one or both of (a) reduced coenzyme $Q_9$ and (b) reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than ~~0.6~~ 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$.

19. (Canceled)

20. (Withdrawn and Currently Amended) A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than ~~0.6~~ 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$.

21. (Canceled)

22. (New) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

23. (New) The composition of claim 7, wherein the reduced coenzyme $Q_{10}$-containing composition comprises reduced coenzyme $Q_{11}$.

*REMARKS/ARGUMENTS*

*The Pending Claims*

Claims 1, 4-7, 10-18, 20, 22, and 23 are pending and are directed to a reduced coenzyme $Q_{10}$-containing composition (claims 7, 10-15, 22, and 23), an oral dosage form comprising the reduced coenzyme $Q_{10}$-containing composition (claims 16 and 17), a method for stabilizing reduced coenzyme $Q_{10}$ by utilizing the reduced coenzyme $Q_{10}$-containing composition (claims 1 and 4-6), and methods for producing the reduced coenzyme $Q_{10}$-containing composition (claims 18 and 20). Claims 1, 4-6, 18, and 20 have been labeled as withdrawn since the claims are directed to non-elected subject matter belonging to Groups I, III, and IV.

*Amendments to the Claims*

Claims 1, 7, 18, and 20 have been amended to recite that the reduced coenzyme $Q_{10}$-containing composition comprises not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, as supported by the specification at, for example, page 8, line 20, through page 9, line 3. Claims 2, 3, 8, 9, 19, and 21 have been canceled. New claims 22 and 23 are dependent on claim 7 and merely recite elements (a) and (b), respectively, of claim 7. No new matter has been added by way of these amendments to the claims.

*Summary of the Office Action*

The Office has issued a restriction requirement between four groups of claims: Group I (claims 1-6), Group II (claims 7-17), Group III (claims 18 and 19), and Group IV (claims 20 and 21).

The Office contends that the oath/declaration is defective.

The Office rejects claims 7-11 and 13-15 under 35 U.S.C. § 102(b) as allegedly anticipated by one or more of (i) Matsura et al. (*Biochim Biophys Acta, 1127*: 277-283 (1992)), (ii) Wakabayashi et al. (*Biol Pharm Bull, 17(18)*: 997-1002 (1994)), and (iii) Ueda et al. (U.S. Patent Application Publication 2005/0008630).

The Office rejects claims 7-17 under 35 U.S.C. § 103(a) as allegedly obvious in view of Matsura et al., Wakabayashi et al., Ueda et al., and Chopra (International Patent Application Publication WO 01/52822).

Reconsideration of these rejections is hereby requested.

*Applicants' Election*

Applicants confirm the telephonic election, with traverse, of the claims of Group II (originally filed claims 7-17).

*Discussion of the Restriction Requirement*

There are two criteria for a proper requirement for restriction between patentably distinct inventions: (i) the inventions must be independent or distinct as claimed, and (ii) there must be a serious burden on the examiner in the absence of restriction. M.P.E.P. § 803. Consequently, as set forth in M.P.E.P. § 803: "If the search and examination of all the claims in an entire application can be made without serious burden, the examiner must examine them on the merits, even though they includes claims to independent or distinct inventions."

Applicants respectfully submit that there would not be a serious burden on the Examiner if the groups of the pending claims were searched together. The nature of the claims, and the subject matter encompassed by the claims, is such that there would be no undue burden on the Examiner to consider all the claims at the same time. Indeed, the claims of non-elected Groups I, III, and IV (i.e., claims 1, 4-6, 18, and 20) all recite the reduced coenzyme $Q_{10}$-containing composition of the claims of elected Group II. Applicants are not asserting that the pending claims necessarily stand and fall together. Instead, Applicants contend that the relationship of the pending claims, and subject matter encompassed by the pending claims, renders the restriction requirement improper.

Accordingly, Applicants respectfully request that the Office withdraw the restriction requirement issued against the pending claims.

If, however, the Office maintains the restriction requirement, Applicants request the rejoinder and examination of the process claims (i.e., the claims of Group I, III, and IV) upon an

indication that one or more of the elected product claims (i.e., claims 7, 10-17, 22, and 23) is in condition for allowance.

As set forth in the Office Action dated October 1, 2008 (see pages 5-6) and in accordance with MPEP § 806.05(f), when the Office requires restriction between product and process claims and Applicants elect claims directed to the product, which claims are subsequently found to be allowable, withdrawn process claims that depend from or otherwise include all the limitations of the allowable product claims will be rejoined in accordance with the provisions of MPEP § 821.04. Process claims that depend from or otherwise include all of the limitations of the patentable product will be entered as a matter of right if the amendment is presented prior to final rejection or allowance, whichever is earlier. In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR § 1.104.

Non-elected claims 1, 4-6, 18, and 20 are directed to methods that involve the reduced coenzyme $Q_{10}$-containing composition of the elected invention (Group II – claims 7, 10-17, 22, and 23). Claims 1, 4-6, 18, and 20 have been amended to include all of the limitations of the reduced coenzyme $Q_{10}$-containing composition of the elected invention. Accordingly, the withdrawn claims should be rejoined and examined together with the product claims upon an indication that the product claims are allowable.

*Discussion of the Resubmitted Oath/Declaration*

The Office contends that the oath/declaration is defective because the signature and signature date of Hiroshi Kubo is obscured. Applicants submit herewith another copy of the original "Combined Declaration for Utility or Design Patent Application and Power of Attorney," in which Hiroshi Kubo's signature and signature date are legible.

*Discussion of the Anticipation Rejections*

The Office contends that claims 7-17 are anticipated by one or more of the Matsura, Wakabayashi, and Ueda references. These rejections are traversed for the following reasons.

The pending claims, as amended, recite a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$.

The Matsura reference discloses the isolation of hepatocytes from rats with diets containing deficient, sufficient, and excess amounts of vitamin E. The amounts of coenzyme Q in the hepatocytes were determined. As set forth in Table 1, the content of reduced coenzyme $Q_9$ is much higher than the maximum of 99 wt% relative to reduced coenzyme $Q_{10}$, as recited in the pending claims. For example, the amount of reduced coenzyme $Q_9$ is about 540 wt% relative to reduced coenzyme $Q_{10}$ in hepatocytes from rats fed an excess amount of vitamin E (416.4/77.1 = 540%) (see Table 1). In rats fed a deficient or sufficient amount of vitamin E, the amount of reduced coenzyme $Q_9$ in hepatocytes is about 726 wt% or 582 wt%, respectively, relative to reduced coenzyme $Q_{10}$ (see Table 1).

The Wakabayashi reference discloses the amounts of reduced coenzyme $Q_9$ and $Q_{10}$ in samples of rat cells as measured by HPLC. In the samples, the content of reduced coenzyme $Q_9$ is higher than the maximum of 99 wt% relative to reduced coenzyme $Q_{10}$, as recited in the pending claims (see Table II).

The Ueda reference provides a method of stabilizing coenzyme $Q_{10}$, as well as a coenzyme $Q_{10}$-containing composition. The amount of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ is less than the minimum of 1.5 wt% relative to reduced coenzyme $Q_{10}$, as recited in the pending claims. For example, Example 8 describes a reduced coenzyme $Q_{10}$-containing composition containing 1% reduced coenzyme $Q_9$, which was further reduced to 0.52%. Similarly, Examples 5 and 7 describe a reduced coenzyme $Q_{10}$-containing composition containing 0.40% reduced coenzyme $Q_9$, which was further reduced to 0.24% and 0.23%, respectively.

Thus, the amount of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ in the compositions of the cited references falls outside the claimed range of 1.5 wt% to 99 wt%. In addition, none of the cited references discloses a reduced coenzyme $Q_{10}$-containing composition containing reduced coenzyme $Q_{10}$ along with reduced coenzyme $Q_{11}$. Since the cited references do not teach each and every element of the pending claims, the cited references cannot be

considered to anticipate the pending claims. Therefore, Applicants request that the anticipation rejections be withdrawn.

*Discussion of the Obviousness Rejection*

The Office contends that each of the Matsura, Wakabayashi, and Ueda references discloses compositions comprising reduced coenzyme $Q_{10}$ and varying amounts of reduced coenzyme $Q_9$, as well as additional components, such as solubilizing agents, pharmaceutically acceptable carriers, and stabilizing agents. The Office contends that the Chopra reference discloses the administration of reduced coenzyme $Q_{10}$ compositions as medicaments. The Office considers that it would have been obvious to combine the teachings of the cited references to arrive at the inventive compositions.

The obviousness rejection is traversed for the following reasons.

For subject matter defined by a claim to be considered obvious, the Office must demonstrate that the differences between the claimed subject matter and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); see also *Graham v. John Deere Co.*, 383 U.S. 1, 148 U.S.P.Q. 459 (1966). The ultimate determination of whether an invention is or is not obvious is based on certain factual inquiries including: (1) the scope and content of the prior art, (2) the level of ordinary skill in the prior art, (3) the differences between the claimed invention and the prior art, and (4) objective evidence of nonobviousness. *Graham*, 383 U.S. at 17-18, 148 U.S.P.Q. at 467.

Consideration of the aforementioned *Graham* factors here indicates that the present invention, as defined by the pending claims, is unobvious in view of the cited references.

As regards the scope and content of the prior art, the Matsura, Wakabayashi, and Ueda references disclose reduced coenzyme $Q_{10}$ compositions, wherein the amount of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ falls outside the claimed range of 1.5 wt% to 99 wt%. The Chopra reference discloses that a formulation comprising ubiquinol (reduced coenzyme Q, and preferably reduced coenzyme $Q_{10}$) can be administered as a pharmaceutical. The Chopra reference does not teach or suggest the use of reduced coenzyme $Q_9$. None of the cited references discloses reduced coenzyme $Q_{11}$.

For purposes of the analysis here, and for the sake of argument, the level of ordinary skill can be considered to be relatively high, such that a person of ordinary skill in the art would have an advanced degree and/or several years of experience in the relevant field.

The present invention, as defined by the pending claims is directed to a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, as well as methods employing the reduced coenzyme $Q_{10}$-containing composition.

None of the cited references teaches or suggests a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) not less than 1.5 wt% to not more than 99 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and (b) reduced coenzyme $Q_{11}$, as recited by the pending claims. Indeed, the Ueda reference teaches away from the amount of reduced coenzyme $Q_9$ recited in the pending claims by disclosing that starting concentrations of coenzyme $Q_9$ in a coenzyme $Q_{10}$ composition (0.40% in Examples 5 and 7 and 1.0% in Example 8) were further reduced (to 0.24%, 0.23%, and 0.52%, respectively), all of which fall outside the 1.5 wt% to 99 wt% required by the pending claims. One of ordinary skill in the art would not have been motivated to increase the amount of reduced coenzyme $Q_9$ in the Ueda reference since it is clear that the Ueda reference aims to decrease the amount of coenzyme $Q_9$ as much as possible. Similarly, one of ordinary skill in the art would not have been motivated to add reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$-containing composition.

Furthermore, one of ordinary skill in the art could not appreciate the superior effects provided by the inventive composition from the disclosures of the cited references. In particular, the inventive composition provides for the protection of reduced coenzyme $Q_{10}$ from oxidation and improvement in the absorbance of coenzyme Q (see, e.g., page 3, lines 13-34, of the specification).

Considering all of the *Graham* factors together, it is clear that the present invention – as defined by the pending claims – would not have been obvious to one of ordinary skill in the art at the relevant time in view of the combined disclosures of the Matsura, Wakabayashi, Ueda, and Chopra references. Accordingly, the obviousness rejection should be withdrawn.

*Conclusion*

Applicants respectfully submit that the patent application is in condition for allowance. If, in the opinion of the Examiner, a telephone conference would expedite the prosecution of the subject application, the Examiner is invited to call the undersigned attorney.

Respectfully submitted,

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: December 30, 2008

**PATENT**
Attorney Docket No. 701554

**COMBINED DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION AND POWER OF ATTORNEY**

☐ Declaration Submitted with Initial Filing OR
☒ Declaration Submitted after Initial Filing (surcharge (37 CFR 1.16(e)) required)

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name. I believe I am the original, first, and sole inventor *(if only one name is listed below)* or an original, first, and joint inventor *(if plural names are listed below)* of the subject matter which is claimed and for which a patent is sought on the invention entitled:

STABILIZATION METHOD OF REDUCED COENZYME $Q_{10}$

the specification of which:

☐ is attached hereto.
☒ was filed on April 27, 2007 as Application No. 11/741,290 and was amended on ____________ *(if applicable)*.
☐ was filed by Express Mail No. ____________ *as Application No. not known yet*, and was amended on ____________ *(if applicable)*.
☐ was filed on ____________ as PCT International Application No. PCT/____________ and was amended on ____________ *(if any)*.

I state that I have reviewed and understand the contents of the specification identified above, including the claim(s), as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

I claim foreign priority benefits under 35 USC 119(a)-(d) or (f), or 365(b) of any foreign application(s) for patent, inventor's or plant breeder's rights certificate(s), or 365(a) of any PCT international application(s) designating at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application(s) for patent, utility model, design registration, inventor's or plant breeder's rights certificate(s), or any PCT international application(s) designating at least one country other than the United States of America filed by me on the same subject matter and having a filing date before that of the application(s) from which the benefit of priority is claimed.

| Prior Foreign Application Number(s) | Country | Foreign Filing Date (MM/DD/YYYY) | Priority Claimed YES | NO | Certified Copy Attached? YES | NO |
|---|---|---|---|---|---|---|
| 126897/2006 | Japan | 04/28/2006 | ☒ | ☐ | ☐ | ☒ |
| | | | ☐ | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ | ☐ |

In re Appln. of Ueda et al.
Attorney Docket No. 701554

As a named inventor, I hereby appoint Leydig, Voit & Mayer, Ltd. to prosecute this application and transact all business in the Patent and Trademark Office connected therewith: Customer Number 23460.

23460

PATENT TRADEMARK OFFICE

I further direct that correspondence concerning this application be directed to Leydig, Voit & Mayer, Ltd.: Customer Number 23460.

23460

PATENT TRADEMARK OFFICE

I declare that all statements made herein of my own knowledge are true, that all statements made on information and belief are believed to be true, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor: Takahiro UEDA

Inventor's signature Takahiro Ueda

Date June 15, 2007 Country of Citizenship: Japan

Residence: Kobe-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 6-31-17, Shioya-cho, Tarumi-ku, Kobe-shi, Hyogo 655-0872 Japan

*(complete mailing address)*

Full name of second joint inventor, if any: Shiro KITAMURA

Inventor's signature Shiro Kitamura

Date June 15, 2007 Country of Citizenship: Japan

Residence: Akashi-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 1-10-36-601, Aioi-cho, Akashi-shi, Hyogo 673-0882 Japan

*(complete mailing address)*

In re Appln. of Ueda et al.
Attorney Docket No. 701554

**Full name of third joint inventor, if any:** Hiroshi KUBO

Inventor's signature Hiroshi Kubo

Date June 15, 2007 Country of Citizenship: Japan

Residence: Kobe-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 5-10-10-102, Nishimaiko, Tarumi-ku, Kobe-shi, Hyogo 655-0048 Japan

*(complete mailing address)*

**Full name of fourth joint inventor, if any:** Kazunori HOSOE

Inventor's signature Kazunori Hosoe

Date June 15, 2007 Country of Citizenship: Japan

Residence: Takasago-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 3-8-17, Nishihata, Takasago-shi, Hyogo 676-0025 Japan

*(complete mailing address)*

FORM PTO-1083

**PATENT**
Attorney Docket No. 701554
Client Reference No. 201659
Date: December 30, 2008

In re Application of: Lisa Joe Hobbs
Application No. 11/741,290
Confirmation No. 2693
Filed: April 27, 2007

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith is a reply to office action in the subject application.

☐ Small entity status is claimed for this application under 37 CFR 1.27.

☒ Petition for an extension of time for the period noted below, as well as for any additional period necessary to render the present submission timely. Please charge Deposit Account No. 12-1216 for the appropriate petition fee.

☒ Other: Combined Declaration for Utility or Design Patent Application and Power of Attorney

☒ Please charge Deposit Account No. 12-1216 in the total amount indicated below.

| | | | | | SMALL ENTITY | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| TIME EXTENSION PETITION FEE | | | none | | $ 0.00 | | $ 0.00 | |
| subtract time extension fee previously paid | | | none | | ($ 0.00) | | ($ 0.00) | |
| CLAIM FEE | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | EXTRA CLAIMS PRESENT | RATE | ADD'L CLAIM FEE | RATE | ADD'L CLAIM FEE |
| TOTAL | 17 | MINUS | 21 | = 0 | x 26 = | $ | x 52 = | $0.00 |
| INDEPENDENT | 4 | MINUS | 4 | = 0 | x 110 = | $ | x 220 = | $0.00 |
| ☐ FIRST PRESENTATION OF MULTIPLE CLAIM | | | | | + 195 = | $ | + 390 = | $0.00 |
| **TOTAL AMOUNT TO BE CHARGED TO DEPOSIT ACCOUNT** | | | | | TOTAL | $ | TOTAL | $0.00 |

☒ The Commissioner is hereby authorized to charge any deficiencies in the following fees associated with this communication or credit any overpayment to Deposit Account No. 12-1216.
- ☒ Any filing fees under 37 CFR 1.16 for the presentation of extra claims.
- ☒ Any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

LEYDIG, VOIT & MAYER, LTD.

By [signature]
John Kilyk, Jr., Reg. No. 30,763

LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/741,290 | 04/27/2007 | ☐ To be Mailed |

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY ☐ RATE ($) | FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT | 12/30/2008 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 17 | Minus | ** 21 | = 0 | X $ = | | OR | X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | ***4 | = 0 | X $ = | | OR | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/NICOLE LOVE-HENSLEY/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 | 2693 |

23460 7590 10/01/2008
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

| EXAMINER | |
|---|---|
| HOBBS, LISA JOE | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1657 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/01/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| ***Office Action Summary*** | **Application No.** 11/741,290 | **Applicant(s)** UEDA ET AL. | |
|---|---|---|---|
| | **Examiner** Lisa J. Hobbs | **Art Unit** 1657 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) _1-21_ is/are pending in the application.

4a) Of the above claim(s) _1-6 and 18-21_ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) _7-17_ is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☒ All b)☐ Some * c)☐ None of:

1.☒ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _10/2007,07/2007_.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 1-6, drawn to a method for stabilizing reduced coenzyme Q10, classified in class 568, subclass 662.

II. Claims 7-17, drawn to a reduced coenzyme Q10-containing composition, including dosage forms, classified in class 424, subclass 94.1.

III. Claims 18-19, drawn to a method for producing a reduced coenzyme Q10-containing composition, classified in class 435, subclass 25.

IV. Claims 20-21, drawn to a method for producing a reduced coenzyme Q10-containing composition, classified in class 425, subclass 25.

The inventions are distinct, each from the other because of the following reasons:

Inventions II and I are related as product and process of use. The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h). In the instant case the composition of Group II could be used in medical methods, as opposed to the stability methods of Group I.

Inventions I, III and IV are unrelated. Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06). In the instant case, the different inventions are all methods, either of production or use, relating to coenzyme Q10-containing

compositions but are separate methods with separate steps and modes of operation, such as stabilization of a compound vs. methods of making a compound, which methods of making include separate reduction steps then combination of the compounds vs. creating a mixture and then attempting reduction steps for the various components. In addition, the separate methods have differing prior art search considerations with divergent analyses for enablement, written description, predictability and level of skill in the art.

Inventions III, IV and II are related as process of making and product made. The inventions are distinct if either or both of the following can be shown: (1) that the process as claimed can be used to make another and materially different product or (2) that the product as claimed can be made by another and materially different process (MPEP § 806.05(f)). In the instant case the product of Group II could be made by either of the methods of Groups III or IV.

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their different classification;

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected invention**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected invention.

If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

During a telephone conversation with John Kilyk on 26 September 2008 a provisional election was made with traverse to prosecute the invention of Group II, claims 7-17. Affirmation of this election must be made by applicant in replying to this Office action. Claim1-6 and 18-21 are withdrawn from further consideration by the examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.

Applicant is reminded that upon the cancellation of claims to a non-elected invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application. Any amendment of inventorship must be accompanied by a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).

The examiner has required restriction between product and process claims. Where applicant elects claims directed to the product, and a product claim is subsequently found allowable, withdrawn process claims that depend from or otherwise include all the limitations of the allowable product claim will be rejoined in accordance with the provisions of MPEP § 821.04. **Process claims that depend from or otherwise include all the limitations of the patentable product** will be entered as a matter of right if the amendment is presented prior to final rejection or allowance, whichever is earlier. Amendments submitted after final rejection are governed by 37 CFR 1.116; amendments submitted after allowance are governed by 37 CFR 1.312.

In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to be allowable, the rejoined

claims must meet all criteria for patentability including the requirements of 35 U.S.C. 101, 102, 103, and 112. Until an elected product claim is found allowable, an otherwise proper restriction requirement between product claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowed product claim will not be rejoined. See "Guidance on Treatment of Product and Process Claims in light of *In re Ochiai, In re Brouwer* and 35 U.S.C. § 103(b)," 1184 O.G. 86 (March 26, 1996). Additionally, in order to retain the right to rejoinder in accordance with the above policy, Applicant is advised that the process claims should be amended during prosecution either to maintain dependency on the product claims or to otherwise include the limitations of the product claims. **Failure to do so may result in a loss of the right to rejoinder.**

Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

***Priority***

Receipt is acknowledged of papers submitted under 35 U.S.C. 119(a)-(d), which papers have been placed of record in the file.

Should applicant desire to obtain the benefit of foreign priority under 35 U.S.C. 119(a)-(d) prior to declaration of an interference, a certified English translation of the foreign application must be submitted in reply to this action. 37 CFR 41.154(b) and 41.202(e).

Failure to provide a certified translation may result in no benefit being accorded for the non-English application.

***Information Disclosure Statement***

The information disclosure statement(s) (IDS) submitted on 23 July 2007 and 10 October 2007 is/are in compliance with the provisions of 37 CFR 1.97. Accordingly, the information disclosure statement is being considered by the examiner.

***Oath/Declaration***

The oath or declaration is defective. A new oath or declaration in compliance with 37 CFR 1.67(a) identifying this application by application number and filing date is required. See MPEP §§ 602.01 and 602.02.

The oath or declaration is defective because:
It was not executed in accordance with either 37 CFR 1.66 or 1.68.

Please note inventor Kubo's signature has been obscured and the date of signature is not present.

***Claim Status***

Claims 1-21 are active in the case. Claims 7-17 are under examination; claims 1-6, 18-21 are withdrawn as drawn to a non-elected invention.

***Claim Rejections - 35 USC § 102***

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 7, 11, and 13-15 are rejected under 35 U.S.C. 102(b) as being anticipated by Matsura et al. ((1992) Biochim. Biophys. Acta 1127: 277-283). Matsura et al. teach a

composition comprising reduced coenzyme Q10 (CoQ10H2) and not less than 0.6 wt% of reduced coenzyme Q9 (CoQ9H2), wherein the composition is suspended in a solvent, PBS (p. 278, col. 2), which is a pharmaceutically acceptable carrier, could be administered to a mammal, further comprises another component (AAPH, a solubilizing agent, p. 278, col. 1), and comprises CoQ10H2 as an active ingredient.

Claims 7, 8, 11, and 13-15 are rejected under 35 U.S.C. 102(b) as being anticipated by Wakabayashi et al. ((1994) Biol. Pharm. Bull. 17(8): 997-1002). Wakabayashi et al. teach a composition comprising CoQ10H2 and not less than 1 wt% of CoQ9H2 (see p. 1001, col. 1 and Table II), wherein the composition is in a pharmaceutically acceptable carrier (normal human and rat blood, plasma, and serum and the same samples in ethanol, p. 998, col. 1, and p. 1001, col. 1), which could be administered to a mammal, is also suspended in a solvent, distilled water, ethanol, menaquinone and hexane (p. 998, col. 1), further comprises another component (ethanol, a solubilizing agent), and comprises CoQ10H2 as an active ingredient.

Claims 7-11, and 13-15 are rejected under 35 U.S.C. 102(b) as being anticipated byUeda et al. (US 2005/0008630 A1). Ueda et al. teach a composition comprising CoQ10H2 and not less than 1 wt% of CoQ9H2; "a hydroethanolic solution of [CoQ10H2]…was prepared (containing 1.00% of reduced coenzyme CoQ9H2, 0.30% of reduced coenzyme CoQ8H2, and 0.40% of reduced coenzyme CoQ7H2). This hydroethanolic solution was cooled …to precipitate a crystal" ([0144]), wherein the composition is in a pharmaceutically acceptable carrier (ethanol and water, [0144]), which could be administered to a mammal, is also suspended in a solvent,

further comprises another component in addition to the reduced coenzymes (ethanol, a solubilizing agent), and comprises CoQ10H2 as an active ingredient.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

Claims 7-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Matsura et al., Wakabayashi et al. Ueda et al., and Chopra (WO 01/52822 A1). Matsura et al. teach that both CoQ10H2 and CoQ9H2 are potent antioxidants with independent activity in radical scavenging to protect cells against oxidative stress (p. 282, col. 2). Each of Matsura et al., Wakabayashi et al. and Ueda et al., as discussed above, teach compositions of the active ingredient CoQ10H2 comprising varying amounts of CoQ9H2 with solubilizing agents, pharmaceutically acceptable carriers and further comprising additional components, for example citric acid for stabilization properties (Ueda et al. [0079]). Ueda et al. teach crystallization of the reduced coenzyme ([0080-0096]).

Chopra teaches the administration of CoQ10H2 compositions as medicaments. He teaches pharmaceutical compositions comprised within oral dosage forms such as soft gel capsules (p. 5), hard gel capsules (p. 17), and other medical preparations (p. 18-19) such as lozenges and gum. He discloses reducing agents (p. 9) used in order to maintain the effectiveness of the coenzyme and solubilization agents (p. 9) which are pharmaceutically acceptable.

It would have been obvious to one of ordinary skill at the time the invention was made to combine the teachings of Matsura et al. with those of Wakabayashi et al., Ueda et al., and Chopra to obtain the invention as recited in the instant claims. One would be motivated to do so in the interests of creating a bioavailable nutritional supplement that assists in free radical scavenging, hopefully ameliorating disease states associated with oxidative tissue damage or mitochondrial dysfunction (Chopra p. 1). One would have a reasonable expectation of success in that Matsura et al. and Wakabayashi et al. disclose that CoQ9H2 is present in normal serum, blood, and

tissues along with CoQ10H2 and each of the references discloses the beneficial properties of reduced coenzyme Q10. Matsura et al. teach that CoQ9H2 has similar properties and Ueda et al. teach methods of creating stabilized preparations for administration, including crystals.

### *Art of Record*

The examiner notes the following prior art not relied upon in a rejection: Lekli et al. ((2008) J. Agric. Food Chem. 56: 5331-5337). Although published recently, not before April 2006, Lekli et al. disclose current research into cardioprotection of CoQ9H2 in addition to CoQ10H2 and the beneficial effects of administration of both compounds.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Lisa J. Hobbs whose telephone number is 571-272-3373. The examiner can normally be reached on Monday to Friday, 8:00 a.m. to 4:30 p.m.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jon P. Weber can be reached on 571-272-0925. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Lisa J. Hobbs/
Primary Examiner
Art Unit 1657

ljh

| Notice of References Cited | Application/Control No. 11/741,290 | Applicant(s)/Patent Under Reexamination UEDA ET AL. | |
|---|---|---|---|
| | Examiner Lisa J. Hobbs | Art Unit 1657 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2005/0008630 | 01-2005 | Ueda et al. | 424/094.1 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | Wakabayashi et al. (1994) Biol. Pharm. Bull. 17(8): 997-1002. |
| | V | Lekli et al. (2008) J. Agric. Food chem. 56: 5331-5337. |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 2693**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/741,290 | 04/27/2007<br>**RULE** | 435 | 1657 | 701554 |

**APPLICANTS**

Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

** **CONTINUING DATA** *************************

** **FOREIGN APPLICATIONS** *************************

JAPAN 2006-126897 04/28/2006

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **

05/22/2007

| Foreign Priority claimed ☑ Yes ☐ No<br>35 USC 119(a-d) conditions met ☑ Yes ☐ No<br>Verified and Acknowledged /LISA J. HOBBS/ Examiner's Signature | ☐ Met after Allowance<br>Initials | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| | | JAPAN | 2 | 21 | 4 |

**ADDRESS**

LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731
UNITED STATES

**TITLE**

STABILIZATION METHOD OF REDUCED COENZYME Q10

| FILING FEE RECEIVED | FEES: Authority has been given in Paper | |
|---|---|---|
| 1380 | No.____________ to charge/credit DEPOSIT ACCOUNT<br>No.____________ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other ________________<br>☐ Credit |

(FILE 'HOME' ENTERED AT 18:05:22 ON 27 SEP 2008)

INDEX 'ADISCTI, ADISINSIGHT, ADISNEWS, AGRICOLA, ANABSTR, ANTE, AQUALINE,
AQUASCI, BIOENG, BIOSIS, BIOTECHABS, BIOTECHDS, BIOTECHNO, CABA, CAPLUS,
CEABA-VTB, CIN, CONFSCI, CROPB, CROPU, DDFB, DDFU, DGENE, DISSABS, DRUGB,
DRUGMONOG2, DRUGU, EMBAL, EMBASE, ...' ENTERED AT 18:05:32 ON 27 SEP 2008
SEA (COENZYME WORD Q WORD "10") AND ((COENZYME WORD Q WORD "9")
---------
L1 QUE (COENZYME WORD Q WORD "10") AND ((COENZYME WORD Q WORD "9")
---------
SEA (COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR COQ11H2)
---------
3 FILE AGRICOLA
5 FILE ANABSTR
57 FILE BIOSIS
1 FILE BIOTECHABS
1 FILE BIOTECHDS
1 FILE BIOTECHNO
22 FILE CABA
128 FILE CAPLUS
1 FILE CEABA-VTB
13 FILE DDFU
22 FILE DRUGU
9 FILE EMBASE
7 FILE ESBIOBASE
2 FILE FSTA
4 FILE IFIPAT
3 FILE LIFESCI
64 FILE MEDLINE
3 FILE PASCAL
18 FILE SCISEARCH
50 FILE TOXCENTER
14 FILE USPATFULL
4 FILE WPIDS
4 FILE WPINDEX
L2 QUE (COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR COQ11H2)
---------

SEA (COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR COQ11H2)
---------
2 FILE AGRICOLA
10 FILE BIOSIS
3 FILE CABA
32 FILE CAPLUS
5 FILE DDFU
10 FILE DRUGU
2 FILE EMBASE
3 FILE ESBIOBASE
3 FILE IFIPAT
16 FILE MEDLINE
3 FILE SCISEARCH
22 FILE TOXCENTER
14 FILE USPATFULL
1 FILE WPIDS
1 FILE WPINDEX

L3 QUE (COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR COQ11H2)
---------

FILE 'CAPLUS' ENTERED AT 18:10:35 ON 27 SEP 2008
L4 32 S L3

FILE 'HOME' ENTERED AT 18:12:18 ON 27 SEP 2008

FILE 'CAPLUS' ENTERED AT 18:27:36 ON 27 SEP 2008

FILE 'STNGUIDE' ENTERED AT 18:27:52 ON 27 SEP 2008

(FILE 'HOME' ENTERED AT 18:38:16 ON 27 SEP 2008)

FILE 'MEDLINE' ENTERED AT 18:38:24 ON 27 SEP 2008
L1 64 S (COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR COQ11H2)
L2 18 S ((COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR COQ11H2))

FILE 'HOME' ENTERED AT 18:40:38 ON 27 SEP 2008

INDEX 'ADISCTI, ADISINSIGHT, ADISNEWS, AGRICOLA, ANABSTR, ANTE, AQUALINE,
AQUASCI, BIOENG, BIOSIS, BIOTECHABS, BIOTECHDS, BIOTECHNO, CABA, CAPLUS,

CEABA-VTB, CIN, CONFSCI, CROPB, CROPU, DDFB, DDFU, DGENE,
DISSABS, DRUGB,
DRUGMONOG2, DRUGU, EMBAL, EMBASE, ...' ENTERED AT 18:45:00 ON 27
SEP 2008
SEA ((COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR
COQ11H2
---------
13 FILE BIOSIS
1 FILE BIOTECHNO
9 FILE CABA
35 FILE CAPLUS
4 FILE DDFU
8 FILE DRUGU
3 FILE EMBASE
2 FILE ESBIOBASE
1 FILE IFIPAT
1 FILE LIFESCI
19 FILE MEDLINE
1 FILE PASCAL
2 FILE SCISEARCH
18 FILE TOXCENTER
14 FILE USPATFULL
1 FILE WPIDS
1 FILE WPINDEX
L3 QUE ((COQ10 OR COQ10H2) AND (COQ9 OR COQ9H2 OR COQ11 OR
COQ11H2
---------

FILE 'BIOSIS, CAPLUS, EMBASE, LIFESCI, SCISEARCH' ENTERED AT
18:46:31 ON
27 SEP 2008
L4 54 S L3
L5 40 DUP REM L4 (14 DUPLICATES REMOVED)

FILE 'HOME' ENTERED AT 18:46:56 ON 27 SEP 2008

INDEX 'ADISCTI, ADISINSIGHT, ADISNEWS, AGRICOLA, ANABSTR, ANTE,
AQUALINE,
AQUASCI, BIOENG, BIOSIS, BIOTECHABS, BIOTECHDS, BIOTECHNO,
CABA, CAPLUS,
CEABA-VTB, CIN, CONFSCI, CROPB, CROPU, DDFB, DDFU, DGENE,
DISSABS, DRUGB,
DRUGMONOG2, DRUGU, EMBAL, EMBASE, ...' ENTERED AT 18:56:04 ON 27
SEP 2008
SEA UBIQUINOL AND (COQ9H2) AND (ADMINISTRATION OR
ADMINISTER)

---------
1 FILE CAPLUS
2 FILE IFIPAT
1 FILE USPATFULL
1 FILE USPAT2

L6 QUE UBIQUINOL AND (COQ9H2) AND (ADMINISTRATION OR ADMINISTER)

---------

FILE 'CAPLUS' ENTERED AT 18:57:12 ON 27 SEP 2008

L7 1 S L6

FILE 'STNGUIDE' ENTERED AT 18:57:46 ON 27 SEP 2008

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 688 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| L2 | 447 | l1 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| L3 | 56 | l2 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:31 |
| L4 | 16 | coenzyme ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| L5 | 2 | coenzyme ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| L6 | 2 | coenzyme near ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| L7 | 16 | coenzyme near ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:35 |

| | | | | | | |
|---|---|---|---|---|---|---|
| L8 | 28681 | ubiquinol$2 or ubiquinone$2 or ubidecarenone$2 or ubihydroquinone$2 or (dimethyoxy near dimethyl near decaprenyl) or (dimethyoxy near methyl) or benzoquinone | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:05 |
| L9 | 15417 | l8 and (stable or stabiliz $5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| L10 | 12413 | l9 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| L11 | 5896 | l10 and "Q" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:07 |
| L12 | 17 | l11 and "wt%" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:08 |

9/27/2008 6:09:23 PM
C:\ Documents and Settings\ lhobbs\ My Documents\ EAST\ Workspaces\ a Text Default.wsp

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | "20050008630" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:44 |
| L2 | 0 | l1 and (Q adj "9") and (Q adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |
| L3 | 1 | l1 and ("9") and ("10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:46 |
| L4 | 1 | l1 and ("9") and ("10") and "11" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| L5 | 1 | l4 and "40" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| L6 | 0 | l5 and (coQ9H2) and (coQ10H2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:47 |
| L7 | 1 | l5 and ("q.sub.10") and ("q.sub.9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:51 |

KAN0000173

| | | | | | | |
|---|---|---|---|---|---|---|
| L8 | 0 | l6 and ("q.sub.11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 21:52 |
| L9 | 5 | "20040214301" or "20040215040" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 22:30 |
| S45 | 688 | coenzyme near ("Q" adj "10") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S46 | 447 | S45 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:30 |
| S47 | 56 | S46 and ubiquinol$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:31 |
| S48 | 16 | coenzyme ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S49 | 2 | coenzyme ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |
| S50 | 2 | coenzyme near ("q" adj "11") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:34 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S51 | 16 | coenzyme near ("q" adj "9") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 17:35 |
| S52 | 28681 | ubiquinol$2 or ubiquinone$2 or ubidecarenone$2 or ubihydroquinone$2 or (dimethyoxy near dimethyl near decaprenyl) or (dimethyoxy near methyl) or benzoquinone | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:05 |
| S53 | 15417 | S52 and (stable or stabiliz$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S54 | 12413 | S53 and reduce$2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:06 |
| S55 | 5896 | S54 and "Q" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:07 |
| S56 | 17 | S55 and "wt%" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | OFF | 2008/09/27 18:08 |

9/ 27/ 2008 10:31:59 PM
C:\ Documents and Settings\ lhobbs\ My Documents\ EAST\ Workspaces\ coenzyme Q10 stabilization.wsp

| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11741290 | UEDA ET AL. |
| | **Examiner** | **Art Unit** |
| | Lisa J Hobbs | 1657 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | Text search performed. | 27 Sept 2008 | LJH |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST and STN searched, searches attached. | 27 Sept 2008 | LJH |
| Inventor names searched in eDAN. | 27 Sept 2008 | LJH |
| Consulted E. Kemmerer on restriction, Y. Eyler on oath, R. Wax on claim language. | 27 Sept 2008 | LJH |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

| *Index of Claims* | Application/Control No. 11741290 | Applicant(s)/Patent Under Reexamination UEDA ET AL. |
|---|---|---|
| | Examiner Lisa J Hobbs | Art Unit 1657 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/27/2008 | | | | | | | | |
| | 1 | N | | | | | | | | |
| | 2 | N | | | | | | | | |
| | 3 | N | | | | | | | | |
| | 4 | N | | | | | | | | |
| | 5 | N | | | | | | | | |
| | 6 | N | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | N | | | | | | | | |
| | 19 | N | | | | | | | | |
| | 20 | N | | | | | | | | |
| | 21 | N | | | | | | | | |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Ueda et al.

Filed: April 27, 2007

TC/AU: 1657

Examiner: Unassigned

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**INFORMATION DISCLOSURE STATEMENT**

Pursuant to 37 CFR 1.97 and 1.98, the references listed on the enclosed Form PTO-1449 and/or Substitute Form PTO-1449 ("Form 1449") are submitted for consideration by the Examiner in the examination of the above-identified patent application.

The full consideration of the references in their entirety by the Examiner is respectfully requested and encouraged. Also, it is respectfully requested that the references be entered into the record of the present application and that the Examiner initial the appropriate area on the enclosed Form 1449, thereby indicating the Examiner's consideration of each of the references.

The submission of the references listed on the Form 1449 is for the purpose of providing a complete record and is not a concession that the references listed thereon are prior art to the invention claimed in the patent application. The right is expressly reserved to establish an invention date earlier than the above-identified filing date in order to remove any reference submitted herewith as prior art should it be deemed appropriate to do so.

Further, the submission of the references is not to be taken as a concession that any reference represents art that is relevant or analogous to the claimed invention. Accordingly, the right to argue that any reference is not properly within the scope of prior art relevant to an examination of the claims in the above-identified application is also expressly reserved.

The Information Disclosure Statement is being filed:

☒ **within** any one of the following time periods: (a) within three months of the filing date of a national application other than a continued prosecution application under 37 CFR 1.53(d); (b) within three months of the date of entry of the national stage as set forth in 37 CFR 1.491 of an international application; (c) before the mailing date of a first Office Action on the merits; or (d) before the mailing of a first Office Action after the filing of a request for continued examination under 37 CFR 1.114.

☐ **after** (a), (b), (c) or (d) above, but before the mailing date of a final action under 37 CFR 1.113, a Notice of Allowance under 37 CFR 1.311, or an action that otherwise closes prosecution in the application, and includes *one* of:

☐ the Statement under 37 CFR 1.97(e) (see "Statement under 37 CFR 1.97(e)" below).

– *or* –

☐ the fee of $180 set forth in 37 CFR 1.17(p) (see "Fees" below).

☐ **after** the mailing date of a final action under 37 CFR 1.113 or a Notice of Allowance under 37 CFR 1.311, or an action that otherwise closes prosecution in the application, and on or before payment of the issue fee, and includes the Statement under 37 CFR 1.97(e) (see "Statement under 37 CFR 1.97(e)" below), and the fee of $180 as set forth in 37 CFR 1.17(p) (see "Fees" below).

☐ **after** the mailing date of a Notice of Allowance under 37 CFR 1.311, and on or before payment of the issue fee, and **within** thirty days of receiving each item of information contained in the Information Disclosure Statement, and includes the Statement under 37 CFR 1.704(d) (see "Statement under 37 CFR 1.704(d)" below), and the fee of $180 as set forth in 37 CFR 1.17(p) (see "Fees" below). NOTE: This is for original applications except applications for a design patent, filed on or after May 29, 2000, wherein a paper containing only an Information Disclosure Statement in compliance with 37 CFR 1.97 and 1.98 is being filed.

**Copies of the References**

☐ Copies of all of the references listed on the enclosed Form 1449 are enclosed herewith.

☒ Copies of U.S. patents and patent applications that are listed on the accompanying Form 1449 are not enclosed herewith. Copies of other references identified on the accompanying Form 1449 are enclosed herewith.

☒ For each reference not in the English language, attached is an English translation, a concise explanation of relevance, an English-language equivalent/patent, an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office pursuant to 37 CFR 1.98(a)(3).

☐ A copy of the foreign search report is enclosed herewith.

☐ The references listed on the enclosed Form 1449 were previously identified in the parent application(s) of the present application, and copies of the references were furnished at that time. Accordingly, additional copies of the references are not submitted herewith, so as not to burden the file with duplicate copies of references. The Examiner is respectfully requested to carefully review the references in accordance with the requirements set out in the Manual of Patent Examining Procedure. In accordance with 37 CFR 1.98(d), the details of the parent application(s) relied upon for an earlier filing date under 35 USC 120 in which copies of the references were previously furnished are set out below:

| U.S. APPLICATIONS | | STATUS *(check one)* | | |
|---|---|---|---|---|
| U.S. APPLICATIONS | U.S. FILING DATE | PATENTED | PENDING | ABANDONED |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |

**Statement under 37 CFR 1.97(e)**

☐ The **undersigned** hereby states that each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign patent application not more than three months prior to the filing of the Information Disclosure Statement.

☐ The **undersigned** hereby states that no item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign patent application, and, to the knowledge of the undersigned after making reasonable inquiry, no item of information contained in the Information Disclosure Statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the Information Disclosure Statement.

**Statement under 37 CFR 1.704(d)**

☐ The **undersigned** hereby states that each item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart application and that this communication was not received by any individual designated in 37 CFR 1.56(c) more than thirty days prior to the filing of the Information Disclosure Statement.

**Fees**

☒ **No fee** is owed by the applicant(s).
☐ Charge Deposit Account No. 12-1216 in the amount of **$180.00** (37 CFR 1.17(p)). (A duplicate copy of this communication is enclosed for that purpose, unless submitted via EFS-Web.)

**Authorization to Charge Additional Fees**

☒ If any additional fees are owed in connection with this communication, please charge Deposit Account No. 12-1216. (A duplicate copy of this communication is enclosed for that purpose, unless submitted via EFS-Web.)

**Instructions as to Overpayment**

☒ Credit Account No. 12-1216.
☐ Refund

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: July 23, 2007

Please type a plus sign (+) inside this box → [+]

| Substitute for form 1449A/B/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 11/741,290 |
| | | | | Filing Date | April 27, 2007 |
| | | | | First Named Inventor | Ueda et al. |
| | | | | Group Art Unit | 1657 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | Unassigned |
| | | | | Attorney Docket Number | 701554 |
| Sheet | 1 | of | 1 | Client Reference No. | 201659 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | U.S. Patent Document: Application or Patent Number | Kind Code | Name of Patentee or Applicant | Date of Publication | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | AA | 2004/0214301 | A1 | Ueda et al. | Oct. 28, 2004 | |
| | AB | 2004/0215040 | A1 | Ueda et al. | Oct. 28, 2004 | |
| | AC | 2005/0008630 | A1 | Ueda et al. | Jan. 13, 2005 | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | Foreign Patent Document: Office | Application or Patent Number | Kind Code | Name of Patentee or Applicant | Date of Publication | Translation: Yes | No*+ |
|---|---|---|---|---|---|---|---|---|
| | AD | WO | 01/52822 | A1 | Chopra, Raj K. | Jul. 26, 2001 | | |
| | AE | JP | 10-109933 | A | Kanegafuchi Chem. Ind. Co., Ltd. | Apr. 28, 1998 | | X+ |

**OTHER - NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Doc. No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number (s), publisher, city and/or country where published. | Translation: Yes | No*+ |
|---|---|---|---|---|
| | AF | SELVAM et al., *Nutrition Research, 13:* 667-676 (1993) | | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.J.H./

| Examiner Signature | /Lisa J. Hobbs/ | Date Considered | 09/27/2008 |
|---|---|---|---|

* A concise statement of relevance is being submitted in lieu of a translation. 37 CFR 1.98(a)(3).
\+ An English-language equivalent/patent, or an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office is being submitted in lieu of a concise explanation of relevance under 37 CFR 1.98(a)(3).

Please type a plus sign (+) inside this box → +

Substitute for form 1449A/B/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 1 |
|---|---|---|---|

| Complete if Known | |
|---|---|
| Application Number | 11/741,290 |
| Filing Date | April 27, 2007 |
| First Named Inventor | Ueda et al. |
| Group Art Unit | 1657 |
| Examiner Name | Unassigned |
| Attorney Docket Number | 701554 |
| Client Reference No. | 201659 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | U.S. Patent Document: Application or Patent Number | U.S. Patent Document: Kind Code | Name of Patentee or Applicant | Date of Publication | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | Foreign Patent Document: Office | Foreign Patent Document: Application or Patent Number | Foreign Patent Document: Kind Code | Name of Patentee or Applicant | Date of Publication | Translation: Yes | Translation: No*+ |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**OTHER - NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Doc. No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number (s), publisher, city and/or country where published. | Translation: Yes | Translation: No*+ |
|---|---|---|---|---|
| /L.J.H./ | A H | MATSURA et al., *Biochimica et Biophysica Acta, 1127:* 277-283 (1992) | | |

| Examiner Signature | /Lisa J. Hobbs/ | Date Considered | 09/27/2008 |
|---|---|---|---|

* A concise statement of relevance is being submitted in lieu of a translation. 37 CFR 1.98(a)(3).

\+ An English-language equivalent/patent, or an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office is being submitted in lieu of a concise explanation of relevance under 37 CFR 1.98(a)(3).

Case 1:23-cv-07483-SJB-SDE Document 100-4 Filed 12/01/25 Page 173 of 330 PageID #: 5635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 |

**CONFIRMATION NO. 2693**

23460
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL60601-6731

**Title:** STABILIZATION METHOD OF REDUCED COENZYME Q10

**Publication No.** US-2007-0258966-A1
**Publication Date:** 11/08/2007

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Pre-Grant Publication Division, 703-605-4283

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Ueda et al.

Filed: April 27, 2007

TC/AU: 1657

Examiner: Unassigned

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT

Pursuant to 37 CFR 1.97 and 1.98, the references listed on the enclosed Form PTO-1449 and/or Substitute Form PTO-1449 ("Form 1449") are submitted for consideration by the Examiner in the examination of the above-identified patent application.

The full consideration of the references in their entirety by the Examiner is respectfully requested and encouraged. Also, it is respectfully requested that the references be entered into the record of the present application and that the Examiner initial the appropriate area on the enclosed Form 1449, thereby indicating the Examiner's consideration of each of the references.

The submission of the references listed on the Form 1449 is for the purpose of providing a complete record and is not a concession that the references listed thereon are prior art to the invention claimed in the patent application. The right is expressly reserved to establish an invention date earlier than the above-identified filing date in order to remove any reference submitted herewith as prior art should it be deemed appropriate to do so.

Further, the submission of the references is not to be taken as a concession that any reference represents art that is relevant or analogous to the claimed invention. Accordingly, the right to argue that any reference is not properly within the scope of prior art relevant to an examination of the claims in the above-identified application is also expressly reserved.

The Information Disclosure Statement is being filed:

☒ **within** any one of the following time periods: (a) within three months of the filing date of a national application other than a continued prosecution application under 37 CFR 1.53(d); (b) within three months of the date of entry of the national stage as set forth in 37 CFR 1.491 of an international application; (c) before the mailing date of a first Office Action on the merits; or (d) before the mailing of a first Office Action after the filing of a request for continued examination under 37 CFR 1.114.

☐ **after** (a), (b), (c) or (d) above, but before the mailing date of a final action under 37 CFR 1.113, a Notice of Allowance under 37 CFR 1.311, or an action that otherwise closes prosecution in the application, and includes *one* of:

☐ the Statement under 37 CFR 1.97(e) (see "Statement under 37 CFR 1.97(e)" below).

*– or –*

☐ the fee of $180 set forth in 37 CFR 1.17(p) (see "Fees" below).

☐ **after** the mailing date of a final action under 37 CFR 1.113 or a Notice of Allowance under 37 CFR 1.311, or an action that otherwise closes prosecution in the application, and on or before payment of the issue fee, and includes the Statement under 37 CFR 1.97(e) (see "Statement under 37 CFR 1.97(e)" below), and the fee of $180 as set forth in 37 CFR 1.17(p) (see "Fees" below).

☐ **after** the mailing date of a Notice of Allowance under 37 CFR 1.311, and on or before payment of the issue fee, and **within** thirty days of receiving each item of information contained in the Information Disclosure Statement, and includes the Statement under 37 CFR 1.704(d) (see "Statement under 37 CFR 1.704(d)" below), and the fee of $180 as set forth in 37 CFR 1.17(p) (see "Fees" below). NOTE: This is for original applications except applications for a design patent, filed on or after May 29, 2000, wherein a paper containing only an Information Disclosure Statement in compliance with 37 CFR 1.97 and 1.98 is being filed.

**Copies of the References**

☐ Copies of all of the references listed on the enclosed Form 1449 are enclosed herewith.

☒ Copies of U.S. patents and patent applications that are listed on the accompanying Form 1449 are not enclosed herewith. Copies of other references identified on the accompanying Form 1449 are enclosed herewith.

☒ For each reference not in the English language, attached is an English translation, a concise explanation of relevance, an English-language equivalent/patent, an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office pursuant to 37 CFR 1.98(a)(3).

☒ A copy of the foreign search report is enclosed herewith.

☐ The references listed on the enclosed Form 1449 were previously identified in the parent application(s) of the present application, and copies of the references were furnished at that time. Accordingly, additional copies of the references are not submitted herewith, so as not to burden the file with duplicate copies of references. The Examiner is respectfully requested to carefully review the references in accordance with the requirements set out in the Manual of Patent Examining Procedure. In accordance with 37 CFR 1.98(d), the details of the parent application(s) relied upon for an earlier filing date under 35 USC 120 in which copies of the references were previously furnished are set out below:

| U.S. APPLICATIONS | | STATUS *(check one)* | | |
|---|---|---|---|---|
| U.S. APPLICATIONS | U.S. FILING DATE | PATENTED | PENDING | ABANDONED |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |

**Statement under 37 CFR 1.97(e)**

☐ The **undersigned** hereby states that each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign patent application not more than three months prior to the filing of the Information Disclosure Statement.

☐ The **undersigned** hereby states that no item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign patent application, and, to the knowledge of the undersigned after making reasonable inquiry, no item of information contained in the Information Disclosure Statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the Information Disclosure Statement.

**Statement under 37 CFR 1.704(d)**

☐ The **undersigned** hereby states that each item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart application and that this communication was not received by any individual designated in 37 CFR 1.56(c) more than thirty days prior to the filing of the Information Disclosure Statement.

**Fees**

☒ **No fee** is owed by the applicant(s).
☐ Charge Deposit Account No. 12-1216 in the amount of **$180.00** (37 CFR 1.17(p)). (A duplicate copy of this communication is enclosed for that purpose, unless submitted via EFS-Web.)

**Authorization to Charge Additional Fees**

☒ If any additional fees are owed in connection with this communication, please charge Deposit Account No. 12-1216. (A duplicate copy of this communication is enclosed for that purpose, unless submitted via EFS-Web.)

**Instructions as to Overpayment**

☒ Credit Account No. 12-1216.
☐ Refund

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: October 10, 2007

Please type a plus sign (+) inside this box → +

Substitute for form 1449A/B/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 1 |
|---|---|---|---|

| ***Complete if Known*** | |
|---|---|
| Application Number | 11/741,290 |
| Filing Date | April 27, 2007 |
| First Named Inventor | Ueda et al. |
| Group Art Unit | 1657 |
| Examiner Name | Unassigned |
| Attorney Docket Number | 701554 |
| Client Reference No. | 201659 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | U.S. Patent Document: Application or Patent Number | Kind Code | Name of Patentee or Applicant | Date of Publication | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | Foreign Patent Document: Office | Application or Patent Number | Kind Code | Name of Patentee or Applicant | Date of Publication | Translation: Yes | No*+ |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**OTHER - NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Doc. No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number (s), publisher, city and/or country where published. | Translation: Yes | No*+ |
|---|---|---|---|---|
| | AH | MATSURA et al., *Biochimica et Biophysica Acta, 1127:* 277-283 (1992) | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

* A concise statement of relevance is being submitted in lieu of a translation. 37 CFR 1.98(a)(3).

\+ An English-language equivalent/patent, or an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office is being submitted in lieu of a concise explanation of relevance under 37 CFR 1.98(a)(3).

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 2303814 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 10-OCT-2007 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 17:16:36 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Filed | IDS-2nd.pdf | 423400<br>79130561b60f8837542f5d992236072ea1ebd077 | no | 4 |
| **Warnings:** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 2 | Information Disclosure Statement (IDS) Filed | Form1449-2nd.pdf | 151662<br>76a6b48f8997dd3019d35a7083c6e4115719a52b | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 3 | Information Disclosure Statement Letter | InternationalSearchReport.pdf | 656402<br>5aa13003ba31f8f64cea0af6a8558f47b1c33f1e | no | 6 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | NPL Documents | Matsura.pdf | 963494<br>94845fcc0738e02cb65b1f8350e0ebe3d131615e | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 2194958 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**

**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**

**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**

**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | 1657 | 1380 | 701554 | 21 | 4 |

**CONFIRMATION NO. 2693**

**UPDATED FILING RECEIPT**

23460
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL60601-6731

Date Mailed: 07/27/2007

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please write to the Office of Initial Patent Examination's Filing Receipt Corrections. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

**Assignment For Published Patent Application**

Kaneka Corporation, Osaka-shi, JAPAN

**Power of Attorney:** The patent practitioners associated with Customer Number 23460

**Domestic Priority data as claimed by applicant**

**Foreign Applications**

JAPAN 2006-126897 04/28/2006

**If Required, Foreign Filing License Granted:** 05/22/2007

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is
**US11/741,290**

**Projected Publication Date:** 11/08/2007

**Non-Publication Request:** No

**Early Publication Request:** No

**Title**

STABILIZATION METHOD OF REDUCED COENZYME Q10

**Preliminary Class**

435

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

---

## LICENSE FOR FOREIGN FILING UNDER

### Title 35, United States Code, Section 184

### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under

37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

OIPE
JUL 26 2007
IAP6
PATENT & TRADEMARK OFFICE

IPW

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Ueda et al.

Filed: April 27, 2007

TC/AU: 1657

Examiner: Unassigned

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## CLAIM OF PRIORITY

Dear Sir:

In accordance with the provisions of 35 USC 119, Applicant(s) claims(s) the priority of the following application:

Application No. 2006-126897, filed in Japan on April 28, 2006.

A certified copy of the above-listed priority document is enclosed.

Respectfully submitted,

John Kilyk, Jr.

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: July 23, 2007

| *CERTIFICATE OF MAILING OR TRANSMISSION UNDER 37 CFR 1.8* | | | |
|---|---|---|---|
| I hereby certify that this Communication and all accompanying documents are, on the date indicated below, ☒ being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, or ☐ being facsimile transmitted to the U.S. Patent and Trademark Office, Facsimile Number (571) 273-8300. | | | |
| *Name (Print/Type)* | John Kilyk, Jr. | | |
| *Signature* | John Kilyk, Jr. | *Date* | July 23, 2007 |

# 日本国特許庁
# JAPAN PATENT OFFICE

別紙添付の書類に記載されている事項は下記の出願書類に記載されている事項と同一であることを証明する。

'his is to certify that the annexed is a true copy of the following application as filed h this Office.

| | |
|---|---|
| 出願年月日<br>ate of Application: | 2006年 4月28日 |
| 願番号<br>pplication Number: | 特願2006－126897 |
| 条約による外国への出願用いる優先権の主張の基礎なる出願の国コードと出願<br>country code and number our priority application, used for filing abroad r the Paris Convention, is | JP2006－126897 |
| 願人<br>icant(s): | 株式会社カネカ |

2007年 6月 6日

特許庁長官
Commissioner,
Japan Patent Office

中嶋誠

出証番号 出証特2007－3039905

【書類名】 特許願
【整理番号】 B060393
【提出日】 平成18年 4月28日
【あて先】 特許庁長官殿
【国際特許分類】 C07C 43/23
C07C 41/34
【発明者】
【住所又は居所】 兵庫県神戸市垂水区塩屋町６－３１－１７－２０１８
【氏名】 植田 尚宏
【発明者】
【住所又は居所】 兵庫県明石市相生町１－１０－３６－６０１
【氏名】 北村 志郎
【発明者】
【住所又は居所】 兵庫県神戸市垂水区西舞子５－１０－１０－１０２
【氏名】 久保 博司
【発明者】
【住所又は居所】 兵庫県高砂市西畑３－８－１７
【氏名】 細江 和典
【特許出願人】
【識別番号】 000000941
【氏名又は名称】 株式会社 カネカ
【代表者】 大西 正躬
【手数料の表示】
【予納台帳番号】 005027
【納付金額】 16,000円
【提出物件の目録】
【物件名】 特許請求の範囲 1
【物件名】 明細書 1
【物件名】 図面 1
【物件名】 要約書 1

【書類名】特許請求の範囲
【請求項１】
還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$を０．６重量％以上、及び／又は、還元型補酵素$Q_{11}$を共存させることを特徴とする還元型補酵素$Q_{10}$の安定化方法。
【請求項２】
還元型補酵素$Q_9$を１．０重量％以上共存させる請求項１記載の安定化方法。
【請求項３】
還元型補酵素$Q_{10}$に、別途調製された還元型補酵素$Q_9$及び／又は、還元型補酵素$Q_{11}$を添加することを特徴とする、請求項１または２記載の安定化方法。
【請求項４】
酸化型補酵素$Q_9$及び／又は酸化型補酵素$Q_{11}$を含有する酸化型補酵素$Q_{10}$を還元することにより、前記共存状態とする請求項１または２記載の安定化方法。
【請求項５】
脱酸素雰囲気下で保存する請求項１～４のいずれに記載の安定化方法。
【請求項６】
還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が０．６重量％以上、及び／又は、還元型補酵素$Q_{11}$が共存することを特徴とする還元型補酵素$Q_{10}$含有組成物。
【請求項７】
還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が１．０重量％以上共存する請求項６記載の還元型補酵素$Q_{10}$含有組成物。
【請求項８】
還元型補酵素$Q_{10}$が結晶形態である、請求項６または７記載の還元型補酵素$Q_{10}$含有組成物。
【請求項９】
還元型補酵素$Q_{10}$が溶媒に溶解及び／又は懸濁された形態である請求項６または７記載の還元型補酵素$Q_{10}$含有組成物。
【請求項１０】
還元型補酵素$Q_{10}$が溶融液の形態である請求項６または７記載の還元型補酵素$Q_{10}$含有組成物。
【請求項１１】
還元型補酵素$Q_{10}$を有効成分とし、哺乳類に投与にされる請求項６または７記載の還元型補酵素$Q_{10}$含有組成物。
【請求項１２】
組成物中に賦形剤、崩壊剤、滑沢剤、結合剤、酸化防止剤、着色剤、凝集防止剤、吸収促進剤、有効成分の溶解補助剤、安定化剤、または還元型補酵素$Q_{10}$以外の他の活性成分が含まれる請求項１１記載の還元型補酵素$Q_{10}$含有組成物。
【請求項１３】
カプセル剤である請求項１２記載の還元型補酵素$Q_{10}$含有組成物。
【請求項１４】
カプセル剤が、マイクロカプセル、ソフトカプセル又はハードカプセルである請求項１３記載の還元型補酵素$Q_{10}$含有組成物。
【請求項１５】
還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が０．６重量％以上、及び／又は、還元型補酵素$Q_{11}$が共存する還元型補酵素$Q_{10}$含有組成物の製造方法であって、還元型補酵素$Q_{10}$に、別途調製された還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を添加することを特徴とする製造方法。
【請求項１６】
還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が０．６重量％以上、及び／又は、還元型補酵素$Q_{11}$が共存する還元型補酵素$Q_{10}$含有組成物の製造方法であって、酸化型補酵素$Q_9$を０．６重量％以上、及び／又は酸化型補酵素$Q_{11}$を含む酸化型補酵素$Q_{10}$を還元するこ

とを特徴とする製造方法。

【書類名】明細書
【発明の名称】還元型補酵素$Q_{10}$の安定化方法
【技術分野】
【０００１】
本発明は、還元型補酵素$Q_{10}$の安定化方法、並びに酸化に対して安定な還元型補酵素$Q_{10}$含有組成物に関する。還元型補酵素$Q_{10}$は、酸化型補酵素$Q_{10}$と比較して高い経口吸収性を示し、優れた食品、栄養機能食品、特定保健用食品、栄養補助剤、栄養剤、動物薬、飲料、飼料、化粧品、医薬品、治療薬、予防薬等として有用な化合物である。
【背景技術】
【０００２】
還元型補酵素$Q_{10}$は、例えば、合成、発酵、天然物からの抽出等の従来公知の方法により補酵素$Q_{10}$を得た後、クロマトグラフィーにより流出液中の還元型補酵素$Q_{10}$区分を濃縮する方法等により得られることが知られている（特許文献１）。この場合には、上記還元型補酵素$Q_{10}$中に含まれる酸化型補酵素$Q_{10}$を、水素化ホウ素ナトリウム、亜ジチオン酸ナトリウム（次亜硫酸ナトリウム）等の一般的な還元剤を用いて還元した後、クロマトグラフィーによる濃縮を行っても良いこと、また、還元型補酵素$Q_{10}$は、既存の高純度補酵素$Q_{10}$に上記還元剤を作用させる方法によっても得られることが、該特許公報中に記載されている。
【０００３】
本発明者らは、鋭意検討の結果、簡便に還元型補酵素$Q_{10}$を得るための製法を確立し特許出願した（例えば、特許文献２～４）。
【０００４】
しかしながら、還元型補酵素$Q_{10}$は、分子酸素によって酸化型補酵素$Q_{10}$に酸化されやすく、還元型補酵素$Q_{10}$を食品、栄養機能食品、特定保健用食品、栄養補助剤、栄養剤、動物薬、飲料、飼料、化粧品、医薬品、治療薬、予防薬等或いはそれらの素材や組成物に加工する際、及び／又は、加工後保存する際、還元型補酵素$Q_{10}$の安定化が重要な課題として残されている。上記の加工や保存に際して、完全な酸素の除去或いは遮断は極めて難しく、特に加工時の加温や長期にわたる保存において、残存する或いは混入する酸素が大きな悪影響を及ぼす。上記酸化は、酸化型補酵素$Q_{10}$の副生といった品質面の問題に直結する。
【０００５】
このように還元型補酵素$Q_{10}$を安定化する（酸化から防護する）ことは非常に重要な課題であるが、現在まで還元型補酵素$Q_{10}$が市販されていないために、還元型補酵素$Q_{10}$を安定に保持するための方法及び組成物に関する研究はあまりなされていない。
【０００６】
従来知られている還元型補酵素$Q_{10}$を安定に保持するための方法としては、還元剤を添加する方法が存在するが、これら使用する還元剤には、食品用や医薬用途で使用するには不適切であるものもあった。例えば、還元剤を共存させた組成物並びにその製造法について記述した例（特許文献５）では、
１）還元型補酵素$Q_{10}$、還元型補酵素$Q_{10}$が酸化型補酵素$Q_{10}$に酸化されるのを抑制するために有効な量の還元剤、及び、上記還元型補酵素$Q_{10}$と上記還元剤を溶解するために有効な量の界面活性剤又は植物油又はこれらの混合物、そして必要に応じて溶媒からなる組成物、
２）上記組成物をゼラチンカプセル又はタブレットに製剤化した経口投与のための組成物、更に、
３）酸化型補酵素$Q_{10}$並びに還元剤を用いてｉｎ　ｓｉｔｕで還元型補酵素$Q_{10}$を含有する上記組成物を調製する方法、
が開示されているが、組成物中に含まれる還元型補酵素$Q_{10}$の品質や安定化効果等に関する詳細な記述はなく、どの程度の安定化が見込めるかは明らかでない。
【０００７】

また、上記の組成物やその調製方法は、組成物に複数の役割（すなわち、第一に酸化型補酵素$Q_{10}$を還元型補酵素$Q_{10}$に還元する反応の場としての役割、第二に還元型補酵素$Q_{10}$を安定に保持する役割）を持たせるため、非常に複雑・煩雑なものとなっている。さらに、上記組成物やその調製方法においては、反応混合物がそのまま用いられているために必ずしも安全であるとは言い難い。すなわち、還元剤として使用されるアスコルビン酸類は酸化されて相当量のデヒドロアスコルビン酸類を生じ、それが上記組成物中に混入するという問題がある。デヒドロアスコルビン酸類や分解により生成したシュウ酸は、アスコルビン酸類とは異なり、有害性が高い。たとえば、肝臓や腎臓中の過酸化脂質量の増加と抗酸化物質の減少や腎臓中のシュウ酸量の増加が報告されており、酸化ストレスに対する抵抗力の低下や尿管結石を発症し易い（非特許文献１）等の副作用が懸念される。

【特許文献１】特開平１０－１０９９３３号公報
【特許文献２】ＷＯ０３／０６４０８号公報
【特許文献３】ＷＯ０３／０６４０９号公報
【特許文献４】ＷＯ０３／３２９６７号公報
【特許文献５】ＷＯ０１／５２８２２号公報
【非特許文献１】ニュートリション　リサーチ（Ｎｕｔｒｉｔｏｎ　Ｒｅｓｅａｒｃｈ）１３巻、６６７－６７６項、１９９３年

【発明の開示】

【発明が解決しようとする課題】

【０００８】

本発明は、上記に鑑み、還元型補酵素$Q_{10}$を含有する食品、栄養機能食品、特定保健用食品、栄養補助剤、栄養剤、動物薬、飲料、飼料、化粧品、医薬品、治療薬、予防薬等或いはそれらの素材や組成物に加工するに際して、及び／又は、加工後保存するに際して、高い安全性を維持しつつ、還元型補酵素$Q_{10}$を酸化から防護して安定に保持するための簡便且つ好適な方法並びに組成物を提供することを目的とする。

【課題を解決するための手段】

【０００９】

本発明者らは、上記課題を解決すべく鋭意研究した結果、還元型補酵素$Q_{10}$と還元型補酵素$Q_{10}$の類縁体である還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$とを共存させることにより、還元型補酵素$Q_{10}$が安定化されることを見出した。

【００１０】

すなわち、本発明は、還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$を０．６重量％以上及び／又は還元型補酵素$Q_{11}$を共存させる還元型補酵素$Q_{10}$の安定化方法である。また、本発明は、還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が０．６重量％以上及び／又は還元型補酵素$Q_{11}$が共存した還元型補酵素$Q_{10}$含有組成物でもある。

【００１１】

より好ましくは、還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$を１．０重量％以上及び／又は還元型補酵素$Q_{11}$を共存させる還元型補酵素$Q_{10}$の安定化方法であり、また、還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が１．０重量％以上及び／又は還元型補酵素$Q_{11}$が共存した還元型補酵素$Q_{10}$含有組成物である。

【発明の効果】

【００１２】

本発明によれば、ことさらに複数の成分を添加することなく、還元型補酵素$Q_{10}$の類縁体を共存させるだけで、安定な還元型補酵素$Q_{10}$を提供することができる。

【００１３】

ここで、還元型補酵素$Q_9$や還元型補酵素$Q_{11}$は生体内では、還元型補酵素$Q_{10}$と同様の効果を発揮する。したがって、還元型補酵素$Q_{10}$に含まれる還元型補酵素$Q_9$や還元型補酵素$Q_{11}$を摂取しても還元型補酵素$Q_{10}$の効果を妨げることはなく、還元型補酵素$Q_{10}$と同様の働きをする。

【発明を実施するための最良の形態】

【００１４】
以下、本発明を詳細に説明する。なお、本明細書において、補酵素$Q_{10}$とのみ記載した場合は、酸化型、還元型を問わず、両者が混在する場合には混合物全体を表すものである。

【００１５】
本発明においては、分子酸素による還元型補酵素$Q_{10}$の酸化型補酵素$Q_{10}$への酸化を抑制する為に、還元型補酵素$Q_{10}$に、還元型補酵素$Q_{10}$の類縁体である還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を共存させる。

【００１６】
本発明において、還元型補酵素$Q_{10}$は、還元型補酵素$Q_{10}$単独でも良く、又、酸化型補酵素$Q_{10}$との混合物であっても良い。上記混合物の場合、還元型補酵素$Q_{10}$の補酵素$Q_{10}$の総量（すなわち、還元型補酵素$Q_{10}$及び酸化型補酵素$Q_{10}$の合計量）に占める割合は、特に制限されないが、例えば２０重量％以上、普通４０重量％以上、好ましくは６０重量％以上、より好ましくは８０重量％以上、とりわけ９０重量％以上、なかんずく９６重量％以上である。上限は１００重量％であり、特に限定されないが、普通９９．９重量％以下である。

【００１７】
還元型補酵素$Q_{10}$は、前述のように種々の方法で得ることができるが、例えば、ＷＯ０３／０６４０８号公報に記載の方法により、補酵素$Q_{10}$の総量に占める還元型補酵素$Q_{10}$の割合が高い還元型補酵素$Q_{10}$を効率よく得ることができる。

【００１８】
本発明の安定化された還元型補酵素$Q_{10}$含有組成物、すなわち、還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を含有する還元型補酵素$Q_{10}$の製造法としては特に制限されない。還元型補酵素$Q_{10}$に別途調製された還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を添加し、本発明の還元型補酵素$Q_{10}$含有組成物としても良いし、酸化型補酵素$Q_9$及び／又は酸化型補酵素$Q_{11}$を含有する酸化型補酵素$Q_{10}$を還元することにより、本発明の還元型補酵素$Q_{10}$含有組成物としても良い。言うまでもなく、酸化型補酵素$Q_9$及び／又は酸化型補酵素$Q_{11}$を含む酸化型補酵素$Q_{10}$を還元する方法と、別途調製した還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を添加する方法とを併用することも可能である。

【００１９】
還元型補酵素$Q_{10}$に別途添加する還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$は、天然物から抽出精製しても良いし、酸化型補酵素$Q_9$及び／又は酸化型補酵素$Q_{11}$を、前記ＷＯ０３／０６４０８号公報に記載の方法に準じて還元することによっても調製することができる。また、酸化型補酵素$Q_9$及び／又は酸化型補酵素$Q_{11}$を含有する酸化型補酵素$Q_{10}$を還元する場合も、ＷＯ０３／０６４０８号公報に記載の方法に準じて行うことができる。

【００２０】
還元型補酵素$Q_{10}$に含まれる還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$の量は、特に制限されないが、還元型補酵素$Q_{10}$に対し、還元型補酵素$Q_9$が通常、約０．６重量％以上、好ましくは約１．０重量％以上、より好ましくは約２重量％以上、更に好ましくは約３重量％以上であり、還元型補酵素$Q_{11}$が通常約０．１重量％以上であり、好ましくは約０．５重量％以上であり、より好ましくは約１重量％以上である。

【００２１】
還元型補酵素$Q_{10}$に含まれる還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$の量の上限も特に制限されないが、通常約９９重量％以下、好ましくは約９０重量％以下、より好ましくは約８０重量％以下、特に好ましくは約７０重量％以下、さらに好ましくは約６０重量％以下、中でも約５０重量％以下、とりわけ約４０重量％以下である。言うまでもなく、還元型補酵素$Q_9$と還元型補酵素$Q_{11}$の両方が還元型補酵素$Q_{10}$に含まれていても良い。

【００２２】

本発明の、還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{10}$が共存する還元型補酵素$Q_{10}$含有組成物の形態としては特に制限されず、結晶形態；溶媒に溶解または懸濁された形態；融点以上に保持された溶融液形態；および、経口投与剤や外用剤などの哺乳類への投与を意図した形態のいずれであってもよい。

【００２３】

本発明においては、還元型補酵素$Q_{10}$と還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を接触させる形態は特に制限されず、例えば、還元型補酵素$Q_{10}$と還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$が共に結晶として存在してもよく、任意の溶媒に溶解及び／又は懸濁した状態であってもよい。言うまでもなく、還元型補酵素$Q_{10}$の融液に還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$が溶解していてもよい。

【００２４】

本発明において使用しうる溶媒としては、特に制限されず、炭化水素類、脂肪酸エステル類、エーテル類、アルコール類、脂肪酸類、ケトン類、窒素化合物類（ニトリル類、アミド類を含む）、硫黄化合物類、油脂類、水等を挙げることができる。これらの溶媒は任意の２種以上の混合物としても使用することができる。

【００２５】

炭化水素類としては、特に制限されないが、例えば、脂肪族炭化水素、芳香族炭化水素、ハロゲン化炭化水素等を挙げることができる。特に、脂肪族炭化水素、芳香族炭化水素が好ましく、とりわけ、脂肪族炭化水素が好ましい。

【００２６】

脂肪族炭化水素としては、環状、非環状を問わず、又、飽和、不飽和を問わず、特に制限されないが、一般に、飽和のものが好ましく用いられる。普通、炭素数３～２０、特に炭素数５～１２、とりわけ炭素数５～８のものが好適に用いられる。具体例としては、例えば、プロパン、ブタン、イソブタン、ペンタン、２－メチルブタン、ヘキサン、２－メチルペンタン、２，２－ジメチルブタン、２，３－ジメチルブタン、ヘプタン、ヘプタン異性体（例えば、２－メチルヘキサン、３－メチルヘキサン、２，３－ジメチルペンタン、２，４－ジメチルペンタン）、オクタン、２，２，３－トリメチルペンタン、イソオクタン、ノナン、２，２，５－トリメチルヘキサン、デカン、ドデカン、２－ペンテン、１－ヘキセン、１－ヘプテン、１－オクテン、１－ノネン、１－デセン、シクロペンタン、メチルシクロペンタン、シクロヘキサン、メチルシクロヘキサン、エチルシクロヘキサン、ｐ－メンタン、シクロヘキセン等を挙げることができる。

【００２７】

ペンタン、２－メチルブタン、ヘキサン、２－メチルペンタン、２，２－ジメチルブタン、２，３－ジメチルブタン、ヘプタン、ヘプタン異性体（例えば、２－メチルヘキサン、３－メチルヘキサン、２，３－ジメチルペンタン、２，４－ジメチルペンタン）、オクタン、２，２，３－トリメチルペンタン、イソオクタン、ノナン、２，２，５－トリメチルヘキサン、デカン、ドデカン、シクロペンタン、メチルシクロペンタン、シクロヘキサン、メチルシクロヘキサン、エチルシクロヘキサン、ｐ－メンタン等が好ましく、特に、ペンタン、２－メチルブタン、ヘキサン、２－メチルペンタン、２，２－ジメチルブタン、２，３－ジメチルブタン、ヘプタン、ヘプタン異性体（例えば、２－メチルヘキサン、３－メチルヘキサン、２，３－ジメチルペンタン、２，４－ジメチルペンタン）、オクタン、２，２，３－トリメチルペンタン、イソオクタン、シクロペンタン、メチルシクロペンタン、シクロヘキサン、メチルシクロヘキサン、エチルシクロヘキサン等が好ましい。

【００２８】

一般に、ヘプタン類、ヘプタンはもちろん、炭素数７を有するメチルシクロヘキサン等の異種ヘプタンやそれらの複数混合物が好ましく用いられる。通常、炭素数５のペンタン類（例えば、ペンタン等）、炭素数６のヘキサン類（例えば、ヘキサン、シクロヘキサン等）、炭素数７のヘプタン類（例えば、ヘプタン、メチルシクロヘキサン等）等が好ましく用いられるが、最も好ましくは、ヘプタン類（例えば、ヘプタン、メチルシクロヘキサ

ン等）であり、とりわけヘプタンが好ましい。

【００２９】

芳香族炭化水素としては、特に制限されないが、普通、炭素数６～２０、特に炭素数６～１２、とりわけ炭素数７～１０のものが好適に用いられる。具体例としては、例えば、ベンゼン、トルエン、キシレン、ｏ－キシレン、ｍ－キシレン、ｐ－キシレン、エチルベンゼン、クメン、メシチレン、テトラリン、ブチルベンゼン、ｐ－シメン、シクロヘキシルベンゼン、ジエチルベンゼン、ペンチルベンゼン、ジペンチルベンゼン、ドデシルベンゼン、スチレン等を挙げることができる。トルエン、キシレン、ｏ－キシレン、ｍ－キシレン、ｐ－キシレン、エチルベンゼン、クメン、メシチレン、テトラリン、ブチルベンゼン、ｐ－シメン、シクロヘキシルベンゼン、ジエチルベンゼン、ペンチルベンゼン等が好ましく、特に、トルエン、キシレン、ｏ－キシレン、ｍ－キシレン、ｐ－キシレン、クメン、テトラリン等が好ましい。最も好ましくは、クメンである。

【００３０】

ハロゲン化炭化水素としては、環状、非環状を問わず、又、飽和、不飽和を問わず、特に制限されないが、一般に、非環状のものが好ましく用いられる。普通、塩素化炭化水素、フッ素化炭化水素が好ましく、特に塩素化炭化水素が好ましい。炭素数１～６、特に炭素数１～４、とりわけ炭素数１～２のものが好適に用いられる。具体例としては、例えば、ジクロロメタン、クロロホルム、四塩化炭素、１，１－ジクロロエタン、１，２－ジクロロエタン、１，１，１－トリクロロエタン、１，１，２－トリクロロエタン、１，１，１，２－テトラクロロエタン、１，１，２，２－テトラクロロエタン、ペンタクロロエタン、ヘキサクロロエタン、１，１－ジクロロエチレン、１，２－ジクロロエチレン、トリクロロエチレン、テトラクロロエチレン、１，２－ジクロロプロパン、１，２，３－トリクロロプロパン、クロロベンゼン、１，１，１，２－テトラフルオロエタン等を挙げることができる。

【００３１】

ジクロロメタン、クロロホルム、四塩化炭素、１，１－ジクロロエタン、１，２－ジクロロエタン、１，１，１－トリクロロエタン、１，１，２－トリクロロエタン、１，１－ジクロロエチレン、１，２－ジクロロエチレン、トリクロロエチレン、クロロベンゼン、１，１，１，２－テトラフルオロエタン等が好ましく、特に、ジクロロメタン、クロロホルム、１，２－ジクロロエチレン、トリクロロエチレン、クロロベンゼン、１，１，１，２－テトラフルオロエタン等が好ましい。

【００３２】

脂肪酸エステル類としては、特に制限されないが、例えば、プロピオン酸エステル、酢酸エステル、ギ酸エステル等を挙げることができる。特に、酢酸エステル、ギ酸エステルが好ましく、とりわけ、酢酸エステルが好ましい。特に制限されないが、一般に、エステル基としては、炭素数１～８のアルキルエステル又はアラルキルエステル、好ましくは炭素数１～６のアルキルエステル、より好ましくは炭素数１～４のアルキルエステルが好ましく用いられる。

【００３３】

プロピオン酸エステルの具体例としては、例えば、プロピオン酸メチル、プロピオン酸エチル、プロピオン酸ブチル、プロピオン酸イソペンチルを挙げることができる。酢酸エステルの具体例としては、例えば、酢酸メチル、酢酸エチル、酢酸プロピル、酢酸イソプロピル、酢酸ブチル、酢酸イソブチル、酢酸ｓｅｃ－ブチル、酢酸ペンチル、酢酸イソペンチル、酢酸ｓｅｃ－ヘキシル、酢酸シクロヘキシル、酢酸ベンジル等を挙げることができる。

【００３４】

酢酸メチル、酢酸エチル、酢酸プロピル、酢酸イソプロピル、酢酸ブチル、酢酸イソブチル、酢酸ｓｅｃ－ブチル、酢酸ペンチル、酢酸イソペンチル、酢酸ｓｅｃ－ヘキシル、酢酸シクロヘキシル等が好ましい。最も好ましくは、酢酸メチル、酢酸エチル、酢酸プロピル、酢酸イソプロピル、酢酸ブチル、酢酸イソブチル等であり、とりわけ、酢酸エチル

が好ましい。ギ酸エステルの具体例としては、例えば、ギ酸メチル、ギ酸エチル、ギ酸プロピル、ギ酸イソプロピル、ギ酸ブチル、ギ酸イソブチル、ギ酸ｓｅｃ－ブチル、ギ酸ペンチル等を挙げることができる。ギ酸メチル、ギ酸エチル、ギ酸プロピル、ギ酸ブチル、ギ酸イソブチル、ギ酸ペンチル等が好ましい。最も好ましくは、ギ酸エチルである。

【００３５】

エーテル類としては、環状、非環状を問わず、又、飽和、不飽和を問わず、特に制限されないが、一般に、飽和のものが好ましく用いられる。普通、炭素数３～２０、特に炭素数４～１２、とりわけ炭素数４～８のものが好適に用いられる。具体例としては、例えば、ジエチルエーテル、メチルｔｅｒｔ－ブチルエーテル、ジプロピルエーテル、ジイソプロピルエーテル、ジブチルエーテル、ジヘキシルエーテル、エチルビニルエーテル、ブチルビニルエーテル、アニソール、フェネトール、ブチルフェニルエーテル、メトキシトルエン、ジオキサン、フラン、２－メチルフラン、テトラヒドロフラン、テトラヒドロピラン、エチレングリコールジメチルエーテル、エチレングリコールジエチルエーテル、エチレングリコールジブチルエーテル、エチレングリコールモノメチルエーテル、エチレングリコールモノエチルエーテル、エチレングリコールジブチルエーテル等を挙げることができる。

【００３６】

ジエチルエーテル、メチルｔｅｒｔ－ブチルエーテル、ジプロピルエーテル、ジイソプロピルエーテル、ジブチルエーテル、ジヘキシルエーテル、アニソール、フェネトール、ブチルフェニルエーテル、メトキシトルエン、ジオキサン、２－メチルフラン、テトラヒドロフラン、テトラヒドロピラン、エチレングリコールジメチルエーテル、エチレングリコールジエチルエーテル、エチレングリコールジブチルエーテル、エチレングリコールモノメチルエーテル、エチレングリコールモノエチルエーテル等が好ましく、特に、ジエチルエーテル、メチルｔｅｒｔ－ブチルエーテル、アニソール、ジオキサン、テトラヒドロフラン、エチレングリコールモノメチルエーテル、エチレングリコールモノエチルエーテル等が好ましい。最も好ましくは、ジエチルエーテル、メチルｔｅｒｔ－ブチルエーテル、アニソール、ジオキサン、テトラヒドロフラン等であり、とりわけ、ジオキサン、テトラヒドロフランが好ましい。

【００３７】

ニトリル類としては、環状、非環状を問わず、又、飽和、不飽和を問わず、特に制限されないが、一般に飽和のものが好ましく用いられる。普通、炭素数２～２０、特に炭素数２～１２、とりわけ炭素数２～８のものが好適に用いられる。

【００３８】

具体例としては、例えば、アセトニトリル、プロピオニトリル、マロノニトリル、ブチロニトリル、イソブチロニトリル、スクシノニトリル、バレロニトリル、グルタロニトリル、ヘキサンニトリル、ヘプチルシアニド、オクチルシアニド、ウンデカンニトリル、ドデカンニトリル、トリデカンニトリル、ペンタデカンニトリル、ステアロニトリル、クロロアセトニトリル、ブロモアセトニトリル、クロロプロピオニトリル、ブロモプロピオニトリル、メトキシアセトニトリル、シアノ酢酸メチル、シアノ酢酸エチル、トルニトリル、ベンゾニトリル、クロロベンゾニトリル、ブロモベンゾニトリル、シアノ安息香酸、ニトロベンゾニトリル、アニソニトリル、フタロニトリル、ブロモトルニトリル、メチルシアノベンゾエート、メトキシベンゾニトリル、アセチルベンゾニトリル、ナフトニトリル、ビフェニルカルボニトリル、フェニルプロピオニトリル、フェニルブチロニトリル、メチルフェニルアセトニトリル、ジフェニルアセトニトリル、ナフチルアセトニトリル、ニトロフェニルアセトニトリル、クロロベンジルシアニド、シクロプロパンカルボニトリル、シクロヘキサンカルボニトリル、シクロヘプタンカルボニトリル、フェニルシクロヘキサンカルボニトリル、トリルシクロヘキサンカルボニトリル等を挙げることができる。

【００３９】

アルコール類としては、環状、非環状を問わず、又、飽和、不飽和を問わず、特に制限されないが、一般に、飽和のものが好ましく用いられる。普通、炭素数１～２０、特に炭

素数１～１２、とりわけ炭素数１～６、なかでも炭素数１～５の１価アルコールが好ましく、又、炭素数２～５の２価アルコールが好ましく、又、炭素数３の３価アルコールが好ましい。

【００４０】

これらアルコール類の具体例としては、例えば、メタノール、エタノール、１－プロパノール、２－プロパノール、１－ブタノール、２－ブタノール、イソブチルアルコール、ｔｅｒｔ－ブチルアルコール、１－ペンタノール、２－ペンタノール、３－ペンタノール、２－メチル－１－ブタノール、イソペンチルアルコール、ｔｅｒｔ－ペンチルアルコール、３－メチル－２－ブタノール、ネオペンチルアルコール、１－ヘキサノール、２－メチル－１－ペンタノール、４－メチル－２－ペンタノール、２－エチル－１－ブタノール、１－ヘプタノール、２－ヘプタノール、３－ヘプタノール、１－オクタノール、２－オクタノール、２－エチル－１－ヘキサノール、１－ノナノール、１－デカノール、１－ウンデカノール、１－ドデカノール、アリルアルコール、プロパルギルアルコール、ベンジルアルコール、シクロヘキサノール、１－メチルシクロヘキサノール、２－メチルシクロヘキサノール、３－メチルシクロヘキサノール、４－メチルシクロヘキサノール、２－メトキシエタノール、２－エトキシエタノール、２－（メトキシメトキシ）エタノール、２－イソプロキシエタノール、２－ブトキシエタノール、２－（イソペンチルオキシ）エタノール、２－（ヘキシルオキシ）エタノール、フルフリルアルコール、ジエチレングリコールモノメチルエーテル、ジエチレングリコールモノエチルエーテル、ジエチレングリコールモノブチルエーテル、トリエチレングリコールモノメチルエーテル、１－メトキシ－２－プロパノール、１－エトキシ－２－プロパノール、ジプロピレングリコールモノメチルエーテル、ジプロピレングリコールモノエチルエーテル、トリプロピレングリコールモノメチルエーテル、１，２－エタンジオール、１，２－プロパンジオール、１，３－プロパンジオール、１，２－ブタンジオール、１，３－ブタンジオール、１，４－ブタンジオール、２，３－ブタンジオール、１，５－ペンタンジオール、２－ブテン－１，４－ジオール、２－メチル－２，４－ペンタンジオール、２－エチル－１，３－ヘキサンジオール、ジエチレングリコール、トリエチレングリコール、テトラエチレングリコール、ポリエチレングリコール、ジプロピレングリコール、ポリプロピレングリコール、グリセリン等を挙げることができる。

【００４１】

１価アルコールとしては、メタノール、エタノール、１－プロパノール、２－プロパノール、１－ブタノール、２－ブタノール、イソブチルアルコール、ｔｅｒｔ－ブチルアルコール、１－ペンタノール、２－ペンタノール、３－ペンタノール、２－メチル－１－ブタノール、イソペンチルアルコール、ｔｅｒｔ－ペンチルアルコール、３－メチル－２－ブタノール、ネオペンチルアルコール、１－ヘキサノール、２－メチル－１－ペンタノール、４－メチル－２－ペンタノール、２－エチル－１－ブタノール、１－ヘプタノール、２－ヘプタノール、３－ヘプタノール、１－オクタノール、２－オクタノール、２－エチル－１－ヘキサノール、１－ノナノール、１－デカノール、１－ウンデカノール、１－ドデカノール、ベンジルアルコール、シクロヘキサノール、１－メチルシクロヘキサノール、２－メチルシクロヘキサノール、３－メチルシクロヘキサノール、４－メチルシクロヘキサノール、２－メトキシエタノール、２－エトキシエタノール、２－（メトキシメトキシ）エタノール等が好ましく、特にメタノール、エタノール、１－プロパノール、２－プロパノール、１－ブタノール、２－ブタノール、イソブチルアルコール、ｔｅｒｔ－ブチルアルコール、１－ペンタノール、２－ペンタノール、３－ペンタノール、２－メチル－１－ブタノール、イソペンチルアルコール、ｔｅｒｔ－ペンチルアルコール、３－メチル－２－ブタノール、ネオペンチルアルコール、１－ヘキサノール、２－メチル－１－ペンタノール、４－メチル－２－ペンタノール、２－エチル－１－ブタノール、シクロヘキサノール等が好ましく、なかでもメタノール、エタノール、１－プロパノール、２－プロパノール、１－ブタノール、２－ブタノール、イソブチルアルコール、ｔｅｒｔ－ブチルアルコール、１－ペンタノール、２－ペンタノール、３－ペンタノール、２－メチル－１－

ブタノール、イソペンチルアルコール、ｔｅｒｔ－ペンチルアルコール、３－メチル－２－ブタノール、ネオペンチルアルコール等が好ましい。最も好ましくは、メタノール、エタノール、１－プロパノール、２－プロパノール、１－ブタノール、２－ブタノール、イソブチルアルコール、２－メチル－１－ブタノール、イソペンチルアルコール等であり、なかでも、メタノール、エタノール、１－プロパノール、２－プロパノール、が好ましく、とりわけ、エタノールが好ましい。

【００４２】

２価アルコールとしては、１，２－エタンジオール、１，２－プロパンジオール、１，３－プロパンジオール、２－ブテン－１，４－ジオール、２－メチル－２，４－ペンタンジオール、２－エチル－１，３－ヘキサンジオール、ジエチレングリコール、トリエチレングリコール、テトラエチレングリコール、ポリエチレングリコール、ジプロピレングリコール、ポリプロピレングリコール等が好ましく、１，２－プロパンジオール、ポリエチレングリコールが最も好ましい。３価アルコールとしては、グリセリンが好ましい。

【００４３】

ケトン類としては、特に制限されず、普通炭素数３～６のものが好適に用いられる。具体例としては、例えば、アセトン、メチルエチルケトン、メチルブチルケトン、メチルイソブチルケトン等を挙げることができ、特にアセトン、メチルエチルケトンが好ましく、アセトンが最も好ましい。

【００４４】

窒素化合物類としては、例えば、ニトロメタン、アセトニトリル、トリエチルアミン、ピリジン、ホルムアミド、Ｎ－メチルホルムアミド、Ｎ，Ｎ－ジメチルホルムアミド、Ｎ，Ｎ－ジメチルアセトアミド、Ｎ－メチルピロリドン等を挙げることができ、特にアセトニトリルが好ましい。

【００４５】

硫黄化合物類としては、例えば、ジメチルスルホキシド、スルホラン等を挙げることができる。

【００４６】

脂肪酸類としては、例えば、ギ酸、酢酸、プロピオン酸、オレイン酸、リノール酸、リノレイン酸等を挙げることができるが、ギ酸、酢酸が好ましく、最も好ましくは酢酸である。

【００４７】

油脂類としては、特に制限されず、動植物からの天然油脂であってもよく、合成油脂や加工油脂であってもよい。植物油脂としては、例えば、オリーブ油、ヤシ油、パーム油、パーム核油、アマニ油、つばき油、玄米胚芽油、菜種油、米油、落花生油、コーン油、小麦胚芽油、大豆油、エゴマ油、綿実油、ヒマワリ種子油、カポック油、月見草油、シア脂、サル脂、カカオ脂、ゴマ油、サフラワー油等を挙げることができ、動物油脂としては、例えば、豚脂、乳脂、魚油、牛脂等を挙げることができ、更に、これらを分別、水素添加、エステル交換等により加工した油脂（例えば、硬化油）も挙げることができる。言うまでもなく、中鎖脂肪酸トリグリセリド（ＭＣＴ）、脂肪酸の部分グリセリド、リン脂質等も使用しうる。

【００４８】

中鎖脂肪酸トリグリセリドとしては、例えば、脂肪酸の炭素数が各々６～１２、好ましくは８～１２のトリグリセリドを挙げることができ、また、脂肪酸の部分グリセリドとしては、例えば、脂肪酸の炭素数が各々６～１８、好ましくは６～１２のモノグリセリドやジグリセリドを挙げることができる。

【００４９】

上記油脂のうち、取り扱い易さ、臭気等の面から植物油脂、合成油脂や加工油脂が好ましい。これらは油脂の価格、還元型補酵素$Q_{10}$の安定性や補酵素$Q_{10}$の溶解性等を考慮して選定するのが好ましい。例えば、オリーブ油、ヤシ油、パーム油、パーム核油、菜種油、米油、大豆油、綿実油、ＭＣＴ等が好ましく、オリーブ油、米油、大豆油、菜種油、Ｍ

ＣＴ等が特に好ましい。尚、補酵素$Q_{10}$の溶解性の観点からはＭＣＴを特に好適に使用することができる。

【００５０】

本発明の組成物を食用又は医薬用に用いる場合には、上記溶媒の中でもエタノール、水、食用又は医薬用に用いることのできる油脂類を用いるのが好ましい。

【００５１】

本発明に際しては、上記溶媒のほかに、他の素材が適宜添加されていてもよい。このようなものとしては、特に制限されず、例えば、賦形剤、崩壊剤、滑沢剤、結合剤、酸化防止剤、着色剤、凝集防止剤、吸収促進剤、有効成分の溶解補助剤、安定化剤等が挙げられる。言うまでもなく、補酵素$Q_{10}$以外の他の活性成分を共存させることを妨げない。

【００５２】

上記賦形剤としては特に制限されないが、例えば、白糖、乳糖、ブドウ糖、コーンスターチ、マンニトール、結晶セルロース、リン酸カルシウム、硫酸カルシウム等を挙げることができる。

【００５３】

上記崩壊剤としては特に制限されないが、例えば、でんぷん、寒天、クエン酸カルシウム、炭酸カルシウム、炭酸水素ナトリウム、デキストリン、結晶セルロース、カルボキシメチルセルロース、トラガント等を挙げることができる。

【００５４】

上記滑沢剤としては特に制限されないが、例えば、タルク、ステアリン酸マグネシウム、ポリエチレングリコール、シリカ、硬化植物油等を挙げることができる。

【００５５】

上記結合剤としては特に制限されないが、例えば、エチルセルロース、メチルセルロース、ヒドロキシプロピルメチルセルロース、トラガント、シェラック、ゼラチン、アラビアゴム、ポリビニルピロリドン、ポリビニルアルコール、ポリアクリル酸、ポリメタクリル酸、ソルビトール等を挙げることができる。

【００５６】

上記酸化防止剤としては、特に制限されないが、例えば、アスコルビン酸、トコフェロール、ビタミンＡ、β－カロチン、亜硫酸水素ナトリウム、チオ硫酸ナトリウム、ピロ亜硫酸ナトリウム、クエン酸等を挙げることができる。

【００５７】

上記着色剤としては特に制限されないが、例えば、医薬品、食品に添加することが許可されているもの等を挙げることができる。

【００５８】

上記凝集防止剤としては特に制限されないが、例えば、ステアリン酸、タルク、軽質無水ケイ酸、含水二酸化ケイ酸等を挙げることができる。

【００５９】

上記吸収促進剤としては特に制限されないが、例えば、高級アルコール類、高級脂肪酸類、ショ糖脂肪酸エステルやソルビタン脂肪酸エステル、ポリオキシエチレンソルビタン脂肪酸エステル等の界面活性剤等を挙げることができる。

【００６０】

上記有効成分の溶解補助剤としては特に制限されないが、例えば、フマル酸、コハク酸、リンゴ酸等の有機酸等を挙げることができる。

【００６１】

上記安定化剤としては特に制限されないが、例えば、安息香酸、安息香酸ナトリウム、パラオキシ安息香酸エチル等が挙げられる。

【００６２】

上記補酵素$Q_{10}$以外の活性成分としては、例えば、アミノ酸、ビタミン、ミネラル、ポリフェノール、有機酸、糖類、ペプチド、タンパク質等を挙げることができる。

【００６３】

本発明の組成物中に含まれる還元型補酵素$Q_{10}$の量は特に制限されないが、全組成物中に含まれる還元型補酵素$Q_{10}$の重量として、通常約０．０１重量％以上、好ましくは約０．１重量％以上、より好ましくは約１重量％以上、特に好ましくは約２重量％以上、さらに好ましくは約３重量％以上である。上限は特に制限されないが、組成物の粘性等も考慮して通常約７０％以下、好ましくは約６０重量％以下、より好ましくは約５０重量％以下である。

【００６４】

本発明の実施に際して、温度は特に制限されないが、還元型補酵素$Q_{10}$の安定化効果を最大限に発揮する為には、普通５０℃以下、好ましくは４０℃以下、より好ましくは３０℃以下である。

【００６５】

また、本発明の組成物は、下記経口投与形態に加工する場合、常温或いはそれ以上の温度で液状（溶液のみならず、懸濁状或いはスラリーの形態も含む）であるのがより好ましい。

【００６６】

本発明の上記組成物は、そのまま使用することもできるが、それをカプセル剤（ハードカプセル、ソフトカプセル）、錠剤、シロップ、飲料等の経口投与形態に加工して好ましく使用しうるし、クリーム、坐薬、練り歯磨き等のための形態に加工しても使用しうる。特に好ましくは、カプセル剤であり、とりわけ、ソフトカプセルである。カプセル基材としては特に制限されず、牛骨、牛皮、豚皮、魚皮等を由来とするゼラチンをはじめとして、他の基材（例えば、食品添加物として使用しうるカラギーナン、アルギン酸等の海藻由来品やローカストビーンガムやグアーガム等の植物種子由来品等の増粘安定剤やセルロース類を含む製造用剤）も使用しうる。

【００６７】

本発明の効果を最大限に発揮するためには、例えば、窒素雰囲気等の不活性ガス雰囲気等の脱酸素雰囲気において、本発明の方法を実施するのが好ましく、又、本発明の組成物を調製及び／又は保存するのが好ましい。上記の加工や加工後の保存も上記の不活性ガス雰囲気等の脱酸素雰囲気に行うのが好ましい。

【００６８】

上述したように、還元型補酵素$Q_{10}$に還元型補酵素$Q_9$及び／又は還元型補酵素$Q_{11}$を共存させることにより、還元型補酵素$Q_{10}$の安定性を改善することができる。

【００６９】

尚、還元型補酵素$Q_9$や還元型補酵素$Q_{11}$は生体内では、還元型補酵素$Q_{10}$と同様の効果を発揮する。したがって、還元型補酵素$Q_{10}$に含まれる還元型補酵素$Q_9$や還元型補酵素$Q_{11}$を摂取しても還元型補酵素$Q_{10}$の効果を妨げることはなく、還元型補酵素$Q_{10}$と同様の働きをする。

【００７０】

さらに、本発明者らが鋭意検討した結果、還元型補酵素$Q_9$の生体内への吸収性は還元型補酵素$Q_{10}$よりも大きいことがわかった。上述したように、還元型補酵素$Q_9$と還元型補酵素$Q_{10}$は、生体内では同じ働きをするため、還元型補酵素$Q_9$と還元型補酵素$Q_{10}$が共存した組成物においては、補酵素Ｑの総量としての吸収性が高まることも期待される。

【００７１】

本発明によれば、還元型補酵素$Q_{10}$を酸化から好適に防護することができ、また、デヒドロアスコルビン酸類等の還元剤の酸化物が共存しない組成物を提供することができる。更に、還元型補酵素$Q_{10}$の高い生体吸収性を有する組成物を提供することもできる。

【実施例】

【００７２】

以下に実施例をあげて本発明をさらに詳しく説明するが、本発明はこれら実施例に限定されるものではない。

【００７３】

また、実施例中の還元型補酵素$Q_{10}$の純度、還元型補酵素$Q_{10}$と酸化型補酵素$Q_{10}$との重量比は下記ＨＰＬＣ分析により求めたが、得られた還元型補酵素$Q_{10}$の純度は本発明における純度の限界値を規定するものではなく、また、同様に、還元型補酵素$Q_{10}$と酸化型補酵素$Q_{10}$との重量比における還元型補酵素$Q_{10}$の割合も、その上限値を規定するものではない。

【００７４】

（ＨＰＬＣ分析条件）

カラム：ＳＹＭＭＥＴＲＹ　Ｃ１８（Ｗａｔｅｒｓ製）２５０ｍｍ（長さ）４．６ｍｍ（内径）、移動相；$C_2H_5OH$：$CH_3OH$＝４：３（ｖ：ｖ）、検出波長；２１０ｎｍ、流速；１ｍｌ／ｍｉｎ、還元型補酵素$Q_{10}$の保持時間；９．１ｍｉｎ、酸化型補酵素$Q_{10}$の保持時間；１３．３ｍｉｎ。

【００７５】

（製造例１）

１０００ｇのエタノール中に、１００ｇの酸化型補酵素$Q_{10}$、６０ｇのＬ－アスコルビン酸を加え、７８℃にて攪拌し、還元反応を行った。３０時間後、５０℃まで冷却し、同温を保持しながらエタノールを４００ｇ添加した。このエタノール溶液（還元型補酵素$Q_{10}$を１００ｇ含む）を攪拌（攪拌所要動力０．３ｋＷ／$m^3$）しながら、１０℃／時間の冷却速度で２℃まで冷却し、白色のスラリーを得た。得られたスラリーを減圧ろ過し、湿結晶を冷エタノール、冷水、冷エタノール、で順に洗浄（洗浄に用いた冷溶媒の温度は２℃）して、さらに、湿結晶を減圧乾燥（２０～４０℃、１～３０ｍｍＨｇ）することにより、白色の乾燥結晶９５ｇ。なお、減圧乾燥を除くすべての操作は窒素雰囲気下で実施した。得られた結晶の還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$の重量比は９９．４／０．６であった。

【００７６】

（製造例２）

１００ｇのエタノール中に、１０ｇの酸化型補酵素$Q_9$、７ｇのＬ－アスコルビン酸を加え、７８℃にて攪拌し、還元反応を行った。３０時間後、５０℃まで冷却し、同温を保持しながらエタノール４０ｇ、ヘキサン１４０ｇ、水１４０ｇをこの順に添加した。水層を除去した後、有機層を減圧下にて濃縮し、還元型補酵素$Q_9$の結晶を得た。

【００７７】

（製造例３）

製造例１で得られた還元型補酵素$Q_{10}$　９．８５ｇと製造例２で得られた還元型補酵素$Q_9$　０．１５ｇを混合し、還元型補酵素$Q_9$を１．５重量％含有する還元型補酵素$Q_{10}$（還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$＝９９．４／０．６）を得た。

【００７８】

（実施例１）

製造例３で得られた還元型補酵素$Q_9$を１．５重量％含有する還元型補酵素$Q_{10}$（還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$＝９９．４／０．６）、及び、製造例１で得られた還元型補酵素$Q_9$を含まない還元型補酵素$Q_{10}$（還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$＝９９．４／０．６）の結晶を２５℃、空気中にて保存した。２４時間経過後の還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$比の結果を表１に示す。

【００７９】

【表１】

| | 還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$ 重量比 |
|---|---|
| 還元型補酵素$Q_9$を1.5%含む還元型補酵素$Q_{10}$ | 96.7/3.3 |
| 還元型補酵素$Q_9$を含まない還元型補酵素$Q_{10}$ | 95.5/4.5 |

【００８０】
（実施例２）
５ｇのエタノールに、製造例３で得られた５０ｍｇの還元型補酵素$Q_9$を１．５重量％含有する還元型補酵素$Q_{10}$（還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$＝９９．４／０．６）、又は、製造例１で得られた還元型補酵素$Q_9$を含まない還元型補酵素$Q_{10}$（還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$＝９９．４／０．６）を加え、２５℃、空気中にて撹拌した。６時間撹拌後の還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$比の結果を表２に示す。
【００８１】
【表２】

| | 還元型補酵素$Q_{10}$／酸化型補酵素$Q_{10}$重量比 |
|---|---|
| 還元型補酵素$Q_9$を1.5%含む還元型補酵素$Q_{10}$ | 90．2／9．8 |
| 還元型補酵素$Q_9$を含まない還元型補酵素$Q_{10}$ | 87．2／12．8 |

【００８２】
（実施例３）
Ｃｒｊ：ＣＤ（ＳＤ）ラット（５週齢、雄１５匹、雌１５匹、体重２６０ｇ～３００ｇ）を雄、雌それぞれについて、５匹ずつ３群に分けた。一つめの群は、対照群としてコーン油を３ｍｌ／ｋｇの投与量で１４日間、一日一回経口投与した。二つめの群には、還元型補酵素$Q_9$の投与量が６００ｍｇ／ｋｇとなるように調製した還元型補酵素$Q_9$のコーン油溶液を３ｍｌ／ｋｇの投与量で１４日間、一日一回経口投与した。三つめの群には、還元型補酵素$Q_{10}$の投与量が６００ｍｇ／ｋｇとなるように調製した還元型補酵素$Q_{10}$のコーン油溶液を３ｍｌ／ｋｇの投与量で１４日間、一日一回経口投与した。最終投与終了から２４時間後に採血を行い、血漿試料を得た。ＨＰＬＣを用いて得られた血漿中の補酵素Ｑ濃度を測定した。
【００８３】
結果を図１に示した。なお、図１中、縦軸は血漿中の総補酵素Ｑ濃度であり、各棒は平均±標準偏差である。図１より明らかなごとく、雄、雌いずれにおいても、還元型補酵素$Q_9$投与群では、還元型補酵素$Q_{10}$投与群に比して、血漿中総補酵素Ｑ濃度の上昇が認められた。

【図面の簡単な説明】
【００８４】
【図１】図１は、還元型補酵素Ｑ９投与ラットと還元型補酵素Ｑ１０投与ラットについて、各々の血漿中の総補酵素Ｑ濃度の測定結果を示す図である。

【書類名】図面
【図１】



総補酵素Q濃度（μg/ml）
5.0
4.0
3.0
2.0
1.0
0.0
♀
♂
コーン油（対照）
還元型CoQ9
還元型CoQ10
投与サンプル

【書類名】要約書
【要約】
【課題】　食品、栄養機能食品、特定保健用食品、栄養補助剤、栄養剤、動物薬、飲料、飼料、化粧品、医薬品、治療薬、予防薬等として有用な還元型補酵素$Q_{10}$を安定化するための方法並びに組成物の提供。
【解決手段】　還元型補酵素$Q_{10}$に還元型補酵素$Q_{9}$及び／又は還元型補酵素$Q_{11}$を共存させることを特徴とする還元型補酵素$Q_{10}$の安定化方法、及び、還元型補酵素$Q_{10}$と還元型補酵素$Q_{9}$及び／又は還元型補酵素$Q_{11}$を構成必須成分として含有する組成物。
【選択図】　なし

特願２００６－１２６８９７

# 出 願 人 履 歴 情 報

識別番号 ［０００００００９４１］

１．変更年月日 ２００４年 ９月 １日
［変更理由］ 名称変更
住 所 大阪府大阪市北区中之島３丁目２番４号
氏 名 株式会社カネカ

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Ueda et al.

Filed: April 27, 2007

TC/AU: 1657

Examiner: Unassigned

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**RESPONSE TO NOTICE TO FILE MISSING PARTS**

Dear Sir

Applicant(s) hereby respond(s) to the Notice to File Missing Parts of Application dated May 23, 2007.

The items checked below are appropriate:

**1. Status of Applicant**

This application is on behalf of ☒ other than a small entity or ☐ a small entity.

**2. Documents Submitted Herewith**

a. ☒ Executed Declaration of inventor(s)
b. ☐ Nucleotide and/or Amino Acid Sequence Submission:
  i. ☐ Computer Readable Form (CRF)
  ii. Specification Sequence Listing on:
    (1) ☐ CD-ROM or CD-R (2 copies); or
    (2) ☐ Paper Copy
  iii. ☐ Statement verifying identity of above copies
c. ☐ Verified English translation of application
d. ☐ Copy of the Notice to File Missing Parts of Application
e. ☐ Substitute Drawings
f. ☒ Other: Information Disclosure Statement.

**3. Application Filing Fee**

a. ☐ No application filing fee due

b. ☐ Application filing fee due in amount calculated below:

| BASIC FEE ($300 FILING FEE + $200 EXAMINATION FEE + $500 SEARCH FEE) | | | | $1,000.00 |
|---|---|---|---|---|
| CLAIMS | NUMBER FILED | NUMBER EXTRA | RATE | |
| Total Claims | – 20 = | | x $50.00 | $ |
| Independent Claims | – 3 = | | x $200.00 | $ |
| ☐ Multiple Dependent Claim(s) if applicable | | | + $360.00 | $ |
| ☐ Application Size Fee ($250 for each additional 50 sheets over 100) | | | | $ |
| | | | Total of above calculations = | $ |
| | | | Reduction by 50% for filing by small entity = | $( ) |
| | | | **Fee Already Paid =** | $ |
| | | | **Fee Due =** | $ |

**4. Late Filing of Oath or Declaration Surcharge**

Pursuant to 37 CFR 1.16(e), the surcharge for filing this Response is for ☒ other than a small entity or ☐ a small entity.

**Fee Due** $130.00

**5.. Non-English Specification Surcharge**

Pursuant to 37 CFR 1.17(i), the surcharge for submitting an English translation of the non-English specification is included.

**Fee Due** $ 0.00

**6. (Provisional only) Surcharge for Late Submission**

Pursuant to 37 CFR 1.16(g), the surcharge for submitting an English translation of the non-English specification is included.

**Fee Due** $ 0.00

**7. Extension of Time**

☐ Applicant(s) petition(s) for a one-month extension of time under 37 CFR 1.136, the fee for which is $120.00.

☒ Applicant(s) believe(s) that no extension of time is required. However, this conditional petition is being made to provide for the possibility that applicant(s) has/have inadvertently overlooked the need for a petition and fee for extension of time.

**Fee Due** $0.00

**8. Total Fee Due**

The total fee due is:

| | |
|---|---|
| Application Filing Fee | |
| Late Filing of Declaration Surcharge | $130.00 |
| Non-English Specification Surcharge | $ 0.00 |
| (Provisional only) Surcharge for Late Submission | $ 0.00 |
| Extension of Time Fee | $ 0.00 |

**Total Fee Due:** $130.00

**9. Fee Payment**

☐ Attached is a check in the amount of $ .

☒ Charge Account No. 12-1216 in the amount of $130.00. A duplicate copy of this communication is enclosed for that purpose (unless submitted via EFS-Web).

**10. Fee Deficiency**

☒ If any additional fee is required in connection with this communication, charge Account No. 12-1216. A duplicate of this transmittal is attached (unless submitted via EFS-Web).

Respectfully submitted,

[signature]

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: July 23, 2007

**PATENT**
Attorney Docket No. 701554

**COMBINED DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION AND POWER OF ATTORNEY**

☐ Declaration Submitted with Initial Filing OR
☒ Declaration Submitted after Initial Filing (surcharge (37 CFR 1.16(e)) required)

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name. I believe I am the original, first, and sole inventor *(if only one name is listed below)* or an original, first, and joint inventor *(if plural names are listed below)* of the subject matter which is claimed and for which a patent is sought on the invention entitled:

STABILIZATION METHOD OF REDUCED COENZYME $Q_{10}$

the specification of which:

☐ is attached hereto.
☒ was filed on April 27, 2007 as Application No. 11/741,290 and was amended on ______________ *(if applicable)*.
☐ was filed by Express Mail No. ______________ *as Application No. not known yet*, and was amended on ______________ *(if applicable)*.
☐ was filed on ______________ as PCT International Application No. PCT/______________ and was amended on ______________ *(if any)*.

I state that I have reviewed and understand the contents of the specification identified above, including the claim(s), as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

I claim foreign priority benefits under 35 USC 119(a)-(d) or (f), or 365(b) of any foreign application(s) for patent, inventor's or plant breeder's rights certificate(s), or 365(a) of any PCT international application(s) designating at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application(s) for patent, utility model, design registration, inventor's or plant breeder's rights certificate(s), or any PCT international application(s) designating at least one country other than the United States of America filed by me on the same subject matter and having a filing date before that of the application(s) from which the benefit of priority is claimed.

| Prior Foreign Application Number(s) | Country | Foreign Filing Date (MM/DD/YYYY) | Priority Claimed YES | Priority Claimed NO | Certified Copy Attached? YES | Certified Copy Attached? NO |
|---|---|---|---|---|---|---|
| 126897/2006 | Japan | 04/28/2006 | ☒ | ☐ | ☐ | ☒ |
| | | | ☐ | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ | ☐ |



KAN0000218

In re Appln. of Ueda et al.
Attorney Docket No. 701554

As a named inventor, I hereby appoint Leydig, Voit & Mayer, Ltd. to prosecute this application and transact all business in the Patent and Trademark Office connected therewith: Customer Number 23460.

23460

PATENT TRADEMARK OFFICE

I further direct that correspondence concerning this application be directed to Leydig, Voit & Mayer, Ltd.: Customer Number 23460.

23460

PATENT TRADEMARK OFFICE

I declare that all statements made herein of my own knowledge are true, that all statements made on information and belief are believed to be true, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of **sole or first inventor:** Takahiro UEDA

Inventor's signature Takahiro Ueda

Date June 15, 2007 Country of Citizenship: Japan

Residence: Kobe-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 6-31-17, Shioya-cho, Tarumi-ku, Kobe-shi, Hyogo 655-0872 Japan

*(complete mailing address)*

Full name of **second joint inventor,** if any: Shiro KITAMURA

Inventor's signature Shiro Kitamura

Date June 15, 2007 Country of Citizenship: Japan

Residence: Akashi-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 1-10-36-601, Aioi-cho, Akashi-shi, Hyogo 673-0882 Japan

*(complete mailing address)*

In re Appln. of Ueda et al.
Attorney Docket No. 701554

Full name of **third joi** Hiroshi KUBO

Inventor's signature Kubo

Date June 15, ____ Country of Citizenship: Japan

Residence: Kobe-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 5-10-10-102, Nishimaiko, Tarumi-ku, Kobe-shi, Hyogo 655-0048 Japan

*(complete mailing address)*

Full name of **fourth joint inventor,** if any: Kazunori HOSOE

Inventor's signature Kazunori Hosoe

Date June 15, 2007 Country of Citizenship: Japan

Residence: Takasago-shi, Hyogo, Japan
*(city/state or country)*

Post Office Address: 3-8-17, Nishihata, Takasago-shi, Hyogo 676-0025 Japan

*(complete mailing address)*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent Application No. 11/741,290

Confirmation No. 2693

Applicant: Ueda et al.

Filed: April 27, 2007

TC/AU: 1657

Examiner: Unassigned

Docket No.: 701554 (Client Reference No. 201659)

Customer No.: 23460

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT

Pursuant to 37 CFR 1.97 and 1.98, the references listed on the enclosed Form PTO-1449 and/or Substitute Form PTO-1449 ("Form 1449") are submitted for consideration by the Examiner in the examination of the above-identified patent application.

The full consideration of the references in their entirety by the Examiner is respectfully requested and encouraged. Also, it is respectfully requested that the references be entered into the record of the present application and that the Examiner initial the appropriate area on the enclosed Form 1449, thereby indicating the Examiner's consideration of each of the references.

The submission of the references listed on the Form 1449 is for the purpose of providing a complete record and is not a concession that the references listed thereon are prior art to the invention claimed in the patent application. The right is expressly reserved to establish an invention date earlier than the above-identified filing date in order to remove any reference submitted herewith as prior art should it be deemed appropriate to do so.

Further, the submission of the references is not to be taken as a concession that any reference represents art that is relevant or analogous to the claimed invention. Accordingly, the right to argue that any reference is not properly within the scope of prior art relevant to an examination of the claims in the above-identified application is also expressly reserved.

The Information Disclosure Statement is being filed:

☒ **within** any one of the following time periods: (a) within three months of the filing date of a national application other than a continued prosecution application under 37 CFR 1.53(d); (b) within three months of the date of entry of the national stage as set forth in 37 CFR 1.491 of an international application; (c) before the mailing date of a first Office Action on the merits; or (d) before the mailing of a first Office Action after the filing of a request for continued examination under 37 CFR 1.114.

☐ **after** (a), (b), (c) or (d) above, but before the mailing date of a final action under 37 CFR 1.113, a Notice of Allowance under 37 CFR 1.311, or an action that otherwise closes prosecution in the application, and includes *one* of:

☐ the Statement under 37 CFR 1.97(e) (see "Statement under 37 CFR 1.97(e)" below).

– *or* –

☐ the fee of $180 set forth in 37 CFR 1.17(p) (see "Fees" below).

☐ **after** the mailing date of a final action under 37 CFR 1.113 or a Notice of Allowance under 37 CFR 1.311, or an action that otherwise closes prosecution in the application, and on or before payment of the issue fee, and includes the Statement under 37 CFR 1.97(e) (see "Statement under 37 CFR 1.97(e)" below), and the fee of $180 as set forth in 37 CFR 1.17(p) (see "Fees" below).

☐ **after** the mailing date of a Notice of Allowance under 37 CFR 1.311, and on or before payment of the issue fee, and **within** thirty days of receiving each item of information contained in the Information Disclosure Statement, and includes the Statement under 37 CFR 1.704(d) (see "Statement under 37 CFR 1.704(d)" below), and the fee of $180 as set forth in 37 CFR 1.17(p) (see "Fees" below). NOTE: This is for original applications except applications for a design patent, filed on or after May 29, 2000, wherein a paper containing only an Information Disclosure Statement in compliance with 37 CFR 1.97 and 1.98 is being filed.

**Copies of the References**

☐ Copies of all of the references listed on the enclosed Form 1449 are enclosed herewith.

☒ Copies of U.S. patents and patent applications that are listed on the accompanying Form 1449 are not enclosed herewith. Copies of other references identified on the accompanying Form 1449 are enclosed herewith.

☒ For each reference not in the English language, attached is an English translation, a concise explanation of relevance, an English-language equivalent/patent, an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office pursuant to 37 CFR 1.98(a)(3).

☐ A copy of the foreign search report is enclosed herewith.

☐ The references listed on the enclosed Form 1449 were previously identified in the parent application(s) of the present application, and copies of the references were furnished at that time. Accordingly, additional copies of the references are not submitted herewith, so as not to burden the file with duplicate copies of references. The Examiner is respectfully requested to carefully review the references in accordance with the requirements set out in the Manual of Patent Examining Procedure. In accordance with 37 CFR 1.98(d), the details of the parent application(s) relied upon for an earlier filing date under 35 USC 120 in which copies of the references were previously furnished are set out below:

| U.S. APPLICATIONS | | STATUS *(check one)* | | |
|---|---|---|---|---|
| U.S. APPLICATIONS | U.S. FILING DATE | PATENTED | PENDING | ABANDONED |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |

**Statement under 37 CFR 1.97(e)**

☐ The **undersigned** hereby states that each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign patent application not more than three months prior to the filing of the Information Disclosure Statement.

☐ The **undersigned** hereby states that no item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign patent application, and, to the knowledge of the undersigned after making reasonable inquiry, no item of information contained in the Information Disclosure Statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the Information Disclosure Statement.

**Statement under 37 CFR 1.704(d)**

☐ The **undersigned** hereby states that each item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart application and that this communication was not received by any individual designated in 37 CFR 1.56(c) more than thirty days prior to the filing of the Information Disclosure Statement.

**Fees**

☒ **No fee** is owed by the applicant(s).
☐ Charge Deposit Account No. 12-1216 in the amount of **$180.00** (37 CFR 1.17(p)). (A duplicate copy of this communication is enclosed for that purpose, unless submitted via EFS-Web.)

**Authorization to Charge Additional Fees**

☒ If any additional fees are owed in connection with this communication, please charge Deposit Account No. 12-1216. (A duplicate copy of this communication is enclosed for that purpose, unless submitted via EFS-Web.)

**Instructions as to Overpayment**

☒ Credit Account No. 12-1216.
☐ Refund

John Kilyk, Jr., Reg. No. 30,763
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601-6731
(312) 616-5600 (telephone)
(312) 616-5700 (facsimile)

Date: July 23, 2007

Please type a plus sign (+) inside this box → +

Substitute for form 1449A/B/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 1 |
|---|---|---|---|

| *Complete if Known* | |
|---|---|
| Application Number | 11/741,290 |
| Filing Date | April 27, 2007 |
| First Named Inventor | Ueda et al. |
| Group Art Unit | 1657 |
| Examiner Name | Unassigned |
| Attorney Docket Number | 701554 |
| Client Reference No. | 201659 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | U.S. Patent Document: Application or Patent Number | Kind Code | Name of Patentee or Applicant | Date of Publication | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | AA | 2004/0214301 | A1 | Ueda et al. | Oct. 28, 2004 | |
| | AB | 2004/0215040 | A1 | Ueda et al. | Oct. 28, 2004 | |
| | AC | 2005/0008630 | A1 | Ueda et al. | Jan. 13, 2005 | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Doc. No. | Foreign Patent Document: Office | Application or Patent Number | Kind Code | Name of Patentee or Applicant | Date of Publication | Translation: Yes | Translation: No*+ |
|---|---|---|---|---|---|---|---|---|
| | AD | WO | 01/52822 | A1 | Chopra, Raj K. | Jul. 26, 2001 | | |
| | AE | JP | 10-109933 | A | Kanegafuchi Chem. Ind. Co., Ltd. | Apr. 28, 1998 | | X+ |

**OTHER - NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Doc. No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number (s), publisher, city and/or country where published. | Translation: Yes | Translation: No*+ |
|---|---|---|---|---|
| | AF | SELVAM et al., *Nutrition Research, 13:* 667-676 (1993) | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

* A concise statement of relevance is being submitted in lieu of a translation. 37 CFR 1.98(a)(3).
+ An English-language equivalent/patent, or an English-language abstract, or an English-language version of the search report or action by a foreign patent office in a counterpart foreign application indicating the degree of relevance found by the foreign office is being submitted in lieu of a concise explanation of relevance under 37 CFR 1.98(a)(3).

WO 01/52822 PCT/US01/01997

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau

(43) International Publication Date
26 July 2001 (26.07.2001)

PCT

(10) International Publication Number
WO 01/52822 A1

(51) International Patent Classification[7]: A61K 9/48, 9/66, 9/64, 9/20

(21) International Application Number: PCT/US01/01997

(22) International Filing Date: 18 January 2001 (18.01.2001)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
09/488,332 20 January 2000 (20.01.2000) US
09/637,559 11 August 2000 (11.08.2000) US

(71) Applicant and
(72) Inventor: CHOPRA, Raj, K. [US/US]; 704 Demott Court, Westbury, NY 11590 (US).

(74) Agent: COLEMAN, Henry, D.; Coleman Sudol Sapone, P.C., 14th floor, 708 Third Avenue, New York, NY 10017 (US).

(81) Designated States (*national*): AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BY, BZ, CA, CH, CN, CR, CU, CZ, DE, DK, DM, DZ, EE, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD, MG, MK, MN, MW, MX, MZ, NO, NZ, PL, PT, RO, RU, SD, SE, SG, SI, SK, SL, TJ, TM, TR, TT, TZ, UA, UG, US, UZ, VN, YU, ZA, ZW.

(84) Designated States (*regional*): ARIPO patent (GH, GM, KE, LS, MW, MZ, SD, SL, SZ, TZ, UG, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, CH, CY, DE, DK, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE, TR), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, GW, ML, MR, NE, SN, TD, TG).

**Published:**
— *with international search report*
— *before the expiration of the time limit for amending the claims and to be republished in the event of receipt of amendments*

*For two-letter codes and other abbreviations, refer to the "Guidance Notes on Codes and Abbreviations" appearing at the beginning of each regular issue of the PCT Gazette.*

WO 01/52822 A1

(54) Title: REDUCED FORM OF COENZYME Q IN HIGH BIOAVAILABILITY STABLE DOSAGE FORMS AND RELATED APPLICATIONS

(57) Abstract: The present invention relates to a reduced form of Coenzyme Q also known as ubiquinol in pharmaceutical or cosmetic dosage form, preferably oral dosage form such as a gelatin capsule, preferably a soft gelatin capsule. Compositions according to the present invention exhibit high bioavailability of the reduced form of Coenzyme Q. The present invention relates to storage stable compositions comprising effective amounts of ubiquinol in combination with an amount of a reducing agent effective to maintain ubiquinol in its reduced state when formulated as in, for example, capsules, tablets and other orally administrable form.

# Reduced Form of Coenzyme Q in High Bioavailability Stable Dosage Forms And Related Applications

## Field of the Invention

The present invention relates to a reduced form of Coenzyme Q also known as Ubiquinol in a gelatin capsule, preferably a soft gelatin capsule, in oral administrable form as well as other forms. Compositions according to the present invention exhibit unexpectedly high bioavailability of the reduced (active antioxidant) form of Coenzyme Q. These compositions can be used to treat numerous conditions or disease states including, for example, those conditions or disease states which are associated with oxidative tissue damage or mitochondrial dysfunction, including reduced mitochondrial oxidative function, mitochondrial encephalomyolopathies, cardiomyopathies, heart disease, expecially including congestive heart failure, ischemia/reperfusion tissue damage, neurodegenerative disorders, including Alzheimer's disease, dementia and Parkinson's disease, high blood pressure, periodontal disease, a weakened immune system and high cholesterol or high triglycerides, among numerous others. In fact, the compositions can be used to treat any disease state or condition in which coenzyme $Q_{10}$ is used but is less than ideally suited because of its low bioavailablity.

## Background of the Invention

The use of dietary supplements has become an increasingly common approach to obtaining and maintaining good health. One of these dietary supplements, Coenzyme Q, is a vitamin-like substance which is used to treat congestive heart failure and other cardiac problems. Coenzyme Q is the best known of a group of lipophilic quinones which have the capacity to transfer reducing equivalents or electrons within a lipid phase of cellular membranes. Other quinones of this general lipophilic type found in cells are of diverse species. A few include, for example, rhodoquinone, menaquinone, plastoquinone, chlorobiumquinone, thermoplasmaquinone and phylloquinone. See, Collins, 1985, Methods in Micobiol. 18: 329-36`0. It is postulated that the diene dione chemical structure of these compounds provides a platform for the transfer of one or two electrons and associated protons

within the lipid bilayers of cells or to and from hydrophobic redox centers in proteins.

Reduced benzoquinones in general are effective reductants for oxygen or lipid radicals. Early studies showed that reduced coenzyme Q is an effective antioxidant. See, Mellors and Tappel, 1996, J. Biol. Chem., 241: 4353-4356. Reduced coenzyme Q now appears to function as part of a complex chain of antioxidant activity. The most important role of coenzyme Q can be in reduction of radicals of α-tocopherol and ascorbate formed when these antioxidants are oxidized by oxygen or carboxyl radicals. There are no enzymes for direct reduction of tocopheryl radical or external ascorbate radical, but there are enzymes in all membranes which can reduce coenzyme Q and the reduced coenzyme Q can reduce the tocopheryl or ascorbate radicals to restore tocopherol or ascorbate. Without the support of enzymes to reduce coenzyme Q, the reduced coenzyme Q would not be a very effective antioxidant because the semiquinone formed by interaction with lipid or oxygen radicals is readily autooxidized with formation of a superoxide radical.

The enzymes involved in coenzyme Q reduction are the primary dehydrogenases for succinate. NADH or other substrates in mitochondria, the NADH cytochorome $b_5$ reductase in endo and plasma membranes and DT diaphorase or NADPH dehydrogenase enzymes primarily located in the cytosol. Villalbe, et al., Proc. Natl. Acad. Sci. 92:4887-4891 (1995); Beyer, et al., Molec. Aspects Med..18(S): 15-23 (1997); and Kishi, et al., Molec. Aspects Med..18(S): 71-77 (1997).

Coenzyme Q in endo membranes or plasma membranes is extensively in the reduced form, most of the coenzyme Q in total rat and human tissue is in the reduced form and most of the coenzyme Q in serum is in the reduced state. See, Takahashi, et al., Lipids, 28: 803-809, (1993); Äberg, et al., Arch. Biochem. Biophys., 295: 230-234 (1992); and Yamamoto and Yamashita, Molec. Aspects Med., 18 (S) (1997).

Studies performed to date have not focused on the differential uptake and bioavailability of one form of coenzyme Q versus another form of coenzyme Q. Nor has the

art recognized the desirability of using ubiquinol as an active pharmacological agent to enhance the bioavailability of coenzyme Q from oral and other formulations.

**Objects of the Invention**

It is an object of the invention to provide storage stable compositions for administering a reduced form of coenzyme Q.

It is an additional object of the invention to provide a method for enhancing the bioavailability of coenzyme Q to patients by administering effective amounts of coenzyme Q in a reduced form.

It is also an object of the present invention to provide an economical means for making ubiquinol-containing compositions from the more readily available and economical coenzyme $Q_{10}$ (Ubiquinone).

It is an additional object of the invention to provide methods of treating or reducing the effects of a number of disease states or conditions.

It is yet another object of the invention to provide compositions which contain ubiquinol, a reducing agent and optionally, a therapeutic reducing agent in order to provide effective compositions for the prevention and treatment of a number of disease states, conditions or ailments.

One or more of these and/or other objects of the present invention may be readily gleaned from the detailed description of the invention which follows.

**Summary of the Invention**

The present invention relates to novel storage stable compositions in dietary

supplement, cosmetic or pahrmaceutical dosage form (preferably oral dosage form) comprising effective amounts of ubiquinol, a reduced form of coenzyme Q, in combination with an amount of a lipid soluble reducing agent effective to maintain ubiquinol in its reduced state when preferably formulated in a soft gelatin capsule. Compositions according to the present invention may be used for treatment of heart ailments and diseases such as congestive heart failure, high blood pressure, mitochochondrial disorders, including mitochondrial cytopathies including encephalomyopathy, Kearns-Sayre and Alpers disease, mitochondrial encephalopathy with lactic acidosis and stroke-like episodes (MELAS), Levers hereditary optical neuropathy (LHON), anoxia, lactic acidosis, stroke-like symptoms and neurodegenerative diseases. Compositions according to the present invention may also be used to deter and/or treat periodontal disease, as well as lower elevated cholesterol levels in patients and to strengthen a weakened immune system as well as regulate (generally by reducing) the triglycerides in the blood. In addition, the use of ubiquinol to aid in the prevention of reperfusion injury of the heart is another potential use of the present invention. Compositions according to the present invention may optionally comprise an effective amount of a therapeutic reducing agent or other therapeutic agent which acts to enhance the effects of ubiquinol (in some cases, synergistically) in treating or reducing the effects of a disease state, condition or ailment. Methods of treating or reducing the effects of a disease state, condition or ailment using the compositions according to the present invention are also contemplated by the present invention.

Preferred therapeutic agents for inclusion in compositions according to the present invention may include, for example, HMG CoA reductase inhibitors such as the statin drugs, including, for example, lovastatin, pravastatin, fluvastatin, simvastatin, mevastatin, fluindostatin, atorvastatin, cerivastatin, compactin among others, for their cholesterol and LDL lowering, and triglyceride regulating effects, L-carnitine, acetyl L-carnitine and propionyl L-carnitine; alpha lipoic acid (thioctic acid) or reduced alpha lipoic acid; omega-3 fatty acids, tocotrienols and tocopherols. Whereas the statin drugs are included in compositions according to the present invention to produce down regulation of cholesterol and triglyceride levels, the combination of ubiquinol and the statin drugs is particularly

effective for benefitting heart patients especially those with ischemia, ischemic or dilated cardiomyopathy, or those patients at risk for suffering a first or subsequent heart attack or who are at risk of having a stroke. Compositions which comprise effective amounts of L-carnitine, acetyl-L-carnitine and propionyl L-carnitine are also particularly useful for treating patients with anoxia, including myocardial anoxia and cerebellar anoxia, among others. Compositions which comprise ubiquinol and alpha lipoic acid (thioctic acid) are particularly useful for influencing glucose metabolism and treating diabetes, as well as enhancing a patient's immune response as well as reducing inflammation. Compositions according to the present invention which include omega-3 fatty acids are especially useful in treating coronary disease as well as substantially reducing the risk that a patient at risk will suffer a first or subsequently heart attack. In addition, such compositions are useful in down regulating triglycerides in the blood. Compositions according to the present invention which include tocotrienols and/or tocopherols are useful for reducing cholesterol levels in patients and treating patients with heart disease including those patients at risk for suffering a first or subsequent heart attack or who are at risk of having a stroke.

Compositions according to the present invention are particularly effective because the ubiquinol is presented in a form which promotes exceptionally high bioavailability, thus producing excellent pharmacokinetics with more agent being delivered to the active site within the patient.

It is an unexpected result that formulations comprising ubiquinol in soft or hard gel capsules, when administered to patients, exhibit a bioavailability of ubiquinol which is substantially greater than when ubiquinone is administered in oral dosage form, preferably soft gel capsule form. Thus, the present compositions also represent a method for substantially enhancing the bioavailability of Coenzyme $Q_{10}$ in the patient's blood stream of an orally administrable form of ubiquinol. The enhanced bioavailability of compositions according to the present invention translates into effective treatments for numerous disease states, conditions or ailments including, for exampe, those conditions or disease states which are associated with oxidative tissue damage or mitochondrial dysfunction, including anoxia,

reduced mitochondrial oxidative function, mitochondrial cytopathies, cardiomyopathies, heart disease, expecially including congestive heart failure, ischemia/reperfusion tissue damage, neurodegenerative disorders, including Alzheimer's disease, dementia and Parkinson's disease, high blood pressure, periodontal disease, a weakened immune system and high cholesterol or high triglycerides, among numerous others. In certain preferred embodiments, compositions according to the present invention may include additional therapeutic agents, for example, statin drugs, L-carnitine, acetyl-L-carnitine and propionyl L-carnitine, carnitine fumarate, omega-3 fatty acids or tocotrienols and/or tocopherols which are especially useful for treating individuals with heart disease and for reducing the likelihood that a patient at risk will suffer a first or subsequent heart attack.

In addition to oral dosage forms of ubiquinol, the present invention also contemplates compositions which may be used as topically administered creams or lotions for the treatment of wrinkles and other conditions of the skin (dermal conditions) where coenzyme Q exhibits an effect, suppositories for rectal or vaginal administration of ubiquinol, lozenges, gum, mouth rinse and toothpaste formulations, the gum and toothpaste forms especially for use in treating and/or preventing periodontal disease.

## Detailed Description of the Invention

The term "coenzyme Q" or "ubiquinone" is used throughout the present specification to describe a group of lipid soluble benzoquinones involved in electron transport in mitochondrial preparations, i.e., in the oxidation of succinate or reduced nicotine adenine dinucleotide (NADH) via the cytochrome system. According to the existing dual system of nomenclature, the compounds can be described as: coenzyme $Q_n$, where n is 1-12 or ubiquinone (x) in which x designates the total number of carbon atoms in rthe side chain and can be any multiple of 5. Differences in properties are due to to the difference in the chain length. The preferred ubiquinone for use in the present invention is the reduced form of coenzyme $Q_{10}$ (Ubidecarenone) or ubiquinol.



**Coenzyme $Q_{10}$ (n=10)**

**Ubiquinone**

The term "ubiquinol" is used throughout the specification to describe the reduced form of coenzyme Q which is used as the active ubiquinone in compositions according to the present invention. In ubiquinol, the quinone ring of coenzyme Q is reduced such that the structure of the compound appears as set forth below. In ubiquinol, n is preferably 10 and is derived from coenzyme $Q_{10}$. The amount of ubiquinol which is included in compositions according to the present invention ranges from about 0.1% to about 50% by weight of the final composition which is encapsulated in a soft gelatin capsule, more preferably about 0.5% to about 10% by weight, even more preferably about 1% to about 5% by weight. The amount of ubiquinol which is included in compositions to be encapsulated ranges from about 0.1 to about 10.0 times, more preferably about 1 to about 3 times the amount (in weight percent) of the lipid soluble reducing agent which is included in compositions according to the present invention.



**Ubiquinol** (n=10 preferred)

The term "reducing agent" is used throughout the specification to describe pharmaceutically acceptable reducing agents which are added to the compositions according to the present invention in effective amounts to convert ubiquinone to ubiquinol during manufacturing and/or to substantially reduce oxidation of ubiquinol to ubiquinone (Coenzyme Q) during manufacturing and/or storage of the oral or other dosage forms of compositions according to the present invention. Preferred reducing agents include any reducing agent which is compatible with ubiquinol in pharmaceutical form and is capable of providing the requisite reducing activity to stabilize ubiquinol for storage. Preferred reducing agents for use in the present invention, include, for example, reduced glutathione, L-cysteine, N-acetyl cysteine, reduced alpha-lipoic acid (DHLA), tocotrienols, tocopherols, including vitamin E and vitamin E esters, vitamin c (ascorbate) and vitamin c esters, vitamin A (retinol, retinoic acid) and vitamin A esters, carotenoids, including alpha carotene, beta carotene, lutein, zeaxanthin, astaxanthin, lycopene, flavonoids, L-carnitine, acetyl L-carnitine, propionyl L-carnitine, magnesium, zinc, selenium, manganese, riboflavin, niacinamide, curcuminoids, proanthocyanidins from grape seed extract and pine bark extract, NADH, NADPH, resveratrol, bilberry extract, milk thistle extract and omega-3-fatty acids from for example, fish oils and marine lipid concentrate). Preferably, the reducing agent is a lipid soluble reducing agent for example, α-tocopherol (vitamin E), tocopherol esters, ascorbate esters such as ascorbyl palmitate, among others, alpha carotene and β-carotene, lycopene, flavonoids, riboflavin, curcuminoids, retinol (Vitamin A), retinoic acid, retinoic acid esters, retinol acetate, retinal and related reducing agents, preferably those which may also be used as additives in dietary supplements. While not being limited by way of theory, it is believed that the inclusion of a lipid soluble reducing agent, including lipid soluble reducings agents which are also biologically active, is preferred because such a composition provides a reducing agent which will most greatly compatibilize with the ubiquinol, resulting in reduced oxidation of the ubiquinol, thus producing greater stability. Preferred lipid soluble reducing agents are those which are also soluble in the solvents (such as a polyhydric alcohol glycerine or propylene glycol) which may be used to prepare hydrosoluble compositions comprising a

reducing agent and ubiquinol. A lipid soluble reducing agent for use in the present invention comprises about 0.05% to about 25% by weight of the composition which is included in soft gelatin capsules, more preferably about 1% to about 15% by weight. The ratio of reducing agent to ubiquinol in compositions according to the present invention generally ranges from about 0.1:1 to about 10:1, more preferably about about 1:5 to about 5:1, more preferably about 1:1 to about 3:1. In embodiments according to the present invention which rely on an in situ preparation of ubiquinol from ubiquinone, the amount of reducing agent which is used in the reduction reaction is preferably an excess of that amount required for the reduction reaction. The remaining reducing agent may then be incorporated into the final formulations in order to promote the storage stability of the ubiquinol.

While not being limited by way of theory, it is believed that effective concentrations of reducing agents convert substantially all ubiquinone to ubiquinol during manufacturing in an efficient method for preparing ubiquinol. In other embodiments, effective concentrations of reducing agents also prevent ubiquinol from being oxidized to ubiquinone, or alternatively reduce any ubiquinone which has been oxidized from ubiquinol during storage of the compositions according to the present invention.

The term "therapeutic reducing agent" is used to describe those reducing agents which are reducing agents for use in the present invention and which may also be used as additives in dietary supplements or alternatively, as therapeutic agents to effect or aid in producing an intended biological result.

The term "solvent" is used throughout the specification to describe a liquid into which the ubiquinol and reducing agent is at least partially solubilized, either alone or preferably in combination with a surfactant as otherwise described herein, is added. Solvents for use in the present invention include any hydrophilic solvent which is pharmaceutically acceptable and which can be used as a solvent, which alone, or in combination with surfacants as otherwise described herein, dissolves ubiquinol and the reducing agent. Preferred solvents for use in the present invention include ethanol and "polyhydric alcohols" a term which is used throughout

the present invention to describe any one or more pharmaceutically compatible polyhydric alcohol compounds which are used to solubilize ubiquinol and the reducing agent used in compositions according to the present invention. Polyhydric alcohols which may be used in the present invention include, for example, glycerin (glycerol), propylene glycol and mixtures, thereof. The amount of solvent which is used in the present compositions ranges from about 0.25% to about 50% by weight, preferably about 1% to about 25% by weight, even more preferably about 1.5% to about 15-20% by weight.

The term "surfactant" or "emulsifier" is used interchangeably to describe preferred additives to compositions according to the present invention. Surfactants are solubilizers (such term being used to describe a compound, including a surfactant, emulsifier, vegetable oil or solvent, among others in the present invention) which renders ubiquinol and the reducing agent soluble) which are used to promote the solubility of the ubiquinol and the reducing agent in the polyhydric alcohol. These may be used alone or in combination with a solvent and/or a vegetable oil. The amount of surfactant used in the present invention ranges from about 0.1% to about 95% by weight, more preferably about 1.5% to about 95%, preferably about 5% to about 90% by weight. Surfactants for use in the present invention are pharmaceutically acceptable and include, for example, complex esters or ester-ethers prepared from hexahydric alcohols, alkylene oxides and fatty acids. Surfactants which exist in the liquid state at temperatures at or less than formulation temperature (generally, about 80°C or less, more preferbly about 50-60°) are preferred because they can also function as co-solvents or co-solubilizers in the present compositions. Exemplary surfactants include Span™ surfactants and Tween™ (polysorbate) surfactants, which are well-known in the art for use as stabilizers, surfactants, emulsifiers and thickeners in foods, cosmetics and medical products, among others. Preferred surfactants are those which are in a liquid state during formulation such that the surfactant may also function as a solubilizer (i.e., it has solvent-like properties). A mixture of surfactants, including a mixture of Span™ and Tween™ surfactants, most preferably, Span™ 80 and Tween™ 80, is preferred for use in the present invention.

The Span™ surfactants are partial esters of common fatty acids, such as lauric acid,

palmitic acid, stearic acid and oleic acids and hexitol anhydrides such as hexitans and hexides, derived from sorbitol (see below). In the case of Span 20, the sorbitan fatty ester is based upon laurate ester. In the case of Span 60, the ester is based upon stearate ester and in the case of Span 80, the ester is based upon oleic ester. The hydrophilic character of the Span[tm] surfactants is supplied by free hydroxyl and oxyethylene groups, while the lipophilic character is provided by the long chain fatty groups. The Span[tm] surfactants tend to be oil soluble and dispersible or insoluble in water. However, these surfactants work in tandem with the more water soluble polyhydric alcohol to provide a soluble ubiquinol for soft gel formulations according to the present invention. The use of Span 80 in formulating compositions according to the present invention is preferred.




**Span**

The Tween[tm] or polysorbate type surfactants are oleate esters of sorbitol and its anhydrides copolymerized with a number of moles of ethylene oxide per mole of sorbitol and sorbitol anhydride. The Tween[tm] or polysorbate type surfactants are derived from Span[tm] materials by polymerizing polyoxyethylene groups onto the nonesterified alcohols. The Tween[tm] surfactants are soluble or well dispersible in water. Preferred Tween[tm] surfactants include a sorbitan mono-9-octadecenoate poly(oxy-1,2-etheandiyl) derivative otherwise

known as Tween$^{tm}$ 80 or Polysorbate 80.




**Polysorbate 80**

The sum of w,x,y and z is 20 and R= $C_{17}H_{33}CO$

The term "triglycerides" or "vegetable oil" is used throughout the specification to describe an additive in compositions according to the present invention which may serve as a solubilizer or a compatibilizer. This term is used as it is used by those of ordinary skill in the art, wherein fatty acids are esterifed at the free hydroxyl positions of glycerine, producing triglycerides, which are also the primary component of vegetable oils. Preferred triglycerides for use in the present compositions include vegetable oils including "medium chain triglycerides", which are tri-fatty esters of glycerol wherein the chain length of the fatty acids range from about 8-18 carbon units, preferably about 8-12 carbon units. These triglycerides are used as solubilizers, diluents and excipients, to compatabilize the formulations and promote uniformity.

Vegetable oils for use in the present invention may include, for example, tri-glycerides which may be natural or synthetic (derived from esterification of glycerol and at least one organic acid, saturated or unsaturated, such as for example, such as butyric, caproic, palmitic, stearic, oleic, linoleic or linolenic acids, among numerous others, preferably a fatty organic acid, comprising between 8 and 26 carbon atoms). Glyceride esters for use in the

present invention include vegetable oils derived chiefly from vegetables, seeds or nuts and include, for example, soybean, sunflower, safflower and cottonseed oil; non-drying oils, for example castor and coconut oil; and other oils, such as, for example palm oil. Hydrogenated (such term preferably including partially hydrogenated) vegetable oils also may be used in the present invention. Animal oils are also contemplated for use as glyceride esters and include, for example, fats such as tallow, lard and stearin and liquid fats, such as fish oils, fish-liver oils and other animal oils, including sperm oil, among numerous others. In addition, a number of other oils may be used, including $C_{12}$ to $C_{30}$ (or higher) fatty esters (other than the glyceride esters, which are described above) or any other pharmaceutically acceptable triglyceride.

Phosphoglycerides, generally related to triglycerides in that they contain two fatty acid residues and a phosphate ester (generally, a diester) group off of the three hydroxyl groups of glycerine may also be added, alone or in combination with the triglycerides to help compatabilize or solubilize the reducing agent and/or the ubiquinone and/or ubiquinol. The phosphoglyerides may be added for their intrinsic dietary supplement value (for building muscle and nerve tissue, among other functions). These compounds may be included in compositions according to the present invention in amounts ranging from about 0.25% to about 60% by weight, preferably about 0.5% to about 35% by weight.

The term "storage" is used to describe compositions according to the present invention whereby the amount of ubiquinol in a composition after a storage period is at least about 90% by weight the total amount of ubiquinones (which includes ubiquinol and ubiquinone or coenzyme $Q_{10}$) within the composition. A storage period for purposes of the present invention is at least about one day to one week, preferably at least about 30 days (about 1 month), more preferably at least about 2 months, even more preferably at least about 6 months and even more preferably at least about 1 year or, in certain cases, even longer.

The term "patient" or "subject" is used throughout the specification to describe an animal, in most instances a human, to whom administration of the compositions according to

the present invention is provided.

The term "effective amount" is used throughout the specification to describe concentrations or amounts of compounds according to the present invention which may be used to produce a favorable result, whether that result relates to a composition's therapeutic or physiological effect or its ability to function as a reducing agent to convert ubiquinone to ubiquinol during manufacturing or to prevent and/or limit the change in or oxidation of the ubiquinol or to function as a solvent in compositions according to the present invention.

The term "hydrosoluble" is used throughout the specification to describe preferred compositions according to the present invention which are encapsulated in a hard or soft, preferably a soft gelatin capsule for oral administration to a patient or subject. The term hydrosoluble is used to indicate the fact that the contents of the gelatin capsule, preferably a soft gelatin capsule, are in a form which provides effective, rapid dissolution of the contents of the gelatin capsule in the gastric juices after the gelatin capsule dissolves in the patient's gastrointestinal tract.

The term "elevated temperature" is used throughout the specification to describe a temperature above ambient temperature and generally within a range of about 40°C to about 80°C, preferably about 45-50°C to about 55-60°C.

The term "substantially ubiquinone-free" is used throughout the specification to describe a composition which contains ubiquinol and little or no ubiquinone. A substantially ubiquinone-free composition according to the present invention is a composition which contains ubiquinol and ubiquinone in a weight ratio of no less than 9:1, preferably no less than 19:1, even more preferably no less than 99:1. In certain preferred embodiments according to the present invention which are "ubiquionone-free", virtually no ubiquinone can be found in the ubiquinol used.

The present invention is directed to a composition comprising an effective amount of

ubiquinol in combination with a reducing agent in an amount effective to substantially prevent oxidation of ubiquinol to ubiquinone and at least one surfactant or a vegetable oil (triglyceride), in an amount effective to solubilize the ubiquinol and said reducing agent, preferably in a hydrosoluble form. The composition is then formulated in oral dosage form, preferably in a soft gelatin capsule. Alternatively, in preferred dermal formulations, the compositions may be formulated for use in creams and lotions to treat conditions of the skin such as wrinkles and suppositories for rectal and/or vaginal delivery of coenzyme Q. In the case of lozenges, gum, mouth rinse and toothpaste, these formulations are preferably used for the treatment of periodontal and related gum diseases.

In the present invention, the surfactant, where used, preferably comprises about 0.1% to about 95% by weight, preferably about 1% to about 95% by weight of the composition, more preferably about 5% to about 80% by weight, even more preferably about 10% to about 75% by weight. The surfactant for use in the present invention is preferably a Tween[tm] surfactant or a Span[tm] surfactant, preferably a mixture of a Tween[tm] surfactant and a Span[tm] surfactant in a weight ratio range of about 30:1 to 2:1, more preferably about 15:1 to about 5:1, even more preferably about 13:1 to about 5:1. Preferably, a mixture of Tween[tm] 80 and Span[tm] 80 is used, optionally in combination with a solvent. While these weight ratios will serve to guide the relative amount and ratio of Tween[tm] surfactant and Span[tm] Surfactant to be included in compositions according to the present invention, one of ordinary skill will be able to readily adjust this ratio to accommodate the ubiquinol and the reducing agent in a compatible formula recognizing that the Span[tm] surfactants tend to be more oil soluble and the Tween[tm] surfactants tend to be more water soluble or dispersible. This information shall serve to guide the person of ordinary skill in formulating compositions according to the present invention, especially those formulations which do not make use of a lipid soluble reducing agent, but one which is more readily water/hydrophilic solvent soluble.

The amount of triglyceride or vegetable oil which optionally may be used in the present invention may range from about 0.1% to about 99%, more preferably about 5% to about 5% to about 90%, more preferably about 10% to about 85%, even more preferably

about 15% to about 75%. The amount of triglyceride included in compositions according to the present invention will depend upon the desired characteristics which are contributed by the triglyceride to the final composition. For example, where the triglyceride is to be used in an amount effective to solubilize the ubiquinol and lipid soluble reducing agent, the amount of triglyceride utilized may be relatively high within the proposed range, because there may be no need to include one or more surfactants and/or solvents according to the present invention. However, surfactants and/or solvents may optionally be added to such formulations. Where surfactants and optionally, solvents are added to the compositions according to the present invention, the amount of triglyceride which may be added to the composition may vary at the lower end of the range as set forth above, especially where the reducing agent is more hydrophilic in nature. Phosphoglycerides may also be added to enhance the effect of the triglycerides in solubilizing and/or compatabilizing the ubiquinol and/or the reducing agent. These phosphoglycerides may also be added for their benefit as dietary supplements.

Compositions according to the present invention are preferably formulated in oral dosage form, even more preferably in hard or soft gelatin capsules, more preferably soft gelatin capsules, as the oral dosage form. The gelatin capsule is generally taken by the subject orally. It is an unexpected result that the ubiquinol from the soft gelatin oral dosage form results in a significantly enhanced bioavailability of ubiquinol (which is in equilibrium with ubiquinone within the patient) compared to similar compositions which contain ubiquinone alone.

Alternatively, in certain preferred formulations, the compositions may be formulated for use in creams and lotions to treat conditions of the skin such as wrinkles and suppositories for rectal and/or vaginal delivery of coenzyme Q. In the case of lozenges, gum, mouth rinse and toothpaste, these formulations may be used generally for systemic delivery of coenzyme Q or locally, primarily for the treatment of periodontal and related gum diseases.

Compositions according to the present invention may also include a pharmaceutically

acceptable carrier, excipient or additive. Care must be taken to avoid having any one or more of these optional ingredients impact the solubility characteristics of the ubiquinol and reducing agent in the surfactant and/or vegetable oil.

Although ubiquinol can be produced as a first step and then added to the other components in making oral dosage forms according to the present invention, the preferred method is to provide for the in situ preparation of ubiquinol from the less expensive and commercially available ubiquinone (ubiquinol is not commercially available.. In a preferred method of making compositions according to the present invention from coenzyme Q as the starting material, the components other than the coenzyme Q and, in certain cases, the reducing agent are added together at elevated temperature (generally, at a temperature of about 45-80°C, preferably at a temperature of about 50-60°C) until the components are thoroughly mixed. At the point of thorough mixing at elevated temperature, the components are in a liquid state. Subsequent to mixing of the components, coenzyme $Q_{10}$ is added to the mixture at elevated temperature as described above and throughly mixed into the liquid components for a sufficient period. If the mixture to which the coenzyme Q is added contains an effective concentration of reducing agent, coenzyme Q will be converted to ubiquinol and the mixture can be used to provide oral dosage forms, preferably hard or soft gelatin capsules, even more preferably soft gelatin capsules. In preferred embodiments, after the coenzyme $Q_{10}$ is added, a reducing agent is thereafter added in an amount effective to convert the coenzyme Q to ubiquinol or alternatively, in an amount which not only is effective to convert coenzyme Q to ubiquinol, but also effective to maintain ubiquinol in its reduced state.

The solubilized composition containing ubiquinol, a reducing agent and a surfactant, a vegetable oil or both, in its preferred liquid form is water-free and therefore, suitable for use in oral dosage form, preferably, in gelatin capsules, which are prepared by conventional means as those skilled in the art would readily recognize. In preferred embodiments according to the present invention soft gelatin capsules are used, although two-piece hard gelatin capsules may be used (especially where the liquid composition at elevated temperature solidifies at room temperature). Hard gelatin capsules for use in the present

invention are those which are well known in the art and comprise gelatin or hydroxypropylmethyl cellulose or a related cellulosic material in combiantion with glycerin. Any other acceptable formula which is well known in the art may also be used to provide two piece hard gelatin capsules. Soft gelatin capsules may comprise, for example, gelatin, glycerin and sorbitol as well as other components which are well known in the art. The gelatin capsules are generally tasteless, easy to swallow and they readily dissolve in the gastric juices of the digestive tract.

Alternatively, the compositions according to the present invention may be provided in tablet form using conventional tabletting methods well known in the art, for example, by adsorbing the composition onto a suitable solid carrier or excipient. The compositions according to the present invention can also be provided in a microencapsulated free flowing form. Enteric coated capsules or tablets are also contemplated by the present invention in order to enhance delivery of ubiquinol from the upper gastrointestinal tract (primarily, the duodenum where most of the absorption occurs). Enteric coating capsules may be produced by coating a tablet with composition containing, for example, hypromellose phthalate, diethyl phthalate, polyethylene glycol or any other suitable composition containing pharmaceutically acceptable enteric coating ingredients. One of ordinary skill using standard pharmaceutical formulation and packaging practices will be able to readily prepare any one or more of the oral dosage forms according to the present invention.

Alternatively, in certain preferred formulations, the compositions may be formulated for use in creams and lotions to treat conditions of the skin such as wrinkles using standard cosmetic and personal care product formulation techniques. In the case of suppositiories, compositions according to the present invention may be used in combination with an effective amount of a thickening agent to produce a formulation in suppository delivery form for rectal and/or vaginal delivery of delivery of coenzyme Q. In the case of lozenges, gum, mouth rinse and toothpaste, these formulations are produced preferably to be used for the treatment of periodontal and related gum diseases. In each instance where particular formulation is to be used, standard formulary processes and additives may be used to

propduce the desired dosage form. The requisite types and amounts of additives, such as thickeners, additional surfactants and/or solvents, flavors, coloring agents, emollients, humectants, fillers, and additional biologically active compounds (such as anti-caries agents and the like), etc. will be used in combination with a base formulation to produce the desired final products.

The concentration of ubiquinol in the compositions according to the present invention will depend on absorption, distribution, inactivation, and excretion rates of the ubiquinol and its metabolites as well as other factors known to those of skill in the art. It is to be noted that dosage values will also vary with the severity of the condition to be alleviated. It is to be further understood that for any particular subject, specific dosage regimens should be adjusted over time according to the individual need and the professional judgment of the person administering or supervising the administration of the compositions, and that the concentration ranges set forth herein are exemplary only and are not intended to limit the scope or practice of the claimed composition. The active ingredient, ubiquinol, may be administered at once, or may be divided into a number of smaller doses to be administered at varying intervals of time.

The active compound of the present invention can also be mixed with other active materials that do not impair the desired action, or with materials that supplement the desired action provided that the added materials do not change the activity of the included compounds.

Administration of the active may range from continuous (intravenous drip) to several oral administrations per day (for example, Q.I.D.) and may include oral, topical, parenteral, intramuscular, intravenous, sub-cutaneous, transdermal (which may include a penetration enhancement agent), buccal and suppository administration, among other routes of administration. Enteric coated oral tablets, as an alternative to soft or hard gelatin capsules, may also be used to enhance bioavailability of the compounds from an oral route of administration. The most effective dosage form will depend upon the pharmacokinetics of

the particular agent chosen as well as the severity of the condition in the patient to be treated. Oral dosage forms are particularly preferred, because of ease of admnistration and prospective favorable patient compliance. Creams and lotions are preferred where skin conditions, especially wrinkles, are to be treated. Lozenges, gums, mouth rinse and toothpaste are preferred where periodontal disease and other conditions of the patient's gums are to be treated.

To prepare the pharmaceutical compositions according to the present invention, an effective amount of ubiquinol in combination with a reducing agent and a surfactant or a vegetable oil is formulated in gelatin capsules (hard or soft), or in alternative embodiments, is intimately admixed with a pharmaceutically acceptable carrier according to conventional pharmaceutical compounding techniques to produce a dose. A carrier may take a wide variety of forms depending on the form of preparation desired for administration, e.g., oral or parenteral. In preparing pharmaceutical compositions in oral dosage form, any of the usual pharmaceutical media may be used. For solid oral preparations such as powders, tablets, capsules, and for solid preparations such as suppositories, suitable carriers and additives including cyclodestrins, starches, sugar carriers, such as dextrose, mannitol, lactose and related carriers, diluents, granulating agents, lubricants, binders, disintegrating agents and the like may be used. If desired, the tablets or capsules may be enteric-coated or sustained release by standard techniques. The use of these dosage forms may further increase the bioavailability of the compounds in the patient.

Liposomal suspensions (including liposomes targeted to viral antigens) may also be prepared by conventional methods to produce pharmaceutically acceptable carriers, especially for parenteral delivery. This may be appropriate for the delivery of free nucleosides, acyl nucleosides or phosphate ester pro-drug forms of the nucleoside compounds according to the present invention.

Having generally described the invention, reference is now made to the following examples which are intended to illustrate preferred embodiments and comparisons. The

included examples are not to be construed as limiting the scope of this invention as is more broadly set forth above and in the appended claims.

## Example 1

## Oral Dosage Form of Ubiquinol w/Surfactants

This example sets forth a composition and method for providing a soft gelatin capsule which relies on the reduction of ubiquinone to ubiquinol utilizing lipid soluble reducing agents and the stabilization of the resulting hydroxoluble reduced form in a soft gelatin capsule.

Procedure:

Mix the following components in a suitable jacketed mixing vessel:

Span 80 (1-15%);
Glycerine, propylene glycol or other suitable polyhydric alcohol (1%-15%);
Tween80 (20% to 90%);
Medium Chain Triglycerides (MCT, 5% to 25%).

After mixing the above components, the mixture is raised in temperature to about 55 °C (± 5 °) while mixing constantly. 0.5% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then ascorbyl palmitate (or another suitable reducing agent) is added in an effective amount ranging from about 1% to about 15% by weight and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The mixing vessel is then connected to a cooling system (cooled water) and while mixing, the heated mixture is cooled to room temperature (about 23 °C ± 3 °). After the liquid is cooled to room temperature, the mixer is shut down and the cooling water is disconnected. The liquid is then transferred to a suitable stainless steel drum and the empty space in the drum is flushed with nitrogen. The drum is then sealed. The finished liquid is analyzed using HPLC using an electrochemical detector for

quantitative determination of ubiquinone and ubiquinol. The liquid is thereafter encapsulated in soft gelatin capsules containing an opacifier ($TiO_2$) and colorant utilizing standard manufacturing procedures.

The final gelatin capsule has the following components (in percent by weight excluding gelatin capsule):

| | |
|---|---|
| Span 80 | 5% |
| Glycerine | 4% |
| Tween 80 | 65% |
| MCT | 18% |
| $CoQ_{10}$ | 4% |
| Ascorbyl Palmitate | 4% |

**Example II**
**Alternative Method**

This example sets forth a composition and method for providing a soft gelatin capsule which relies on the reduction of ubiquinone to ubiquinol utilizing lipid soluble reducing agents and the stabilization of the resulting hydrosoluble reduced form in a soft gelatin capsule using vegetable oil.

Procedure:

Mix the following components in a suitable jacketed mixing vessel:

Vitamin E acetate (2-20%);
Hydroxylated lecithin (2%-20%);
Phosphatidyl chloline solution (20% to 50%);
Medium Chain Triglycerides, other suitable vegetable oil (5% to 40%).
Gelucire (5% to 50%).

After mixing the above components, the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.5% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of about 1 hour. Then ascorbyl palmitate (or

another suitable reducing agent) is added in an effective amount ranging from about 1% to about 10% by weight and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a clear solution- indicating that the reduction of ubiquinone to ubiquinol is complete. The mixing vessel is then connected to a cooling system (cooled water) and while mixing, the heated mixture is cooled to room temperature as in example 1. After the liquid is cooled to room temperature, the mixer is shut down and the liquid is then transferred to a suitable stainless steel drum and the empty space in the drum is flushed with nitrogen. The drum is then sealed. The finished liquid is analyzed as in example 1 and thereafter encapsulated in soft gelatin capsules containing an opacifier ($TiO_2$) and colorant utilizing standard manufacturing procedures.

The final gelatin capsule has the following components (in percent by weight excluding gelatin capsule):

| | |
|---|---|
| Vitamine E acetate | 6% |
| Hydroxylated Lecithin | 4% |
| Phosphatiyl Choline Solution (52%) | 32% |
| MCT | 20% |
| Gelucire | 30% |
| $CoQ_{10}$ | 4% |
| Ascorbyl Palmitate | 4% |

## Example III

### Ubiquinol and Rice Bran or Palm Oil Concentrate Containing Tocotrienols and Tocopherols

This example is directed to the preparation of a stable formulation of a hydrosoluble reduced form (ubiquinol) of Coenzyme Q10 with a Rice Bran or Palm Oil concentration containing tocotrienols and tocopherols.

Procedure: mix Tween 80, Span 80, glycerin and palm oil or rice bran oil concentrate in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed

into solution at elevated temperature for a period of from 1-2 hours. Then ascorbyl palmitate (or another suitable reducing agent) is added in an effective amount ranging from about 0.1% to about 10% by weight and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. Alternatively, the palm oil concentrate or rice bran oil concentrate may be added after the initial reduction reaction takes place. After mixing is completed, the mixing vessel is then connected to a cooling system (cooled water) and while mixing, the heated mixture is cooled to room temperature (about 23°C ± 3°). After the liquid is cooled to room temperature, the mixer is shut down and the cooling water is disconnected. The liquid is then transferred to a suitable stainless steel drum and the empty space in the drum is flushed with nitrogen. The drum is then sealed. The finished liquid is analyzed using HPLC using an electrochemical detector for quantitative determination of ubiquinone and ubiquinol. The liquid is thereafter encapsulated in soft gelatin capsules containing an opacifier ($TiO_2$) and colorant utilizng standard manufacturing procedures. Alternatively, the liquid may be encapsulated in a two piece hard gelatin capsule.

The final gelatin capsule has the following components (in percent by weight excluding gelatin capsule):

| Range | Typical Tx | Wt. Percent |
|---|---|---|
| (0.1% - 10%) | Coenzyme Q10 | 3.33% |
| (10% - 50%) | Tween 80 | 70.74% |
| (0.5% - 15%) | Span 80 | 5.09% |
| (0.1% - 10%) | Ascorbyl Palmitate | 3.63% |
| (0.1% - 10%) | Glycerin | 3.55% |
| (10% - 90%) | Palm Oil Concentrate or Rice Bran Oil Concentrate (source of mixed tocotrienols and tocopherols) | 13.65% |
| | | 100.00% |

Advantages

1. The use of ubiquinol improves bioavailability of Coenzyme Q10.
2. Reduced form of Coenzyme Q10 provides an active, antioxidant form of CoQ10.
3. Inclusion of tocotrienols and tocopherols are naturally derived from Palm Oil or

Rice Bran Oil.

4. Combination of CoQ10 and tocotrienols/tocopherols is particularly useful in reducing elevated cholesterol levels.

### Example IV

### Ubiquinol with Omega-3 Fatty Acids and Docosahexaenoic Acid (DHA) from Fish Body Oil Concentrate and/or Flaxseed Oil and/or Algae

This example is directed to the preparation of a stable formulation of a hydrosoluble reduced form (ubiquinol) of Coenzyme Q10 with Omega-3 Fatty Acids from fish body oil and/or flaxseed oil and/or algae.

Procedure: mix Tween 80, Span 80, glycerin or propylene glycol, medium chain triglycerides and fish oil concentrate in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then ascorbyl palmitate and vitamin E acetate (or vitamin e or mixed tocopherols or another suitable reducing agent) is added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. Alternatively, the fish oil concentrate, flaxseed oil or algae derived omega-3-fatty acids may be added after the initial reduction reaction takes place. After mixing is completed, the mixing vessel is then connected to a cooling system (cooled water) and while mixing, the heated mixture is cooled to room temperature (about 23°C ± 3°). After the liquid is cooled to room temperature, the mixer is shut down and the cooling water is disconnected. The liquid is then transferred to a suitable stainless steel drum and the empty space in the drum is flushed with nitrogen. The drum is then sealed. The finished liquid is analyzed using HPLC using an electrochemical detector for quantitative determination of ubiquinone and ubiquinol. The liquid is thereafter encapsulated in soft gelatin capsules containing an opacifier ($TiO_2$) and colorant utilizng

standard manufacturing procedures. Alternatively, the liquid may be encapsulated in a two piece hard gelatin capsule.

The final gelatin capsule has the following components (in percent by weight excluding gelatin capsule):

| Range | Typical Tx | Wt. Percent |
|---|---|---|
| (0.1% - 10%) | Coenzyme Q10 | 1.53% |
| (5% - 50%) | Tween 80 | 30.64% |
| (0.5% - 15%) | Span 80 | 2.34% |
| (0.1 - 25%) | Vitamin E Acetate | |
| | 1.22% | |
| (0.1% - 10%) | Ascorbyl Palmitate | 1.53% |
| (0.1% - 25%) | Medium Chain Triglycerides | 5.35% |
| (0.1% - 10%) | Glycerin or Propylene Glycol | 1.63% |
| (10% - 90%) | Fish Oil Concentrate | 55.75% |
| | (Rich in Omega-3 fatty acids) | 100.00% |

Advantages

1. The use of ubiquinol improves bioavailability of Coenzyme Q10.
2. Reduced form of Coenzyme Q10 provides an active, antioxidant form of CoQ10.
3. Inclusion of fish oil concentrate/flaxseed oil and/or DHA (algae derived) in dosage form

   Providing improved bioavailability.
4. Combination of CoQ10 and omega-3 fatty acids capable of

Treating cardiomyopathies, high blood pressure, with combined reduction

In levels of triglycerides in the blood.

**Example V**

**Ubiquinol Intensive Anti-Wrinkle Soft Cream with Alpha-Hydroxy Acids**

Active Ingredient: Ubidecarenone (Coenzyme $Q_{10}$)

Base Ingredients: Sorbitan Monooleate NF
Glycerin USP
Polysorbate 80 NF
D-Alpha Tocopherol Conc. F.C.C.
Ascorbyl palmitate (% ascorbyl palmitate ≥ % of ubiquinone in sample)
Medium Chain Triglycerides
IMWITOR 370 (Glyceryl Stearate Citrate)
MIGLYOL 812 (Caprylic/Capric Triglyceride)
SOFTISAN 601 (Glycerol Cocoate and Hydrogenated Cocoanut Oil and Ceteareth - 25)
EWALAN ODE-50 (Octyldodecyl Lanolaet)
Pronalen Fuir Acid AHA-5 (Lemon and Passion Fruit Concentrate)
Preservative
Purified Water
Perfume Exemplary

Procedure: mix sorbitan monooleate NF, polysorbate 80 NF, glycerin and medium chain triglycerides in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then the alpha tocopherol and ascorbyl palmitate (or other suitable reducing agent) are added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The remaining components are added thereafter at elevated temperature in order to ensure a uniform product. The product (a cream) may be packaged using standard packaging procedures.

## Example VI
## Ubiquinol Suppository Formula (Rectal/Vaginal)

Active Ingredient: Ubidecarenone (Coenzyme $Q_{10}$)

Base Ingredients: Covitol F 1000
Ascorbyl Palmitate
Span 80 NF
Tween 80 NF
Glycerin USP

Medium Chain Triglycerides
Softisan 378
Softisan 100

Exemplary Procedure: mix Span 80 and Tween 80, glycerin and medium chain triglycerides in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55 °C (± 5 °) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then the ascorbyl palmitate (or other suitable reducing agent) is added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The remaining components are added thereafter at elevated temperature in order to ensure a uniform product. The thoroughly mixed product may be formed into suppositories using standard procedures.

**Example VII**
**Ubiquinol Suppository Formula (Rectal/Vaginal)**

Active Ingredient: Ubidecarenone (Coenzyme $Q_{10}$)

Base Ingredients: Covitol F 1000
Ascorbyl Palmitate
Span 80 NF
Tween 80 NF
Glycerin USP
Medium Chain Triglycerides
WITEPSOL H-32

Exemplary Procedure: mix Span 80 and Tween 80, glycerin and medium chain triglycerides in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55 °C (± 5 °) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then the ascorbyl palmitate (or other suitable reducing agent) is added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The remaining

components are added thereafter at elevated temperature in order to ensure a uniform product. The thoroughly mixed product may be formed into suppositories using standard procedures.

**Example VIII**
**Ubiquinol Toothpaste**

Active Ingredient: Ubidecarenone (Coenzyme $Q_{10}$)

Base Ingredients:
- Sorbitan Monooleate NF
- Glycerin USP
- Polysorbate 80 NF
- D-Alpha Tocopherol Conc. F.C.C.
- Ascorbyl palmitate (wt. % ascorbyl palmitate. ≥ % of ubiquinone)
- Medium Chain Triglycerides
- Purified Water
- Hydrated Silica
- Sorbitol
- Tetrapotassium Pyrophosphate
- PEG-6
- Disodium Pyrophosphate
- Tetrasodium Pyrophosphate
- Sodium Lauryl Sulfate
- Flavor
- Xanthan Gum
- Sodium Saccharin
- Carbomer 956
- FD & C No. 1

Exemplary Procedure: mix Sorbitan Monooleate and Polysorbate 80, glycerin and medium chain triglycerides in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then the alpha tocopherol and ascorbyl palmitate (or other suitable reducing agent) are added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The remaining components are added thereafter at elevated temperature (thickeners to be added last to provide paste-like viscosity) in order to ensure a uniform toothpaste product. The thoroughly mixed product may be packaged in tubes using

standard procedures.

## Example IX
## Ubiquinol Toothpaste Alternative 1

Active Ingredient: Ubidecarenone (Coenzyme $Q_{10}$)

Base Ingredients:
Sorbitan Monooleate NF
Glycerin USP
Polysorbate 80 NF
D-Alpha Tocopherol Conc. F.C.C.
Ascorbyl palmitate (wt. % ascorbyl palmitate ≥ wt. % ubiquinone)
Medium Chain Triglycerides
Purified Water
Calcium Carbonate
Calcium Carageenan
Cellulose Gum
Sorbitol
PEG-8
Hydrated Silica
Sodium Lauryl Sulfate
Flavor
Sodium Saccharin
Sorbitol
Sodium Benzoate
D & C Red #30 Lake
Yellow #10 Lake
FD & C Blue #1 Lake
Flavor
Titanium Dioxide

Exemplary Procedure: mix Sorbitan Monooleate and Polysorbate 80, glycerin and medium chain triglycerides in a suitable jacketed mixing vessel. After mixing the above components, +-the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then the alpha tocopherol and ascorbyl palmitate (or other suitable reducing agent) are added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The remaining components are added thereafter at elevated temperature (thickeners to be added last to provide paste-like viscosity) in order to ensure a uniform toothpaste product. The thoroughly mixed product may be packaged in tubes using

standard procedures.

**Example X**
**Ubiquinol Toothpaste Alternative 2**

Active Ingredient: Ubidecarenone (Coenzyme $Q_{10}$)

Base Ingredients:
Sorbitan Monooleate NF
Glycerin USP
Polysorbate 80 NF
D-Alpha Tocopherol Conc. F.C.C.
Ascorbyl palmitate (wt. % ascorbyl palmitate ≥ wt. % ubiquinone)
Medium Chain Triglycerides
Purified Water
Dicalcium Phosphate Dihydrate
Sorbitol
Tetrasodium Pyrophosphate
Sodium Lauryl Sulfate
Flavor
Sodium Saccharin
Cellulose Gum

Exemplary Procedure: mix Sorbitan Monooleate and Polysorbate 80, glycerin and medium chain triglycerides in a suitable jacketed mixing vessel. After mixing the above components, the mixture is raised in temperature to about 55°C (± 5°) while mixing constantly. 0.1% to about 10% of Coenzyme Q is then added to the above heated mix while stirring. The coenzyme Q is thoroughly mixed into solution at elevated temperature for a period of from 1-2 hours. Then the alpha tocopherol and ascorbyl palmitate (or other suitable reducing agent) are added and the mixture at elevated temperature is stirred for 1 to 2 hours or at least until the mixture is a crystal clear bright orange- indicating that the reduction of ubiquinone to ubiquinol is complete. The remaining components are added thereafter at elevated temperature (thickeners to be added last to provide paste-like viscosity) in order to ensure a uniform toothpaste product. The thoroughly mixed product may be packaged in tubes using standard procedures.

It is to be understood by those skilled in the art that the foregoing description and examples are illustrative of practicing the present invention, but are in no way limiting. Variations of the detail presented herein may be made without departing from the spirit and scope of the present invention as defined by the following claims.

**Claims:**

1. A composition comprising ubiquinol and an amount of a reducing agent effective to reduce or eliminate the oxidation of said ubiquinol to ubiquinone; said composition further comprising an amount of a surfactant or vegetable oil or mixtures, thereof and optionally, a solvent effective to solubilize said ubiquinol and said reducing agent.

2. The composition according to claim 1 wherein said reducing agent is selected from the group consisting of reduced glutathione, L-cysteine, N-acetyl cysteine, reduced alpha-lipoic acid, tocotrienols, tocopherols, vitamin E, vitamin E esters, vitamin c, vitamin c esters, vitamin A (retinol, retinoic acid), vitamin A esters, alpha carotene, beta carotene, lutein, zeaxanthin, astaxanthin, lycopene, flavonoids, L-carnitine, acetyl L-carnitine, propionyl L-carnitine, magnesium, zinc, selenium, manganese, riboflavin, niacinamide, curcuminoids, proanthocyanidins, NADH, NADPH, resveratrol, bilberry extract, milk thistle extract, retinol, retinoic acid, retinoic acid esters, retinal, omega-3-fatty acids and mixtures, thereof.

3. The composition according to claim 1or 2 wherein said reducing agent is selected from the group consisting of α-tocopherol, tocopherol esters, ascorbate esters, alpha carotene and β-carotene, lycopene, flavonoids, riboflavin, curcuminoids, retinol (Vitamin A), retinoic acid, retinoic acid esters, retinol acetate, retinal and mixtures, thereof.

4. The composition according to any of claims 1-3 wherein said surfactant is selected from the group consisting of complex ester or ester-ether surfactants prepared from hexahydric alcohols, alkylene oxides and fatty acids, polysorbate surfactants and mixtures thereof.

5. The composition according to claim 4 wherein said complex ester or ester-ether surfactant is a compound according to the structure:




where R is a fatty acid residue selected from lauroyl, stearoyl and oleoyl.

6. The composition according to claim 5 wherein R is oleoyl.

7. The composition according to any of claims 1-4 wherein said surfactant is a polysorbate surfactant according to the structure:




where R is an oleoyl group.

8. The composition according to any of claims 1-4 wherein said surfactant is a mixture of a complex ester or ester-ether surfactant prepared from hexahydric alcohols, alkylene oxides and fatty acids and a polysorbate surfactant.

9. The composition according to claim 8 wherein said complex ester or ester-ether surfactant is a compound according to the structure:




where R is a fatty acid residue selected from lauroyl, stearoyl and oleoyl.

10. The composition according to claim 8 wherein said polysorbate surfactant is a compound according to the structure:




where R is an oleoyl group.

11. The composition according to any of claims 1-10 wherein said vegetable oil comprises medium chain triglycerides.

12. The composition according to any of claims 1-10 wherein said vegetable oil is selected from the group consisting of soybean oil, sunflower oil, safflower oil, cottonseed oil, castor oil, rapeseed oil, coconut oil, palm oil and mixtures thereof..

13. The composition according to any of claims 1-12 further comprising an effective amount of a HMG CoA reductase inhibitor drug.

14. The composition according to claim 13 wherein said inhibitor drug is a statin drug selected from the group consisting of lovastatin, pravastatin, fluvastatin, simvastatin, mevastatin, fluindostatin.

15. The composition according to any of claims 1-14 further comprising an effective amount of alpha lipoic acid.

16. The composition according to any of claims 1-15 wherein said reducing agent is an omega-3 fatty acid or mixture of omega-3-fatty acids.

17. The composition according to any of claims 1-15 wherein said reducing agent is selected from the group consisting of tocotrienols, tocopherols and mixtures, thereof.

18. The composition according to any of claims 1-2 and 4-15 wherein said reducing agent is selected from the group consisting of L-carnitine, acetyl L-carnitine, propionyl L-carnitine and mixtures, thereof.

19. The composition according to any of claims 1-18 wherein said solvent is ethanol or a polyhydric alcohol selected from the group consisting of glycerin, propylene glycol and mixtures thereof.

20. The composition according to any of claims 1-19 in pharmaceutical dosage form.

21. The composition according to any of claims 1-19 in parenteral dosage form.

22. The composition according to any of claims 1-19 in topical dosage form.

23. The composition according to any of claims 1-19 and 22 which is formulated into a cream or lotion for dermal application.

24. The composition according to any of claims 1-19 and 20 which is formulated into a lozenge, gum, mouth rinse or toothpaste.

25. The composition according to any of claims 1-19 which is further formulated into a suppository.

27. A composition in oral dosage form comprising: ubiquinol; an amount of a reducing agent effective to reduce or eliminate the oxidation of said ubiquinol to ubiquinone; and an amount of a surfactant, a vegetable oil or mixture, thereof and optionally, a solvent, effective to solubilize said ubiquinol and reducing agent, said oral dosage form being formulated into a gelatin capsule or tablet.

28. The composition according to claim 27 wherein said reducing agent is selected from the group consisting of reduced glutathione, L-cysteine, N-acetyl cysteine, reduced alpha-lipoic acid, tocotrienols, tocopherols, vitamin E, vitamin E esters, vitamin c, vitamin c esters, vitamin A (retinol, retinoic acid) and vitamin A esters, alpha carotene, beta carotene, lutein, zeaxanthin, astaxanthin, lycopene, flavonoids, L-carnitine, acetyl L-carnitine, propionyl L-carnitine, magnesium, zinc, selenium, manganese, riboflavin, niacinamide, curcuminoids, proanthocyanidins, NADH, NADPH, resveratrol, bilberry extract, milk thistle extract, retinol, retinoic acid, retinoic acid esters, retinal, omega-3-fatty acids and mixtures, thereof.

29. The composition according to either claim 27 or 28 wherein said reducing agent

is selected from the group consisting of α-tocopherol, tocopherol esters, ascorbate esters, alpha carotene and β-carotene, lycopene, flavonoids, riboflavin, curcuminoids, retinol (Vitamin A), retinoic acid, retinoic acid esters, retinol acetate, retinal and mixtures, thereof.

30. The composition according to any of claims 27-29 wherein said surfactant is selected from the group consisting of complex ester or ester-ether surfactants prepared from hexahydric alcohols, alkylene oxides and fatty acids, polysorbate surfactants and mixtures thereof.

31. The composition according to any of claims 27-30 wherein said complex ester or ester-ether surfactant is a compound according to the structure:




where R is a fatty acid residue selected from lauroyl, stearoyl and oleoyl.

32. The composition according to any of claims 31 wherein R is oleoyl.

33. The composition according to any of claims 27-30 wherein said surfactant is a polysorbate surfactant according to the structure:




where R is oleoyl.

34. The composition according to any of claim 27-30 wherein said surfactant is a mixture of a complex ester or ester-ether surfactant prepared from hexahydric alcohols, alkylene oxides and fatty acids and a polysorbate surfactant.

35. The composition according to claim 34 wherein said complex ester or ester-ether surfactacant is a compound according to the structure:




where R is a fatty acid residue selected from lauroyl, stearoyl and oleoyl.

36. The composition according to claim 34 wherein said polysorbate surfactant is a compound according to the structure:




where R is an oleoyl group.

37. The composition according to any of claims 27-36 wherein said vegetable oil comprises medium chain triglycerides.

38. The composition according to any of claims 27-36 wherein said vegetable oil is selected from the group consisting of soybean oil, sunflower oil, safflower oil, cottonseed oil, castor oil, rapeseed oil, coconut oil, palm oil and mixtures thereof.

39. The composition according to any of claims 27-38 further comprising an effective amount of a HMG CoA reductase inhibitor drug.

40. The composition according to claim 39 wherein said inhibitor drug is a statin drug selected from the group consisting of lovastatin, pravastatin, fluvastatin, simvastatin, mevastatin, fluindostatin.

41. The composition according to any of claims 27-40 further comprising an effective amount of alpha lipoic acid.

42. The composition according to any of claims 27-28 and 30-41 wherein said reducing agent is an omega-3 fatty acid or mixture of omega-3-fatty acids.

43. The composition according to any of claims 27-28 and 30-41 wherein said reducing agent is selected from the group consisting of tocotrienols, tocopherols and

mixtures, thereof.

44. The composition according to claims 27-28 and 30-41 wherein said reducing agent is selected from the group consisting of L-carnitine, acetyl-L-carnitine, propionyl L-carnitine, carnitine fumarate and mixtures, thereof.

45. The composition according to any of claims 27-44 wherein said solvent is ethanol or a polyhydric alcohol selected from the group consisting of glycerin, propylene glycol and mixtures thereof.

46. A method of preparing a composition in pharmaceutical dosage form comprising an effective amount of ubiquinol, said method comprising:

i. Solubilizing ubiquinone in a mixture comprising at least one solubilizer selected from the group consisting of a surfactant, a vegetable oil and mixtures thereof, and optionally, a solvent, at elevated temperature to form a solution;

ii. Adding to the solution in step i an amount of a reducing agent effective to reduce ubiquinone to ubiquinol; and

iii. Adding said solution containing an effective amount of ubiquinol of step ii to a hard or soft gelatin capsule to produce an oral dosage form or to pharmaceutically acceptable additives, carriers or excipients to provide a dietary supplement or cosmetic or pharmaceutical composition.

47. The method according to claim 46 wherein said solution in step iii is added to a soft gelatin capsule.

48. The method according to claim 46 or 47 wherein said surfactant is selected from the group consisting of complex ester or ester-ether surfactants prepared from hexahydric alcohols, alkylene oxides and fatty acids, polysorbate surfactants and mixtures thereof.

49. The method according to claim 48 wherein said complex ester or ester-ether

surfactant is a compound according to the structure:




where R is a fatty acid residue selected from lauroyl, stearoyl and oleoyl.

50. The method according to claim 49 wherein R is oleoyl.

51. The method according to any of claims 48 wherein said surfactant is a polysorbate surfactant according to the structure:




where R is oleoyl.

52. The method according to any of claims 46-48 wherein said surfactant is a mixture of a complex ester or ester-ether surfactant prepared from hexahydric alcohols, alkylene

oxides and fatty acids and a polysorbate surfactant.

53. The method according to claim 52 wherein said complex ester or ester-ether surfactacant is a compound according to the structure:




where R is a fatty acid residue selected from lauroyl, stearoyl and oleoyl.

54. The method according to claim 52 or 53 wherein said polysorbate surfactant is a compound according to the structure:




where R is an oleoyl group.

55. The method according to any of claims 46-54 wherein said vegetable oil comprises medium chain triglycerides.

56. The composition according to any of claims 46-54 wherein said vegetable oil is selected from the group consisting of soybean oil, sunflower oil, safflower oil, cottonseed oil, castor oil, rapeseed oil, coconut oil, palm oil and mixtures thereof..

57. The method according to any of claims 46-56 wherein said solvent is selected from the group consisting of ethanol, propylene glycol, glycerin and mixtures, thereof.

58. The method according to any of claims 46-57 wherein said composition is in parenteral dosage form.

59. The method according to any of claims 46-57 wherein said composition is in topical dosage form.

60. A method for increasing the bioavailability of ubiquinone from an orally or topically administered composition comprising administering to a subject a composition comprising an effective amount of ubiquinol in oral or topical dosage form.

61. The method according to claim 60 wherein said composition is storage stable and further comprises an amount of a reducing agent effective to reduce or prevent the oxidation of ubiquinol to ubiquinone.

62. A method of preparing a storage stable composition in oral dosage form comprising an effective amount of ubiquinol, said method comprising preparing a mixture of ubiquinol in combination with an amount of a reducing agent effective to reduce or prevent the oxidation of ubiquinol to ubiquinone during storage of said composition and a solubilizer, and adding said mixture to a hard or soft gelatin capsule, or to pharmaceutically acceptable additives carriers or excipients.

63. The method according to claim 68 wherein said mixture is in the form of a solution and said solution is added to a soft gelatin capsule.

64. A method of treating a condition or disease in a patient, said condition or disease being selected from the group consisting of congestive heart failure, high blood pressure, mitochondrial cytopathy, anoxia, lactic acidosis, strokelike symptoms, neurodegenerative diseases, said method comprising administering an effective amount of ubiquinol to said patient in oral dosage form.

65. The method according to claim 64 wherein said mitochondrial cytopathy is mitochondrial encephalopathy, Kearns-Sayre disease, Alpers disease, mitochondrial encephalopathy with lactic acidosis and stroke-like episodes (MELAS) and Levers hereditary optical neuropathy (LHON).

66. A method of treating a condition or disease state in a patient, said condtion or disease state being selected from the group consisting of periodontal disease, elevated cholesterol levels, elevated triglyceride levels and a weakened immune system, said method comprising administering to said patient in need thereof, an effective amount of a composition comprising ubiquinol and a reducing agent, said composition being substantially ubiquinone-free.

67. A method of preventing or reducing the likelihood of a patient at risk of suffering a first or subsequent heart attack from having a heart attack, said method comprising administering to said patient in need thereof, an effective amount of a composition comprising ubiquinol and a reducing agent, said composition being substantially ubiquinone-free.

68. The method according to clailm 67 wherein said composition further comprises a compound selected from the group consisting of statins, tocotrienols, tocopherols, omega-3 fatty acid and mixtures thereof.

69. A method of treating anoxia in a patient in need thereof comprising administering to said patient in need an effective amount of a composition comprising ubiquinol, a reducing

agent and L-carnitine, acetyl-L-carnitine, propionyl L-carnitine or carnitine fumarate, said composition being ubiquinone-free.

70. The method according to claim 68 wherein said reducing agent is L-carnitine or acetyl-L-carnitine.

71. Use of a composition for the manufacture of a medicament for treating a condition selected from the group consisting of congestive heart failure, high blood pressure, mitochondrial cytopathy, anoxia, lactic acidosis, strokelike symptoms, neurodegenerative diseases, said composition comprising a mixture of ubiquinol in combination with an amount of a reducing agent effective to reduce or prevent the oxidation of ubiquinol to ubiquinone during storage of said composition and an effective amount of a solubilizer, optionally including a solvent.

72. The use according to claim 71 wherein said mitochondrial cytopathy is mitochondrial encephalopathy, Kearns-Sayre disease, Alpers disease, mitochondrial encephalopathy with lactic acidosis and stroke-like episodes (MELAS) and Levers hereditary optical neuropathy (LHON).

# INTERNATIONAL SEARCH REPORT

International application No.
PCT/US01/01997

**A. CLASSIFICATION OF SUBJECT MATTER**

IPC(7) : A61K 9/48, 9/66, 9/64, 9/20
US CL : 424/456, 451, 455, 464
According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)

U.S. : 424/456, 451, 455, 464

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

BRS
CAS/STN

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | US 4,869,900 A (POZZI et al) 26 September 1989. | 1-3, 27-29, 46-48, 60-72 |
| A,P | US 6,045,826 A (BOROWY-BOROWSKI et al) 04 April 2000. | 1-3, 27-29, 46-48, 60-72 |

☐ Further documents are listed in the continuation of Box C. ☐ See patent family annex.

| | |
|---|---|
| * | Special categories of cited documents: |
| "A" | document defining the general state of the art which is not considered to be of particular relevance |
| "E" | earlier document published on or after the international filing date |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) |
| "O" | document referring to an oral disclosure, use, exhibition or other means |
| "P" | document published prior to the international filing date but later than the priority date claimed |
| "T" | later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
| "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 26 FEBRUARY 2001 | 06 JUN 2001 |
| Name and mailing address of the ISA/US<br>Commissioner of Patents and Trademarks<br>Box PCT<br>Washington, D.C. 20231<br>Facsimile No. (703) 305-3230 | Authorized officer<br>TODD D WARE<br>Telephone No. (703) 308-1234 |

KAN0000274

Form PCT/ISA/210 (second sheet) (July 1998)★

**INTERNATIONAL SEARCH REPORT**

International application No.
PCT/US01/01997

**Box I Observations where certain claims were found unsearchable (Continuation of item 1 of first sheet)**

This international report has not been established in respect of certain claims under Article 17(2)(a) for the following reasons:

1. ☐ Claims Nos.:
because they relate to subject matter not required to be searched by this Authority, namely:

2. ☒ Claims Nos.: 5-7, 9-25, 31-45, 49-51, 53-59
because they relate to parts of the international application that do not comply with the prescribed requirements to such an extent that no meaningful international search can be carried out, specifically:

There is no claim 26. Claims go directly from claim 25 to claim 27, therefore claim 26 was unsearchable. It is unclear whether the compounds shown in claims 5, 9, 31, 35, 49, and 53 are one compound or three. "w, x, y, and z" are not defined in the compounds of claims 7, 10, 33, 51, and 54.

3. ☒ Claims Nos.: 4-25, 30-45, 51-59
because they are dependent claims and are not drafted in accordance with the second and third sentences of Rule 6.4(a).

**Box II Observations where unity of invention is lacking (Continuation of item 2 of first sheet)**

This International Searching Authority found multiple inventions in this international application, as follows:

1. ☐ As all required additional search fees were timely paid by the applicant, this international search report covers all searchable claims.

2. ☐ As all searchable claims could be searched without effort justifying an additional fee, this Authority did not invite payment of any additional fee.

3. ☐ As only some of the required additional search fees were timely paid by the applicant, this international search report covers only those claims for which fees were paid, specifically claims Nos.:

4. ☐ No required additional search fees were timely paid by the applicant. Consequently, this international search report is restricted to the invention first mentioned in the claims; it is covered by claims Nos.:

**Remark on Protest**
☐ The additional search fees were accompanied by the applicant's protest.
☐ No protest accompanied the payment of additional search fees.

# PATENT ABSTRACTS OF JAPAN

(11)Publication number : 10-109933
(43)Date of publication of application : 28.04.1998

(51)Int.Cl. A61K 31/12
A61K 31/12

(21)Application number : 09-173191
(22)Date of filing : 13.06.1997

(71)Applicant : KANEGAFUCHI CHEM IND CO LTD
(72)Inventor : MAE TATSUMASA
SAKAMOTO YOSHITOMO
MORIKAWA SOICHI
HIDAKA TAKAYOSHI

(30)Priority
Priority number : 08234729 Priority date : 16.08.1996 Priority country : JP

## (54) PHARMACEUTICAL COMPOSITION

(57)Abstract:
PROBLEM TO BE SOLVED: To obtain a pharmacentical composition containing a reduction type coenzyme Q10 as an active ingredient, excellent in oral absorbing property and exhibiting high bioavailability, compared with that of an oxidation type coenzyme.
SOLUTION: The content of a reduction type coenzyme Q10 represented by formula I is ≥20wt.%, preferably ≥40wt.%, further preferably ≥60wt.% based on total amount of the coenzyme from the viewpoint of bioavailability of a medicinal composition. It is not required to further increase the content, because production process becomes complicate and production cost are increased, if the content of the reduction type coenzyme is too high. A method for obtaining the coenzyme of formula I comprises obtaining a coenzyme Q10 by a well-known method such as synthesis or fermentation and as necessary, reducing an oxidation type coenzyme Q10 of formula II by using a general reducing agent and concentrating the coenzyme of formula I in the effluent by chromatography. The pharmaceutical composition containing the coenzyme of formula I is used as a medicine effective for symptom of ischemic heat diseases, senile myocardiosclerosis, etc., and a nutrient, etc.



I



II

## LEGAL STATUS

| | |
|---|---|
| [Date of request for examination] | 26.06.2002 |
| [Date of sending the examiner's decision of rejection] | |
| [Kind of final disposal of application other than the examiner's decision of rejection or application converted registration] | |
| [Date of final disposal for application] | |
| [Patent number] | 3889481 |
| [Date of registration] | 08.12.2006 |
| [Number of appeal against examiner's decision of rejection] | |
| [Date of requesting appeal against examiner's decision of rejection] | |
| [Date of extinction of right] | |

(19)日本国特許庁（ＪＰ）　(12) **公開特許公報（Ａ）**　(11)特許出願公開番号

**特開平10－109933**

(43)公開日　平成10年(1998)４月28日

| (51)Int.Cl.⁶ | 識別記号 | ＦＩ | |
|---|---|---|---|
| Ａ６１Ｋ　31/12 | ＡＥＤ | Ａ６１Ｋ　31/12 | ＡＥＤ |
| | ＡＢＮ | | ＡＢＮ |

審査請求　未請求　請求項の数２　ＦＤ　（全　６　頁）

(21)出願番号　特願平9－173191

(22)出願日　平成９年(1997)６月13日

(31)優先権主張番号　特願平8－234729

(32)優先日　平８(1996)８月16日

(33)優先権主張国　日本（ＪＰ）

(71)出願人　000000941
鐘淵化学工業株式会社
大阪府大阪市北区中之島３丁目２番４号

(72)発明者　前　辰正
兵庫県加古川市平岡町西谷195－１　メゾン・ル・シェール105号

(72)発明者　坂本　美朝
兵庫県明石市大久保町大窪1504－１　プルミエ205号

(72)発明者　守川　壮一
兵庫県姫路市船丘町293　ホワイトシャトー２Ｆ

(74)代理人　弁理士　安富　康男　（外１名）

最終頁に続く

(54)【発明の名称】　医薬組成物

(57)【要約】
【課題】　補酵素$Q_{10}$を有効成分とする経口吸収性に優れた医薬組成物を提供する。
【解決手段】　補酵素$Q_{10}$を有効成分とする医薬組成物であって、上記補酵素$Q_{10}$は、２０重量％を超える還元型補酵素$Q_{10}$を含有するものである医薬組成物。

【特許請求の範囲】

【請求項１】　補酵素$Q_{10}$を有効成分とする医薬組成物であって、前記補酵素$Q_{10}$は、２０重量%を超える還元型補酵素$Q_{10}$を含有するものであることを特徴とする医薬組成物。

【請求項２】　還元型補酵素$Q_{10}$が、補酵素$Q_{10}$全量の４０重量%以上である請求項１記載の医薬組成物。

【発明の詳細な説明】

【０００１】

【発明の属する技術分野】本発明は、下記一般式（１－Ａ）で表される補酵素$Q_{10}$を有効成分とする経口吸収性に優れた医薬組成物に関する。

【０００２】

【化１】



（１-Ａ）

【０００３】

【従来の技術】補酵素$Q_{10}$は、生体内の細胞中におけるミトコンドリアの電子伝達系構成因子として存在する生理学的成分である。補酵素$Q_{10}$は、代謝経路、特に好気的経路を通じて、直接的に酸化的リン酸化反応における電子の運搬子として働くことによりＡＴＰを生成し、エネルギーを産出する。

【０００４】補酵素$Q_{10}$の要求は、強度の肉体疲労に陥った正常人、心臓血管系障害患者、慢性的衰弱病患者、長期薬物投与患者等において増大すると思われる。とりわけ、虚血性心疾患、老人性心筋硬化症及び高血圧性心疾患においては、補酵素$Q_{10}$が欠乏することが明らかにされている。従って、これらの患者に補酵素$Q_{10}$を投与することは治療上有効である。また、補酵素$Q_{10}$は、医薬品、治療薬用途以外でも、ビタミン類同様、栄養剤、栄養補助剤として使用されている。

【０００５】補酵素$Q_{10}$による治療効果や、栄養効果を充分に発揮させるためには、患者の体内組織細胞中の補酵素$Q_{10}$濃度を高めることが最も重要である。補酵素$Q_{10}$は、脂溶性薬物であり水にはほとんど溶解しないので、胃液中における溶解度が制限される。従って、補酵素$Q_{10}$を固体の形態で含有する錠剤、顆粒剤、カプセル剤、用時調製懸濁液等の経口投与製剤は、経口投与後の吸収性が悪い。このため、患者に対して本来必要とする量よりもはるかに多量の補酵素$Q_{10}$を投与しなければならず、胃部不快感、食欲減退、吐気、下痢等の消化管に対する副作用が発現する欠点があった。

【０００６】このような問題を改善する目的で従来から種々の検討がなされている。特開昭５５－８１８１３号公報、特開昭６１－２２１１３１号公報等には、溶解型又は乳化、分散型の補酵素$Q_{10}$製剤が開示されている。しかしながら、このような製剤時における工夫では、補酵素$Q_{10}$の吸収性を充分に向上させることは難しい。

【０００７】特開昭５６－１８９１４号公報には、補酵素$Q_{10}$のリンパ管吸収を促進せしめる手段が開示されている。しかしながら、このような手段は、ある程度補酵素$Q_{10}$の吸収性を向上させるが、未だ実用化には至っていない。

【０００８】特開昭６０－８９４４２号公報には、補酵素$Q_{10}$をシクロデキストリンに包接させた補酵素$Q_{10}$製剤が開示されている。また、特開昭６０－１１２４号公報には、補酵素$Q_{10}$を含有するリポソーム製剤が開示されている。しかしながら、このような補酵素$Q_{10}$製剤は、製剤化までの工程が複雑であり、実用的ではない。

【０００９】また、イタリア特許１１９０４４２号明細書には、補酵素$Q_{10}$そのものを用いるのではなく、還元型補酵素$Q_{10}$を、アシルエステル、硫酸エステル、リン酸エステル等の誘導体とし、この補酵素$Q_{10}$誘導体を投与することにより吸収性を高める方法が開示されている。しかしながら、その効果は実験データによって明確にはされていない。

【００１０】

【発明が解決しようとする課題】本発明は、上記に鑑み、補酵素$Q_{10}$を有効成分とする経口吸収性に優れた医薬組成物を提供することを目的とするものである。

【００１１】

【課題を解決するための手段】本発明者らは上記課題を解決すべく鋭意研究した結果、還元型補酵素$Q_{10}$を含有する医薬組成物を調製し、これを患者に経口投与したところ、驚くべきことに、従来の酸化型補酵素$Q_{10}$のみを含有する医薬組成物と比較して、明らかに高いバイオアベイラビリティを発揮することを見出し、本発明を完成した。本発明は、補酵素$Q_{10}$を有効成分とする医薬組成物であって、上記補酵素$Q_{10}$は、２０重量%を超える還元型補酵素$Q_{10}$を含有するものである医薬組成物である。以下に本発明を詳述する。

【００１２】補酵素$Q_{10}$は、生体内においてはかなりの部分が還元型で存在することが知られており、その割合は通常４０～９０％程度である。還元型補酵素$Q_{10}$は生体内で容易に酸化型に変換され、逆に、酸化型補酵素$Q_{10}$は生体内で容易に還元型に変換される。従って、生体内における補酵素$Q_{10}$は、一般に、下記式（１）によって表すことができる。

【００１３】

【化２】



(1-A) (1-B) (1)

【００１４】上記式（１）中、一般式（１－Ａ）は酸化型補酵素$Q_{10}$であり、一般式（１－Ｂ）は還元型補酵素$Q_{10}$である。従来の補酵素$Q_{10}$を有効成分とする医薬組成物においては、上記化学式（１－Ａ）で表される酸化型補酵素$Q_{10}$のみを有効成分として含有していた。これに対して、本発明の医薬組成物は、有効成分である補酵素$Q_{10}$として上記化学式（１－Ｂ）で表される還元型補酵素$Q_{10}$を含有するものを用いる。このため、従来の酸化型補酵素$Q_{10}$のみを有効成分とする医薬組成物に比べ、経口吸収性に優れ、より高いバイオアベイラビリティを発揮する。

【００１５】上記還元型補酵素$Q_{10}$を得る方法としては特に限定されず、例えば、合成、発酵、天然物からの抽出等の従来公知の方法により補酵素$Q_{10}$を得た後、クロマトグラフィーにより流出液中の還元型補酵素$Q_{10}$区分を濃縮する方法等を採用することができる。この場合においては、必要に応じて、上記補酵素$Q_{10}$に対し、水素化ほう素ナトリウム、亜ジチオン酸ナトリウム（ハイドロサルファイトナトリウム）等の一般的な還元剤を添加し、常法により上記補酵素$Q_{10}$中に含まれる酸化型補酵素$Q_{10}$を還元して還元型補酵素$Q_{10}$とした後にクロマトグラフィーによる濃縮を行ってもよい。また、既存の高純度補酵素$Q_{10}$に上記還元剤を作用させる方法によっても得ることができる。

【００１６】本発明の医薬組成物を得る方法としては特に限定されず、例えば、上述のようにして得られる還元型補酵素$Q_{10}$と市販の酸化型補酵素$Q_{10}$とを、イソプロピルアルコール、アセトン、エーテル等の通常使用される適当な溶剤に溶解させることにより、上記還元型補酵素$Q_{10}$を所望量含有する医薬組成物を得ることができる。また、上記還元型補酵素$Q_{10}$と上記酸化型補酵素$Q_{10}$とを固体のまま単に混合してもよい。また、上述した補酵素$Q_{10}$の製造工程で得られる酸化型補酵素$Q_{10}$及び還元型補酵素$Q_{10}$の混合物をそのまま使用することもできる。更に、上記既存の高純度補酵素$Q_{10}$の還元反応の時間や還元剤の種類又はその量を制御することによっても直接本発明の医薬組成物を得ることができる。

【００１７】本発明の医薬組成物においては、還元型補酵素$Q_{10}$が、補酵素$Q_{10}$全量の２０重量％より多い。２０重量％以下であると、得られる医薬組成物のバイオアベイラビリティ向上の効果は得られない。好ましくは、４０重量％以上であり、より好ましくは、６０重量％以上である。また、上記還元型補酵素$Q_{10}$の含有率が高すぎると、製造プロセスが複雑となり、製造コストも増加するので、極端に上記還元型補酵素$Q_{10}$の含有率を高める必要はない。

【００１８】本発明の医薬組成物は、例えば、虚血性心疾患、老人性心筋硬化症、高血圧性心疾患等の症状に有効な強心剤等として用いることができる。また、その他、栄養剤、栄養補助剤、動物薬等として用いることもできる。

【００１９】本発明の医薬組成物からなる製剤の剤形としては特に限定されず、例えば、粉末剤であってもよく、結合剤を加えて顆粒剤としてもよく、圧縮して錠剤としてもよく、粉末剤又は顆粒剤をカプセルに充填してカプセル剤としてもよい。また、天然油、油状の高級脂肪酸、高級脂肪酸モノグリセライド又はこれらの混合物を加え、油状のまま充填してソフトカプセル剤とすることもできる。この場合においては、ゼラチンを主体としたもの又はその他の水溶性高分子物質を主体としたもの等を使用することもできる。また、このようなカプセルにはマイクロカプセルも含まれる。

【００２０】本発明の医薬組成物には、更に、上記還元型補酵素$Q_{10}$の他に薬剤学的に許容される他の製剤素材を、常法により適宜添加混合してもよい。このようなものとしては特に限定されず、例えば、賦形剤、崩壊剤、滑沢剤、結合剤、酸化防止剤、着色剤、凝集防止剤、吸収促進剤、薬効成分の溶解補助剤、安定化剤等が挙げられる。

【００２１】上記賦形剤としては特に限定されず、例えば、白糖、乳糖、ブドウ糖、コーンスターチ、マンニトール、結晶セルロース、リン酸カルシウム、硫酸カルシウム等が挙げられる。上記崩壊剤としては特に限定されず、例えば、澱粉、寒天、クエン酸カルシウム、炭酸カルシウム、炭酸水素ナトリウム、デキストリン、結晶セルロース、カルボキシメチルセルロース、トラガント等が挙げられる。上記滑沢剤としては特に限定されず、例えば、タルク、ステアリン酸マグネシウム、ポリエチレングリコール、シリカ、硬化植物油等が挙げられる。

【００２２】上記結合剤としては特に限定されず、例えば、エチルセルロース、メチルセルロース、ヒドロキシプロピルメチルセルロース、トラガント、シェラック、ゼラチン、アラビアゴム、ポリビニルピロリドン、ポリビニルアルコール、ポリアクリル酸、ポリメタクリル酸、ソルビトール等が挙げられる。上記酸化防止剤としては特に限定されず、例えば、アスコルビン酸、トコフ

Case 1:23-cv-07483-SJB-SDE Document 100-4 Filed 12/01/25 Page 269 of 330
PageID #: 5731



ェロール、ビタミンＡ、β－カロチン、亜硫酸水素ナトリウム、チオ硫酸ナトリウム、ピロ亜硫酸ナトリウム、クエン酸等が挙げられる。

【００２３】上記着色剤としては特に限定されず、例えば、医薬品に添加することが許可されているもの等を用いることができる。上記凝集防止剤としては特に限定されず、例えば、ステアリン酸、タルク、軽質無水けい酸、含水二酸化けい酸等が挙げられる。上記吸収促進剤としては特に限定されず、例えば、高級アルコール類、高級脂肪酸類、グリセリン脂肪酸エステル等の界面活性剤等が挙げられる。上記薬効成分の溶解補助剤としては特に限定されず、例えば、フマル酸、コハク酸、りんご酸等の有機酸等が挙げられる。上記安定化剤としては特に限定されず、例えば、安息香酸、安息香酸ナトリウム、パラオキシ安息香酸エチル等が挙げられる。

【００２４】本発明の医薬組成物からなる製剤を経口投与する場合における投与量は、医薬、動物薬、栄養剤等のそれぞれの用途に応じて適宜決定される。家畜、家禽等の動物に投与する際における経口投与は、通常の試料に添加することにより行うことができ、また、常法による強制投与も可能である。

【００２５】

【実施例】以下に実施例及び製剤例を掲げて本発明を更に詳しく説明するが、本発明はこれら実施例及び製剤例のみに限定されるものではない。

【００２６】実施例１

（１）試料の調製

<u>検体試料１の調製</u>

酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比が、５：９５である混合物０．３ｇを５０℃水浴上で融解させた後、オリーブオイルを添加して６．０ｍｌとした。これを５０℃で均質に溶融混合し、油状組成物を得た。

【００２７】<u>比較試料１の調製</u>

酸化型補酵素$Q_{10}$ ０．３ｇを５０℃水浴上で融解させた後、オリーブオイルを添加して６．０ｍｌとした。これを５０℃で均質に溶融混合し、油状組成物を得た。

【００２８】（２）経口吸収試験

試験試料として検体試料１及び比較試料１を使用した。試験は、飽食条件下で飼育した雄のＣｒｊ：ＣＤ（ＳＤ）ラット（体重２６０ｇ～３００ｇ）を用いて行い、投与量は、試験試料がラットに対して、１００ｍｇ総補酵素$Q_{10}$／ｋｇとなるように経口投与した。また、試験は、血漿中における総補酵素$Q_{10}$の濃度の投与前（未投与）及び投与後の経時変化を測定した。各時点で試験試料一つにつき４匹のラットを使用した。総補酵素$Q_{10}$とは、酸化型補酵素$Q_{10}$及び還元型補酵素$Q_{10}$からなる混合物の総和を示す。総補酵素$Q_{10}$の濃度は、酸化型補酵素$Q_{10}$の濃度として定量され、血漿中濃度の測定は次のように行った。採取した血漿１．０ｍｌに水２．０ｍｌ、エタノール４．０ｍｌ、ｎ－ヘキサン１０．０ｍｌをこの順で加える。これを約５分間激しく振盪し、遠心分離して二層に分離した。有機溶媒層を分取し、残りの水層にｎ－ヘキサン１０．０ｍｌを加え同様の抽出操作を２回繰り返す。得られた有機溶媒層を先の有機溶媒層と一緒にし、蒸発乾固させる。これに２５０μｌのエタノール：１Ｎ塩酸（９９：１、ｖ／ｖ）を加え定量分析用サンプルとした。補酵素$Q_{10}$の定量分析は以下の条件に従い、高速液体クロマトグラフィーによって実施した。

【００２９】

カラム　：長さ　２５０mm、直径　４．６mm

ＳＹＭＭＥＴＲＹ　Ｃ１８（Ｗａｔｅｒｓ社製）

移動相　：０．５Ｍ　$NaClO_4$／$C_2H_5OH$：$CH_3OH$：$CH_3CN$：７０％$HClO_4$（４００：３００：３００：１、ｖ：ｖ）

検出波長：２７５ｎｍ

流速　　：１ｍｌ／ｍｉｎ

【００３０】試験結果を図１に示した。なお、図１中、縦軸は血漿中の総補酵素$Q_{10}$濃度であり、横軸は投与後経過時間であり、各点は平均±標準偏差である。図１より明らかなごとく、酸化型補酵素$Q_{10}$単独からなる組成物においては、最高血漿中濃度ピークが投与後３時間で現れているのに対して、還元型補酵素$Q_{10}$を含有する組成物においては、それより１時間早く投与後２時間で現れている。また、その時の濃度も還元型補酵素$Q_{10}$を含有する組成物における場合の方が２．１倍高い。この結果より、本発明の医薬組成物は、酸化型補酵素$Q_{10}$のみを含有するものに比して、明らかに早くかつより多く吸収されることが示された。

【００３１】実施例２

（１）試料の調製

<u>検体試料２の調製</u>

酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比が、２０：８０である混合物を用いて、上記実施例１記載の検体試料１と同様にして調製した。

【００３２】<u>検体試料３の調製</u>

酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比が、４０：６０である混合物を用いて、上記実施例１記載の検体試料１と同様にして調製した。

【００３３】<u>検体試料４の調製</u>

酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比が、６０：４０である混合物を用いて、上記実施例１記載の検体試料１と同様にして調製した。

【００３４】<u>比較試料２の調製</u>

酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比が、８０：２０である混合物を用いて、上記実施例１記載の検体試料１と同様にして調製した。

【００３５】（２）経口吸収試験

試験試料として検体試料１、検体試料２、検体試料３、検体試料４、比較試料１及び比較試料２を使用した。試

験は、血漿中における総補酵素$Q_{10}$の濃度の測定を投与後３時間に行う以外は、上記実施例１記載と同様にして行った。

【００３６】試験結果を図２に示した。なお、図２中、縦軸は投与後３時間の血漿中の総補酵素$Q_{10}$濃度であり、横軸は投与に供した試料の酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比であり、各棒は平均±標準偏差である。図２より明らかなごとく、還元型補酵素$Q_{10}$が補酵素$Q_{10}$全量の４０重量％以上の組成物では、酸化型補酵素$Q_{10}$単独からなる組成物及び還元型補酵素$Q_{10}$が補酵素$Q_{10}$全量の２０重量％である組成物に比して、血漿中濃度の上昇が認められた。しかも、含有される還元型補酵素$Q_{10}$の重量比が増加するに従い、血漿中濃度はよりいっそう増加した。この結果より、本発明の医薬組成物は、還元型補酵素$Q_{10}$を補酵素$Q_{10}$全量の４０重量％以上含むことにより、酸化型補酵素$Q_{10}$のみを含有するものや、還元型補酵素$Q_{10}$の含有量が補酵素$Q_{10}$全量の２０重量％以下であるものに比して、明らかにより多く吸収されることが示された。

【００３７】次に、酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比が、１５：８５である酸化型補酵素$Q_{10}$と還元型補酵素$Q_{10}$との混合物（以下、「主薬」という）を有効成分とし、通常の製剤技術に従って調合した製剤例を示す。

【００３８】製剤例１（散剤）

主薬をアセトンに溶解し、次いでこれを微結晶セルロースに吸着させた後、乾燥した。これをトウモロコシ澱粉と混合し、常法により散剤とした。

| | |
|---|---|
| 主薬 | １０重量部 |
| 微結晶セルロース | ４０重量部 |
| トウモロコシ澱粉 | ５５重量部 |

【００３９】製剤例２（錠剤）

主薬をアセトンに溶解し、次いでこれを微結晶セルロースに吸着させた後、乾燥した。これにトウモロコシ澱粉、乳糖、カルボキシメチルセルロース、ステアリン酸マグネシウムを混合し、次いでポリビニルピロリドンの水溶液を結合剤として加えて常法により顆粒化した。これに滑沢剤としてタルクを加えて混合した後、１錠に主薬２０ｍｇを含有する錠剤に打錠した。

| | |
|---|---|
| 主薬 | ２０重量部 |
| トウモロコシ澱粉 | ２５重量部 |
| 乳糖 | １５重量部 |
| カルボキシメチルセルロースカルシウム | １０重量部 |
| 微結晶セルロース | ４０重量部 |
| ポリビニルピロリドン | ５重量部 |
| ステアリン酸マグネシウム | ３重量部 |
| タルク | １０重量部 |

【００４０】製剤例３（カプセル剤）

下記成分を常法により顆粒化した後、ゼラチン硬カプセルに充填した。１カプセル中に主薬２０ｍｇを含有するカプセル剤を得た。

| | |
|---|---|
| 主薬 | ２０重量部 |
| 微結晶セルロース | ４０重量部 |
| トウモロコシ澱粉 | ２０重量部 |
| 乳糖 | ６２重量部 |
| ステアリン酸マグネシウム | ２重量部 |
| ポリビニルピロリドン | ３重量部 |

【００４１】製剤例４（ソフトカプセル剤）

大豆油部を６０℃に加温し、６０℃で熔融した主薬を加え溶解した。これにビタミンＥを少しづつ加えて均質とし、常法によりソフトカプセル化した。１カプセル中に主薬２０ｍｇを含有するソフトカプセル剤を得た。

| | |
|---|---|
| 主薬 | ２０重量部 |
| ビタミンＥ | １５重量部 |
| 大豆油 | ３５０重量部 |

【００４２】

【発明の効果】本発明の医薬組成物は、上述の構成よりなるので、経口吸収性に優れており、優れたバイオアベイラビリティを発揮する。

【図面の簡単な説明】

【図１】血漿中の総補酵素$Q_{10}$濃度と投与後経過時間との関係を示すグラフである。縦軸は血漿中の総補酵素$Q_{10}$濃度を表す。横軸は投与後経過時間を表す。各点は平均±標準偏差（ｎ＝４）を表す。

【図２】投与後３時間の血漿中の総補酵素$Q_{10}$濃度と投与に供した試料の酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比との関係を示すグラフである。縦軸は血漿中の総補酵素$Q_{10}$濃度を表す。横軸は投与に供した試料の酸化型補酵素$Q_{10}$：還元型補酵素$Q_{10}$の重量比を表す。各棒は平均±標準偏差（ｎ＝４）を表す。

【図１】




【図２】




フロントページの続き

(72)発明者 日高 隆義
兵庫県神戸市垂水区本多聞２－21－８

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11741290 |
| **Filing Date:** | 27-Apr-2007 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| First Named Inventor/Applicant Name: | Takahiro UEDA |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Attorney Docket Number:** | 701554 |

Filed as Large Entity

## Utility Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Late filing fee for oath or declaration | 1051 | 1 | 130 | 130 |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **130** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 2000739 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 23-JUL-2007 |
| **Filing Date:** | 27-APR-2007 |
| **Time Stamp:** | 16:25:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment was successfully received in RAM | $130 |
| RAM confirmation Number | 1577 |
| Deposit Account | 121216 |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 and 1.17

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant Response to Pre-Exam Formalities Notice | ResponseToNoticeToFileMissingParts.pdf | 242980<br>8241168f119697240b71406eeabc594c6d4b41fa | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Oath or Declaration filed | Declaration.pdf | 361127<br>b8078fdc9f9f1f4e630c5a2a2f8d4430e01d24fb | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Information Disclosure Statement (IDS) Filed | IDS-1st.pdf | 421675<br>efcae17a5409e00123d9df8d83b6834f74089f43 | no | 4 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 4 | Information Disclosure Statement (IDS) Filed | Form1449-1st.pdf | 163204<br>0aae8d4e23b675e22ec5ba692c997a1b058d43a9 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 5 | Foreign Reference | WO_01-52822.pdf | 5053334<br>547a998fc23fb43ebaf92aab89fda08db2ee554c | no | 50 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Foreign Reference | JP_10-109933.pdf | 1004574<br>a3d42a4bac6f036d624651be84a9667535aa197e | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 7 | NPL Documents | Selvam.pdf | 1599449<br>9112da56130d546cfbcafe15cfedcd8bd4e58018 | no | 10 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Fee Worksheet (PTO-06) | fee-info.pdf | 8170<br>0d3112a23f632bef196f22d07e8323cdb9464168 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| Total Files Size (in bytes): | 8854513 |
|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**

**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**

**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**

**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 11/741,290 | 04/27/2007 | 1657 | 1250 | 701554 | 21 | 4 |

**CONFIRMATION NO. 2693**

**FILING RECEIPT**

23460
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL60601-6731

Date Mailed: 05/23/2007

Receipt is acknowledged of this regular Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please mail to the Commissioner for Patents P.O. Box 1450 Alexandria Va 22313-1450. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).**

**Applicant(s)**

Takahiro UEDA, Kobe-shi, JAPAN;
Shiro Kitamura, Akashi-shi, JAPAN;
Hiroshi Kubo, Kobe-shi, JAPAN;
Kazunori Hosoe, Takasago-shi, JAPAN;

**Assignment For Published Patent Application**

Kaneka Corporation, Osaka-shi, JAPAN

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

**Foreign Applications**

JAPAN 2006-126897 04/28/2006

**If Required, Foreign Filing License Granted:** 05/22/2007

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is
**US11/741,290**

**Projected Publication Date:** To Be Determined - pending completion of Missing Parts

**Non-Publication Request:** No

**Early Publication Request:** No

**Title**

STABILIZATION METHOD OF REDUCED COENZYME Q10

**Preliminary Class**

435

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

---

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 11/741,290 | 04/27/2007 | Takahiro UEDA | 701554 |

**CONFIRMATION NO. 2693**

**FORMALITIES LETTER**

23460
LEYDIG VOIT & MAYER, LTD
TWO PRUDENTIAL PLAZA, SUITE 4900
180 NORTH STETSON AVENUE
CHICAGO, IL 60601-6731

Date Mailed: 05/23/2007

# NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

**FILED UNDER 37 CFR 1.53(b)**

***Filing Date Granted***

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The oath or declaration is missing. *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
  *Note: If a petition under 37 CFR 1.47 is being filed, an oath or declaration in compliance with 37 CFR 1.63 signed by all available joint inventors, or if no inventor is available by a party with sufficient proprietary interest, is required.*

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- To avoid abandonment, a surcharge (for late submission of filing fee, search fee, examination fee or oath or declaration) as set forth in 37 CFR 1.16(f) of $130 for a non-small entity, must be submitted with the missing items identified in this letter.

**SUMMARY OF FEES DUE:**

Total additional fee(s) required for this application is **$130** for a non-small entity

- **$130** Surcharge.

Replies should be mailed to: Mail Stop Missing Parts

Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web.
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or visit our website at http://www.uspto.gov/ebc.

---

***If you are not using EFS-Web to submit your reply, you must include a copy of this notice.***

Office of Initial Patent Examination (571) 272-4000, or 1-800-PTO-9199

PART 3 - OFFICE COPY

| UTILITY PATENT APPLICATION TRANSMITTAL | | |
|---|---|---|
| *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Attorney Docket No. | 701554 |
| | Client Reference No. | 201659 |
| | First Inventor | Ueda et al. |
| | Title | STABILIZATION METHOD OF REDUCED COENZYME $Q_{10}$ |

**APPLICATION ELEMENTS**

*ADDRESS TO:* Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

1. ☒ Utility Patent Application Transmittal Form
2. ☐ Applicant claims small entity status. See 37 CFR 1.27.
3. ☒ Specification (including claims and abstract) [Total Pages 32]
4. ☒ Drawings [Total Sheets 2]
5. ☐ Combined Declaration and Power of Attorney [Total Pages ]
   a. ☐ Newly executed
   b. ☐ Copy from prior application [Note Box 6 below]
      i. ☐ Deletion of Inventor(s) Signed statement attached deleting inventor(s) named in the prior application
6. ☐ Incorporation by Reference: The entire disclosure of the prior application, from which an oath or declaration is supplied under Box 5b is considered as part of the disclosure of the accompanying application and is hereby incorporated by reference.
7. ☒ Application Data Sheet. See 37 CFR 1.76
8. ☐ CD-ROM or CD-R in duplicate, large table or Computer Program (Appendix)
9. Nucleotide and/or Amino Acid Sequence Submission
   a. ☐ Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper Copy
   c. ☐ Statement verifying identity of above copies

**ACCOMPANYING APPLICATION PARTS**

10. ☐ Applicant requests early publication. (include publication fee under 37 CFR 1.18(d))
11. ☐ Assignment Papers (cover sheet and document(s))
12. ☐ 37 CFR 3.73(b) Statement (when there is an Assignee)
13. ☐ Power of Attorney
14. ☐ English Translation Document (if applicable)
15. ☐ Information Disclosure Statement (IDS)
    ☐ Form PTO-1449
    ☐ Copies of References (except for U.S. patents and applications)
16. ☐ Preliminary Amendment
17. ☐ Return Receipt Postcard (Should be specifically itemized)
18. ☐ Claim of Priority & Certified Copy of Priority Document(s)
19. ☐ Request & Certification Under 35 USC 122(b)(2)(B)(i) (Form PTO/SB/35 or its equivalent must be submitted with this application to prevent publication at 18 months)
20. ☐

21. If a CONTINUING APPLICATION, check appropriate box and supply the requisite information below:
☐ Continuation ☐ Divisional ☐ Continuation-in-part of prior application no. .
Prior application information: Examiner ; Group Art Unit:

**APPLICATION FEES**

| | SMALL ENTITY | OTHER THAN A SMALL ENTITY |
|---|---|---|
| FILING FEE | $75 (EFS) | $300 |
| SEARCH FEE | $250 | $500 |
| EXAM FEE | $100 | $200 |

| CLAIMS | NUMBER FILED | | NUMBER EXTRA | RATE | ADD'L CLAIM FEE | RATE | ADD'L CLAIM FEE |
|---|---|---|---|---|---|---|---|
| Total Claims | 21 | – 20 = | 1 | x 25 = | | x 50 = | $50 |
| Independent Claims | 4 | – 3 = | 1 | x 100 = | | x 200 = | $200 |
| ☐ First Presentation of Multiple Dependent Claim | | | | + 180 = | | + 360 = | |
| ☐ Application Size Fee – If the application transmittals, data sheet, specification, claims, abstract, drawings, and preliminary amendment exceed 100 sheets of paper, enter number of sheets here:<br>- If application is filed in paper form, enter this number in Total Sheets, below.<br>- If application is filed via EFS-Web, multiply this number by 0.75 and enter result in Total Sheets, below. | | | | | | | |
| Total Sheets = | – 100 = | ÷ 50 = | (round **up** to a whole number) | x 125 = | | x 250 = | |
| ☐ Assignment Fee | | | | + 40 = | | + 40 = | |
| ☐ Early Publication Fee | | | | + 300 = | | + 300 = | |
| **TOTAL AMOUNT TO BE CHARGED** | | | | TOTAL | | TOTAL | $1,250 |

**UTILITY PATENT APPLICATION TRANSMITTAL**

Attorney Docket No. 701554
Client Reference No. 201659

22. ☒ Please charge my Deposit Account No. 12-1216 in the amount of $1,250.00.

23. ☐ A check in the amount of $ is enclosed.

24. The Commissioner is hereby authorized to credit overpayments or charge any additional fees of the following types to Deposit Account No. 12-1216:
   a. ☒ Fees required under 37 CFR 1.16.
   b. ☒ Fees required under 37 CFR 1.17.

25. ☒ The Commissioner is hereby generally authorized under 37 CFR 1.136(a)(3) to treat any future reply in this or any related application filed pursuant to 37 CFR 1.53 requiring an extension of time as incorporating a request therefor, and the Commissioner is hereby specifically authorized to charge Deposit Account No. 12-1216 for any fee that may be due in connection with such a request for an extension of time.

| 26. CORRESPONDENCE ADDRESS | |
|---|---|
| ☒ Customer Number: 23460<br><br>23460 | ☐ , R eg. No.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza, Suite 4900<br>180 North Stetson Avenue<br>Chicago, Illinois 60601-6731<br>(312) 616-5600 (telephone)<br>(312) 616-5700 (facsimile) |

| | |
|---|---|
| Name | John Kilyk, Jr., Registration No. 30,763 |
| Signature | John Kilyk, Jr. |
| Date | April 27, 2007 |



KAN0000294

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | 701554 |
| Client Reference No. | 201659 |
| First Inventor | Ueda et al. |
| Title | STABILIZATION METHOD OF REDUCED COENZYME $Q_{10}$ |

**APPLICATION ELEMENTS**

*ADDRESS TO:* Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

1. ☒ Utility Patent Application Transmittal Form
2. ☐ Applicant claims small entity status. See 37 CFR 1.27.
3. ☒ Specification (including claims and abstract) [Total Pages 32]
4. ☒ Drawings [Total Sheets 2]
5. ☐ Combined Declaration and Power of Attorney [Total Pages ]
   a. ☐ Newly executed
   b. ☐ Copy from prior application [Note Box 6 below]
      i. ☐ Deletion of Inventor(s) Signed statement attached deleting inventor(s) named in the prior application
6. ☐ Incorporation by Reference: The entire disclosure of the prior application, from which an oath or declaration is supplied under Box 5b is considered as part of the disclosure of the accompanying application and is hereby incorporated by reference.
7. ☒ Application Data Sheet. See 37 CFR 1.76
8. ☐ CD-ROM or CD-R in duplicate, large table or Computer Program (Appendix)
9. Nucleotide and/or Amino Acid Sequence Submission
   a. ☐ Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper Copy
   c. ☐ Statement verifying identity of above copies

**ACCOMPANYING APPLICATION PARTS**

10. ☐ Applicant requests early publication. (include publication fee under 37 CFR 1.18(d))
11. ☐ Assignment Papers (cover sheet and document(s))
12. ☐ 37 CFR 3.73(b) Statement (when there is an Assignee)
13. ☐ Power of Attorney
14. ☐ English Translation Document (if applicable)
15. ☐ Information Disclosure Statement (IDS)
    ☐ Form PTO-1449
    ☐ Copies of References (except for U.S. patents and applications)
16. ☐ Preliminary Amendment
17. ☐ Return Receipt Postcard (Should be specifically itemized)
18. ☐ Claim of Priority & Certified Copy of Priority Document(s)
19. ☐ Request & Certification Under 35 USC 122(b)(2)(B)(i) (Form PTO/SB/35 or its equivalent must be submitted with this application to prevent publication at 18 months)
20. ☐

21. If a CONTINUING APPLICATION, check appropriate box and supply the requisite information below:
☐ Continuation ☐ Divisional ☐ Continuation-in-part of prior application no. .
Prior application information: Examiner ; Group Art Unit:

**APPLICATION FEES**

| | | | | SMALL ENTITY | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | | | FILING FEE | $75 (EFS) | | $300 | |
| | | | SEARCH FEE | $250 | | $500 | |
| | | | EXAM FEE | $100 | | $200 | |
| CLAIMS | NUMBER FILED | | NUMBER EXTRA | RATE | ADD'L CLAIM FEE | RATE | ADD'L CLAIM FEE |
| Total Claims | 21 | – 20 = | 1 | x 25 = | | x 50 = | $50 |
| Independent Claims | 4 | – 3 = | 1 | x 100 = | | x 200 = | $200 |
| ☐ First Presentation of Multiple Dependent Claim | | | | + 180 = | | + 360 = | |
| ☐ Application Size Fee – If the application transmittals, data sheet, specification, claims, abstract, drawings, and preliminary amendment exceed 100 sheets of paper, enter number of sheets here:<br>- If application is filed in paper form, enter this number in Total Sheets, below.<br>- If application is filed via EFS-Web, multiply this number by 0.75 and enter result in Total Sheets, below. | | | | | | | |
| Total Sheets = | – 100 = | ÷ 50 = | (round **up** to a whole number) | x 125 = | | x 250 = | |
| ☐ Assignment Fee | | | | + 40 = | | + 40 = | |
| ☐ Early Publication Fee | | | | + 300 = | | + 300 = | |
| **TOTAL AMOUNT TO BE CHARGED** | | | | TOTAL | | TOTAL | $1,250 |

**UTILITY PATENT APPLICATION TRANSMITTAL**

Attorney Docket No. 701554
Client Reference No. 201659

22. ☒ Please charge my Deposit Account No. 12-1216 in the amount of $1,250.00.

23. ☐ A check in the amount of $ is enclosed.

24. The Commissioner is hereby authorized to credit overpayments or charge any additional fees of the following types to Deposit Account No. 12-1216:
    a. ☒ Fees required under 37 CFR 1.16.
    b. ☒ Fees required under 37 CFR 1.17.

25. ☒ The Commissioner is hereby generally authorized under 37 CFR 1.136(a)(3) to treat any future reply in this or any related application filed pursuant to 37 CFR 1.53 requiring an extension of time as incorporating a request therefor, and the Commissioner is hereby specifically authorized to charge Deposit Account No. 12-1216 for any fee that may be due in connection with such a request for an extension of time.

| 26. CORRESPONDENCE ADDRESS | |
|---|---|
| ☒ Customer Number: 23460<br><br>23460 | ☐ , R eg. No.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza, Suite 4900<br>180 North Stetson Avenue<br>Chicago, Illinois 60601-6731<br>(312) 616-5600 (telephone)<br>(312) 616-5700 (facsimile) |

| | |
|---|---|
| Name | John Kilyk, Jr., Registration No. 30,763 |
| Signature | John Kilyk, Jr. |
| Date | April 27, 2007 |

# Application Data Sheet

## APPLICATION INFORMATION

| | |
|---|---|
| Application Number:: | |
| Filing Date:: | April 27, 2007 |
| Application Type:: | Regular |
| Subject Matter:: | Utility |
| Suggested classification:: | |
| Suggested Group Art Unit:: | |
| CD-ROM or CD-R?:: | None |
| Number of CD Disks: | |
| Number of Copies of CDs:: | |
| Sequence Submission?:: | |
| Computer Readable Form (CRF)?:: | |
| Number of Copies of CRF:: | |
| Title:: | STABILIZATION METHOD OF REDUCED COENZYME $Q_{10}$ |
| Attorney Docket Number:: | 701554 |
| Request for Early Publication?:: | No |
| Request for Non-Publication?:: | No |
| Suggested Drawing Figure:: | 1 |
| Total Drawing Sheets:: | 2 |
| Small Entity?:: | No |
| Latin Name:: | |
| Variety denomination name:: | |
| Petition Included?:: | |
| Petition Type:: | |
| Licensed US Govt. Agency:: | |
| Contract or Grant Numbers:: | |
| Secrecy Order in Parent Appl.?:: | No |

## APPLICANT INFORMATION

| | |
|---|---|
| Applicant Authority Type:: | Inventor |
| Primary Citizenship Country:: | Japan |
| Status:: | Full Capacity |
| Given Name:: | Takahiro |
| Middle Name:: | |
| Family Name:: | UEDA |
| Name Suffix:: | |
| City of Residence:: | Kobe-shi |
| State or Prov. of Residence:: | Hyogo |
| Country of Residence:: | Japan |
| Street of mailing address:: | 6-31-17, Shioya-cho, Tarumi-ku |
| City of mailing address:: | Kobe-shi |
| State or Province of mailing address:: | Hyogo |
| Country of mailing address:: | Japan |
| Postal or Zip Code of mailing address:: | 655-0872 |

| | |
|---|---|
| Applicant Authority Type:: | Inventor |
| Primary Citizenship Country:: | Japan |
| Status:: | Full Capacity |
| Given Name:: | Shiro |
| Middle Name:: | |
| Family Name:: | KITAMURA |
| Name Suffix:: | |
| City of Residence:: | Akashi-shi |
| State or Prov. of Residence:: | Hyogo |
| Country of Residence:: | Japan |
| Street of mailing address:: | 1-10-36-601, Aioi-cho |
| City of mailing address:: | Akashi-shi |
| State or Province of mailing address:: | Hyogo |

| | |
|---|---|
| Country of mailing address:: | Japan |
| Postal or Zip Code of mailing address:: | 673-0882 |

| | |
|---|---|
| Applicant Authority Type:: | Inventor |
| Primary Citizenship Country:: | Japan |
| Status:: | Full Capacity |
| Given Name:: | Hiroshi |
| Middle Name:: | |
| Family Name:: | KUBO |
| Name Suffix:: | |
| City of Residence:: | Kobe-shi |
| State or Prov. of Residence:: | Hyogo |
| Country of Residence:: | Japan |
| Street of mailing address:: | 5-10-10-102, Nishimaiko, Tarumi-ku |
| City of mailing address:: | Kobe-shi |
| State or Province of mailing address:: | Hyogo |
| Country of mailing address:: | Japan |
| Postal or Zip Code of mailing address:: | 655-0048 |

| | |
|---|---|
| Applicant Authority Type:: | Inventor |
| Primary Citizenship Country:: | Japan |
| Status:: | Full Capacity |
| Given Name:: | Kazunori |
| Middle Name:: | |
| Family Name:: | HOSOE |
| Name Suffix:: | |
| City of Residence:: | Takasago-shi |
| State or Prov. of Residence:: | Hyogo |
| Country of Residence:: | Japan |
| Street of mailing address:: | 3-8-17, Nishihata |
| City of mailing address:: | Takasago-shi |
| State or Province of mailing address:: | Hyogo |

| | |
|---|---|
| Country of mailing address:: | Japan |
| Postal or Zip Code of mailing address:: | 676-0025 |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| Correspondence Customer Number:: | 23460 |
| Phone:: | (312) 616-5600 |
| Fax:: | (312) 616-5700 |
| E-mail Address:: | mail@leydig.com |

## REPRESENTATIVE INFORMATION

Representative Customer Number:: 23460

| Representative Designation:: | Registration Number:: | Representative Name:: |
|---|---|---|

## DOMESTIC PRIORITY INFORMATION

| Application:: | Continuity Type:: | Parent Application:: | Parent Filing Date:: |
|---|---|---|---|

## FOREIGN APPLICATION INFORMATION

| Country:: | Application Number:: | Filing Date:: | Priority Claimed |
|---|---|---|---|
| Japan | 2006-126897 | April 28, 2006 | Yes |

## ASSIGNEE INFORMATION

| | |
|---|---|
| Assignee name:: | Kaneka Corporation |
| Street of mailing address:: | 2-4, Nakanoshima 3-chome, Kita-ku |
| City of mailing address:: | Osaka-shi |
| State or Province of mailing address:: | Osaka |
| Country of mailing address:: | Japan |
| Postal or Zip Code of mailing address:: | 530-8288 |

# STABILIZATION METHOD OF REDUCED COENZYME $Q_{10}$

## BACKGROUND OF THE INVENTION

It is known that reduced coenzyme $Q_{10}$ can be obtained, for example, by a method comprising producing coenzyme $Q_{10}$ by a conventionally known method such as synthesis, fermentation, extraction from a naturally occurring substance and the like, and concentrating a reduced coenzyme $Q_{10}$ fraction in an eluate from chromatography and the like (see JP-A-10-109933). In this case, oxidized coenzyme $Q_{10}$ contained in the above-mentioned reduced coenzyme $Q_{10}$ can be reduced with a general reducing agent such as sodium borohydride, sodium dithionite (sodium hydrosulfite) and the like, and concentrated by chromatography, and that the reduced coenzyme $Q_{10}$ can also be obtained by a method comprising reacting existing highly pure coenzyme $Q_{10}$ with the above-mentioned reducing agent.

In addition, production methods for conveniently obtaining reduced coenzyme $Q_{10}$ are also disclosed (e.g., WO 03/06408, WO 03/06409 and WO 03/32967).

However, reduced coenzyme $Q_{10}$ is easily oxidized by molecular oxygen into oxidized coenzyme $Q_{10}$, and therefore, stabilization of reduced coenzyme $Q_{10}$ is an important issue when it is processed into a food, food with nutrient function claims, food for specified health use, nutritional product, nutritional supplement, animal drug, drink, feed, pet food, cosmetic, pharmaceutical product, therapeutic drug, prophylactic drug and the like, or a material or composition therefor, or preserved after processing and the like. Complete removal or blocking of oxygen during the above-mentioned processing and preservation is extremely difficult, and remaining or admixed oxygen particularly during heating for processing and long-term preservation exerts a markedly adverse effect. The above-mentioned oxidation is directly related to quality problems such as the by-product oxidized coenzyme $Q_{10}$.

As mentioned above, stabilization of reduced coenzyme $Q_{10}$ (protection of oxidation) is a highly important object. However, since reduced coenzyme $Q_{10}$ is not commercially available to date, the study of methods and compositions for stable retention of reduced coenzyme $Q_{10}$ has not been undertaken very much.

As a conventionally-known method for stably retaining reduced coenzyme $Q_{10}$, a method including addition of a reducing agent is known. However, some of the reducing agents used therefor are not suitable for food and pharmaceutical agents. For example, WO 01/52822, which discloses a composition concurrently containing a reducing agent and a production method thereof, also discloses (1) a composition comprising reduced coenzyme $Q_{10}$; a reducing agent in an amount effective for eliminating oxidation of reduced coenzyme $Q_{10}$ into oxidized coenzyme $Q_{10}$; a surfactant, vegetable oil or a mixture thereof in an amount effective for dissolving the above-mentioned reduced coenzyme $Q_{10}$ and the above-mentioned reducing agent; and a solvent as necessary, (2) a composition for oral administration wherein the above-mentioned composition is prepared into a gelatin capsule or a tablet, and (3) a method of preparing the above-mentioned composition containing reduced coenzyme $Q_{10}$ in situ using oxidized coenzyme $Q_{10}$ and a reducing agent. However, no detailed description relating to the quality, stabilizing effect and the like of the reduced coenzyme $Q_{10}$ contained in the composition is provided, and the expected level of stabilization is not clear.

In addition, the above-mentioned composition and preparation method thereof are highly complicated and complex since plural roles are conferred to the composition (i.e., firstly, a role as a reaction site for reducing oxidized coenzyme $Q_{10}$ to reduced coenzyme $Q_{10}$, and secondly, a role of stably retaining reduced coenzyme $Q_{10}$). Moreover, the above-mentioned composition and a preparation method thereof are not entirely safe because the reaction mixture is used as it is. In other words, ascorbic acids to be used as reducing agents are

oxidized to produce a considerable amount of dehydroascorbic acids, and the dehydroascorbic acids get mixed in with the above-mentioned composition, posing a problem. Dehydroascorbic acids and oxalic acid produced by decomposition from dehydroascorbic acids are highly noxious, unlike ascorbic acids. For example, an increased amount of lipid peroxide and a decreased amount of antioxidants in the liver and kidney, and an increased amount of oxalic acid in the kidney have been reported, and side effects such as decreased resistance to oxidation stress, easy onset of ureteral lithiasis (Nutrition Research Vol. 13, page 667-676, 1993) and the like are feared.

## SUMMARY OF THE INVENTION

The present invention aims at providing a convenient and preferable method and a composition for stably retaining reduced coenzyme $Q_{10}$ by protection against oxidation while maintaining high safety, during processing into a food, food with nutrient function claims, food for specified health use, nutritional product, nutritional supplement, animal drug, drink, feed, pet food, cosmetic, pharmaceutical product, therapeutic drug, prophylactic drug containing reduced coenzyme $Q_{10}$ and the like, or a material or composition therefor, and/or preservation after processing and the like.

The present inventors have conducted intensive studies in an attempt to solve the above-mentioned problems and found that reduced coenzyme $Q_{10}$ can be stabilized by the co-presence of reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$, which are analogs of reduced coenzyme $Q_{10}$.

That is, they have found that reduced coenzyme $Q_{10}$ can be stably retained by protecting the reduced coenzyme $Q_{10}$ from oxidation by the co-presence of reduced coenzyme $Q_9$ (not less than 0.6 wt% relative to reduced coenzyme $Q_{10}$) and/or reduced coenzyme $Q_{11}$, even when a reducing agent is not used as a necessary component to be added, which resulted in the completion of the present invention.

Accordingly, the present invention provides the following e mbodiments.

[1] A method for stabilizing reduced coenzyme $Q_{10}$, which method comprises preparing a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$,

thereby stabilizing reduced coenzyme $Q_{10}$.

[2] The method of [1], wherein the amount of the reduced coenzyme $Q_9$ is not less than 1 wt% relative to reduced coenzyme $Q_{10}$.

[3] The method of [1], wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

[4] The method of [1]-[3], wherein the method comprises

preparing one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

[5] The method of [1]-[3], wherein the method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ and one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

[6] The method of [1]-[5], wherein the reduced coenzyme $Q_{10}$-containing composition is prepared under a deoxygenation atmosphere.

[7] A reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$.

[8] The composition of [7], wherein the amount of the reduced coenzyme $Q_9$ is not less than 1 wt% relative to reduced coenzyme $Q_{10}$.

[9] The composition of [7], wherein the composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

[10] The composition of [7]-[9], wherein the reduced coenzyme $Q_{10}$ is in crystalline form.

[11] The composition of [7]-[9], wherein the reduced coenzyme $Q_{10}$ is dissolved or suspended in a solvent.

[12] The composition of [7]-[9], wherein the reduced coenzyme $Q_{10}$ is a melt.

[13] The composition of [7]-[12], which further comprises a pharmaceutically acceptable carrier.

[14] The composition of [7]-[13], which is in a form suitable for administration to a mammal and comprises reduced coenzyme $Q_{10}$ as an active ingredient.

[15] The composition of [7]-[14], which further comprises at least one component selected from the group consisting of an excipient, a disintegrant, a lubricant, a binder, an antioxidant, a coloring agent, an anticoagulant, an absorption promoter, a solubilizing agent for the active ingredient, a stabilizer, an active ingredient other than reduced coenzyme $Q_{10}$, and combinations thereof.

[16] An oral dosage form comprising the composition of [15], which dosage form is a capsule.

[17] The oral dosage form of [16], wherein the capsule is a microcapsule, a soft capsule, or a hard capsule.

[18] A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

preparing one or both of (a) reduced coenzyme $Q_9$ and (b) reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$.

[19] The method of [18], wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

[20] A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$.

[21] The method of [20], wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

**BRIEF DESCRIPTION OF THE DRAWINGS**

Fig. 1 is a bar graph that sets forth the concentration of the total coenzyme Q (μg/ml) in plasma from male and female rats following administration of (1) corn oil (control), (2) reduced coenzyme $Q_9$, and (3) reduced coenzyme $Q_{10}$ as set forth in Example 3.

Fig. 2 is a bar graph that sets forth the concentration of the total coenzyme Q (μg/ml) in plasma from male rats following the administration of (1) reduced coenzyme $Q_{10}$ or (2) a reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_{11}$ mixture as set forth in Example 4.

**DETAILED DESCRIPTION OF THE INVENTION**

According to the present invention, a stabilization method of reduced coenzyme $Q_{10}$ can be provided by a mere co-presence of an analog of reduced coenzyme $Q_{10}$ even when multiple components, particularly a reducing agent, are not used as necessary components to protect the reduced coenzyme $Q_{10}$ from oxidation. Therefore, highly safe reduced coenzyme $Q_{10}$ can be provided, which is free of a noxious substance such as dehydroascorbic acid, oxalic acid and the like produced when ascorbic acid and the like is used as a reducing agent.

Moreover, reduced coenzyme $Q_9$ and reduced coenzyme $Q_{11}$ show the same effect in the body as reduced coenzyme $Q_{10}$. Therefore, when reduced coenzyme $Q_9$ and reduced coenzyme $Q_{11}$ contained in reduced coenzyme $Q_{10}$ are ingested, the effect of the reduced coenzyme $Q_{10}$ is not prevented, and a greater effect of coenzyme Q can be exhibited as compared to a composition containing reduced coenzyme $Q_{10}$ alone, and the like. Furthermore, since the absorbability of reduced coenzyme $Q_9$ in the body is greater than that of reduced coenzyme $Q_{10}$, a composition containing reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ in combination shows higher absorbability in terms of the total amount of coenzyme Q.

The present invention is explained in detail below. In the present specification, the phrase "coenzyme $Q_{10}$," when simply expressed includes the oxidized form, the reduced form, and/or a mixture thereof when they are both present.

In the present invention, reduced coenzyme $Q_{10}$ can contain oxidized coenzyme $Q_{10}$. When oxidized coenzyme $Q_{10}$ is also present, the proportion of reduced coenzyme $Q_{10}$ in the total amount of coenzyme $Q_{10}$ (i.e., the total amount of reduced coenzyme $Q_{10}$ and oxidized coenzyme $Q_{10}$) is not particularly limited. Preferably, the proportion of reduced coenzyme $Q_{10}$ in the total amount of coenzyme $Q_{10}$ is not less than 20 wt% (e.g., not less than 25 wt%, not less than 30 wt%, not less than 35 wt%, not less than 40 wt%, not less than 45 wt%, not less than 50 wt%, not less than 60 wt%, not less than 65 wt%, not less than 70 wt%,

not less than 75 wt%, not less than 80 wt%, not less than 85 wt%, not less than 90%, not less than 95%, or not less than 96%). While the upper limit is not particularly limited (i.e., the upper limit can be 100 wt%), typically the upper limit is not more than 99.9 wt% (e.g., not more than 99.5 wt%, or not more than 99.0 wt%).

Reduced coenzyme $Q_{10}$ can be obtained by various methods as mentioned above. For example, reduced coenzyme $Q_{10}$ having a high proportion of reduced coenzyme $Q_{10}$ relative to the total amount of coenzyme $Q_{10}$ can be efficiently obtained by the method described in WO 03/06408.

The stabilization method of the reduced coenzyme $Q_{10}$ of the present invention (hereinafter to be also referred to as the stabilization method of the present invention) is a method characterized by the co-presence of (a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and/or (b) reduced coenzyme $Q_{11}$, which suppresses oxidation of reduced coenzyme $Q_{10}$ into oxidized coenzyme $Q_{10}$ by molecular oxygen, and stably retains the reduced coenzyme $Q_{10}$.

While the amount of reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ contained in reduced coenzyme $Q_{10}$ is not particularly limited, the amount of the reduced coenzyme $Q_9$ is generally not less than about 0.6 wt%, preferably not less than about 1 wt%, more preferably not less than about 1.5 wt%, more preferably not less than about 2 wt%, and most preferably not less than about 3 wt%, relative to reduced coenzyme $Q_{10}$.

The amount of reduced coenzyme $Q_{11}$ is generally not less than about 0.1 wt%, preferably not less than about 0.5 wt%, and more preferably not less than about 1 wt%, relative to reduced coenzyme $Q_{10}$.

While the upper limit of reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ contained in reduced coenzyme $Q_{10}$ is not particularly limited, it is generally not more than about 99 wt% (e.g., not more than about 90 wt%, not more than about 80 wt%, not more than about 70 wt%, not more than about 60 wt%, not more

than about 50 wt%, or not more than about 40 wt%). Both reduced coenzyme $Q_9$ and reduced coenzyme $Q_{11}$ can be present with reduced coenzyme $Q_{10}$.

In the stabilization method of the present invention, the aforementioned (a) and/or (b) can be separately prepared by any suitable technique. For example, the separate preparation can be preparation by extraction and purification from a naturally occurring substance, reduction of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ according to the aforementioned method described in WO 03/06408, or coupling reaction of isoprenyl side chain with 2-methyl-5,6-dimethoxy-1,4-benzohydroquinone and the like. The reduced coenzyme $Q_{10}$ can also be stabilized by adding (a) and/or (b) obtained by such preparation to reduced coenzyme $Q_{10}$.

The stabilization method of the present invention also includes the co-presence of reduced coenzyme $Q_{10}$ and (a) and/or (b) by the reduction of oxidized coenzyme $Q_{10}$ containing oxidized coenzyme $Q_9$ and/or oxidized coenzyme $Q_{11}$.

The method of reducing oxidized coenzyme $Q_{10}$ containing oxidized coenzyme $Q_9$ and/or oxidized coenzyme $Q_{11}$ can be performed according to the method described in WO 03/06408 and the like.

The reduced coenzyme $Q_{10}$-containing composition of the present invention (hereinafter to be also referred to as the composition of the present invention) is a composition characterized by the co-presence of (a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and/or (b) reduced coenzyme $Q_{11}$.

Preferable amounts of reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ to be contained in reduced coenzyme $Q_{10}$ are as mentioned above.

The composition of the present invention can be obtained by adding separately prepared reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ to reduced coenzyme $Q_{10}$, or reducing oxidized

coenzyme $Q_{10}$ containing oxidized coenzyme $Q_9$ and/or oxidized coenzyme $Q_{11}$.

The production method of the reduced coenzyme $Q_{10}$-containing composition of the present invention (hereinafter to be also referred to as the production method of the present invention) is a production method of a reduced coenzyme $Q_{10}$-containing composition comprising the aforementioned (a) and/or (b) in combination, which includes separately preparing and adding (a) and/or (b).

The production method of reduced coenzyme $Q_{10}$ containing reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ is not particularly limited. The step of separately preparing and adding (a) and/or (b) can be a step for adding (a) and/or (b) separately prepared as mentioned above. The preparation and addition can be performed by any suitable method known in the art.

The production method of the present invention includes a step of reducing oxidized coenzyme $Q_{10}$ containing of oxidized coenzyme $Q_9$ (not less than 0.6 wt% relative to oxidized coenzyme $Q_{10}$) and/or oxidized coenzyme $Q_{11}$. By this step, reduced coenzyme $Q_{10}$-containing composition containing (a) and/or (b) in combination (and in the previously mentioned amounts) can be finally obtained.

The method (step) of reducing oxidized coenzyme $Q_{10}$ containing oxidized coenzyme $Q_9$ and/or oxidized coenzyme $Q_{11}$, and the method (step) of adding reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ prepared separately, can be employed in combination.

The form of the reduced coenzyme $Q_{10}$-containing composition containing reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ in combination of the present invention is not particularly limited, and can be a crystal; dissolved or suspended in a solvent; a melt maintained at not less than the melting point; or in a form for administration to mammals such as an agent for oral administration, external preparation and the like.

In the present invention, the form of contact between reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ is not particularly limited. For example, reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ can be present as crystals, or dissolved and/or suspended in any solvent. Also, reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$ can be dissolved in a melted solution of reduced coenzyme $Q_{10}$.

As the solvent usable in the present invention is not particularly limited, and hydrocarbons, fatty acid esters, ethers, alcohols, fatty acids, ketones, nitrogen compounds (including nitriles and amides), sulfur compounds, fats and oils, water and the like can be used. These solvents can be a mixture of any two or more kinds of solvents.

The suitable hydrocarbons are not particularly limited. For example, aliphatic hydrocarbon, aromatic hydrocarbon, halogenated hydrocarbon and the like can be used. Aliphatic hydrocarbon and aromatic hydrocarbon are preferable, and aliphatic hydrocarbon is especially preferable.

Aliphatic hydrocarbons can be cyclic or non-cyclic, saturated or unsaturated, and are not particularly limited. Generally, saturated aliphatic hydrocarbons are preferably used.

Aliphatic hydrocarbons having 3 to 20 carbon atoms, particularly 5 to 12 carbon atoms, especially 5 to 8 carbon atoms, are preferably used. Specific examples include propane, butane, isobutane, pentane, 2-methylbutane, hexane, 2-methylpentane, 2,2-dimethylbutane, 2,3-dimethylbutane, heptane, heptane isomer (e.g., 2-methylhexane, 3-methylhexane, 2,3-dimethylpentane, 2,4-dimethylpentane), octane, 2,2,3-trimethylpentane, isooctane, nonane, 2,2,5-trimethylhexane, decane, dodecane, 2-pentene, 1-hexene, 1-heptene, 1-octene, 1-nonene, 1-decene, cyclopentane, methylcyclopentane, cyclohexane, methylcyclohexane, ethylcyclohexane, p-menthane, cyclohexene and the like.

Of these, pentane, 2-methylbutane, hexane, 2-methylpentane, 2,2-dimethylbutane, 2,3-dimethylbutane, heptane, heptane isomer

(e.g., 2-methylhexane, 3-methylhexane, 2,3-dimethylpentane, 2,4-dimethylpentane), octane, 2,2,3-trimethylpentane, isooctane, nonane, 2,2,5-trimethylhexane, decane, dodecane, cyclopentane, methylcyclopentane, cyclohexane, methylcyclohexane, ethylcyclohexane, p-menthane and the like are preferable, and particularly, pentane, 2-methylbutane, hexane, 2-methylpentane, 2,2-dimethylbutane, 2,3-dimethylbutane, heptane, heptane isomer (e.g., 2-methylhexane, 3-methylhexane, 2,3-dimethylpentane, 2,4-dimethylpentane), octane, 2,2,3-trimethylpentane, isooctane, cyclopentane, methylcyclopentane, cyclohexane, methylcyclohexane, ethylcyclohexane and the like are preferable.

Pentanes having 5 carbon atoms (e.g., pentane etc.), hexanes having 6 carbon atoms (e.g., hexane, cyclohexane etc.), heptanes having 7 carbon atoms (e.g., heptane, methylcyclohexane etc.) and the like, as well as mixtures thereof (e.g., two or more heptanes) are preferably used. Heptanes (e.g., heptane, methylcyclohexane etc.) are most preferable, and heptane is especially preferable.

While aromatic hydrocarbons are not particularly limited, normally, an aromatic hydrocarbon having 6 to 20 carbon atoms, particularly 6 to 12 carbon atoms, especially 7 to 10 carbon atoms, is preferably used. Specific examples include benzene, toluene, xylene, o-xylene, m-xylene, p-xylene, ethylbenzene, cumene, mesitylene, tetralin, butylbenzene, p-cymene, cyclohexylbenzene, diethylbenzene, pentylbenzene, dipentylbenzene, dodecylbenzene, styrene and the like.

Of these, toluene, xylene, o-xylene, m-xylene, p-xylene, ethylbenzene, cumene, mesitylene, tetralin, butylbenzene, p-cymene, cyclohexylbenzene, diethylbenzene, pentylbenzene and the like are preferable, and particularly, toluene, xylene, o-xylene, m-xylene, p-xylene, cumene, tetralin and the like are preferable. Cumene is most preferable.

Halogenated hydrocarbons can be cyclic or non-cyclic, saturated or unsaturated, and are not particularly limited. In general, a non-cyclic halogenated hydrocarbon is preferably used.

Halogenated hydrocarbon having 1 to 6 carbon atoms, particularly 1 to 4 carbon atoms, especially 1 or 2 carbon atoms, are preferably used. Chlorinated hydrocarbon and fluorinated hydrocarbon are preferable, and chlorinated hydrocarbon is particularly preferable. Specific examples include dichloromethane, chloroform, carbon tetrachloride, 1,1-dichloroethane, 1,2-dichloroethane, 1,1,1-trichloroethane, 1,1,2-trichloroethane, 1,1,1,2-tetrachloroethane, 1,1,2,2-tetrachloroethane, pentachloroethane, hexachloroethane, 1,1-dichloroethylene, 1,2-dichloroethylene, trichloroethylene, tetrachloroethylene, 1,2-dichloropropane, 1,2,3-trichloropropane, chlorobenzene, 1,1,1,2-tetrafluoroethane and the like.

Of these, dichloromethane, chloroform, carbon tetrachloride, 1,1-dichloroethane, 1,2-dichloroethane, 1,1,1-trichloroethane, 1,1,2-trichloroethane, 1,1-dichloroethylene, 1,2-dichloroethylene, trichloroethylene, chlorobenzene, 1,1,1,2-tetrafluoroethane and the like preferably, particularly, dichloromethane, chloroform, 1,2-dichloroethylene, trichloroethylene, chlorobenzene, 1,1,1,2-tetrafluoroethane and the like are preferable.

Fatty acid esters are not particularly limited. For example, propionic acid ester, acetic acid ester, formic acid ester and the like can be used. Acetic acid ester and formic acid ester are preferable, and acetic acid ester is particularly preferable.

While the ester group is not particularly limited, alkyl ester or aralkyl ester having 1 to 8 carbon atoms, preferably aralkyl ester having 1 to 6 carbon atoms, more preferably aralkyl ester having 1 to 4 carbon atoms is preferably used.

Specific examples of propionic acid ester include methyl propionate, ethyl propionate, butyl propionate and isopentyl propionate.

Specific examples of acetic acid ester include methyl acetate, ethyl acetate, propyl acetate, isopropyl acetate, butyl acetate, isobutyl acetate, sec-butyl acetate, pentyl acetate,

isopentyl acetate, sec-hexyl acetate, cyclohexyl acetate, benzyl acetate and the like. Of these, methyl acetate, ethyl acetate, propyl acetate, isopropyl acetate, butyl acetate, isobutyl acetate, sec-butyl acetate, pentyl acetate, isopentyl acetate, sec-hexyl acetate, cyclohexyl acetate and the like are preferable. Methyl acetate, ethyl acetate, propyl acetate, isopropyl acetate, butyl acetate, isobutyl acetate and the like are more preferable, and ethyl acetate is particularly preferable.

Examples of formic acid ester include methyl formate, ethyl formate, propyl formate, isopropyl formate, butyl formate, isobutyl formate, sec-butyl formate, pentyl formate and the like.

Of these, methyl formate, ethyl formate, propyl formate, butyl formate, isobutyl formate, pentyl formate and the like are preferable. Ethyl formate is more preferable.

Ethers can be cyclic or non-cyclic, saturated or unsaturated, and are not particularly limited. In general, saturated ethers are preferably used.

Ether having 3 to 20 carbon atoms, particularly ether having 4 to 12 carbon atoms, especially ether having 4 to 8 carbon atoms, is preferably used. Specific examples include diethyl ether, methyl tert-butyl ether, dipropyl ether, diisopropyl ether, dibutyl ether, dihexyl ether, ethylvinyl ether, butylvinyl ether, anisole, phenetol, butylphenyl ether, methoxytoluene, dioxane, furan, 2-methylfuran, tetrahydrofuran, tetrahydropyran, ethylene glycol dimethyl ether, ethylene glycol diethyl ether, ethylene glycol dibutyl ether, ethylene glycol monomethyl ether, ethylene glycol monoethyl ether, ethylene glycol dibutyl ether and the like.

Of these, diethyl ether, methyl tert-butyl ether, dipropyl ether, diisopropyl ether, dibutyl ether, dihexyl ether, anisole, phenetol, butylphenyl ether, methoxytoluene, dioxane, 2-methylfuran, tetrahydrofuran, tetrahydropyran, ethylene glycol dimethyl ether, ethylene glycol diethyl ether, ethylene glycol dibutyl ether, ethylene glycol monomethyl ether, ethylene glycol

monoethyl ether and the like are preferable, and particularly, diethyl ether, methyl tert-butyl ether, anisole, dioxane, tetrahydrofuran, ethylene glycol monomethyl ether, ethylene glycol monoethyl ether and the like are preferable.

Diethyl ether, methyl tert-butyl ether, anisole, dioxane, tetrahydrofuran and the like are most preferable, and dioxane and tetrahydrofuran are particularly preferable.

Nitriles can be cyclic or non-cyclic, saturated or unsaturated, and are not particularly limited. In general, saturated nitriles are preferably used.

A nitrile having 2 to 20 carbon atoms, particularly a nitrile having 2 to 12 carbon atoms, especially nitrile having 2 to 8 carbon atoms, is preferably used. Specific examples include acetonitrile, propionitrile, malononitrile, butyronitrile, isobutyronitrile, succinonitrile, valeronitrile, glutaronitrile, hexanenitrile, heptyl cyanide, octyl cyanide, undecanenitrile, dodecanenitrile, tridecanenitrile, pentadecanenitrile, stearonitrile, chloroacetonitrile, bromoacetonitrile, chloropropionitrile, bromopropionitrile, methoxyacetonitrile, methyl cyanoacetate, ethyl cyanoacetate, tolunitrile, benzonitrile, chlorobenzonitrile, bromobenzonitrile, cyanobenzoic acid, nitrobenzonitrile, anisonitrile, phthalonitrile, bromotolunitrile, methylcyanobenzoate, methoxybenzonitrile, acetylbenzonitrile, naphtonitrile, biphenylcarbonitrile, phenylpropionitrile, phenylbutyronitrile, methylphenylacetonitrile, diphenylacetonitrile, naphthylacetonitrile, nitrophenylacetonitrile, chlorobenzyl cyanide, cyclopropanecarbonitrile, cyclohexanecarbonitrile, cycloheptanecarbonitrile, phenylcyclohexanecarbonitrile, tolylcyclohexanecarbonitrile and the like.

Alcohols can be cyclic or non-cyclic, saturated or unsaturated, and are not particularly limited. In general, a saturated alcohol is preferably used.

Normally, alcohol having 1 to 20 carbon atoms, particularly alcohol having 1 to 12 carbon atoms, especially

alcohol having 1 to 6 carbon atoms, particularly monovalent alcohol having 1 to 5 carbon atoms, divalent alcohol having 2 to 5 carbon atoms or trivalent alcohol having 3 carbon atoms is preferably used. Specific examples of these alcohols include methanol, ethanol, 1-propanol, 2-propanol, 1-butanol, 2-butanol, isobutyl alcohol, tert-butyl alcohol, 1-pentanol, 2-pentanol, 3-pentanol, 2-methyl-1-butanol, isopentyl alcohol, tert-pentyl alcohol, 3-methyl-2-butanol, neopentyl alcohol, 1-hexanol, 2-methyl-1-pentanol, 4-methyl-2-pentanol, 2-ethyl-1-butanol, 1-heptanol, 2-heptanol, 3-heptanol, 1-octanol, 2-octanol, 2-ethyl-1-hexanol, 1-nonanol, 1-decanol, 1-undecanol, 1-dodecanol, allyl alcohol, propargyl alcohol, benzyl alcohol, cyclohexanol, 1-methylcyclohexanol, 2-methylcyclohexanol, 3-methylcyclohexanol, 4-methylcyclohexanol, 2-methoxyethanol, 2-ethoxyethanol, 2-(methoxymethoxy)ethanol, 2-isoproxy ethanol, 2-butoxy ethanol, 2-(isopentyloxy)ethanol, 2-(hexyloxy)ethanol, furfuryl alcohol, diethylene glycol monomethyl ether, diethylene glycol monoethyl ether, diethylene glycol monobutyl ether, triethylene glycol monomethyl ether, 1-methoxy-2-propanol, 1-ethoxy-2-propanol, dipropylene glycol monomethyl ether, dipropylene glycol monoethyl ether, tripropylene glycol monomethyl ether, 1,2-ethanediol, 1,2-propanediol, 1,3-propanediol, 1,2-butanediol, 1,3-butanediol, 1,4-butanediol, 2,3-butanediol, 1,5-pentanediol, 2-butene-1,4-diol, 2-methyl-2,4-pentanediol, 2-ethyl-1,3-hexanediol, diethylene glycol, triethylene glycol, tetraethylene glycol, polyethylene glycol, dipropylene glycol, polypropylene glycol, glycerol and the like.

Preferable examples of monovalent alcohol include methanol, ethanol, 1-propanol, 2-propanol, 1-butanol, 2-butanol, isobutyl alcohol, tert-butyl alcohol, 1-pentanol, 2-pentanol, 3-pentanol, 2-methyl-1-butanol, isopentyl alcohol, tert-pentyl alcohol, 3-methyl-2-butanol, neopentyl alcohol, 1-hexanol, 2-methyl-1-pentanol, 4-methyl-2-pentanol, 2-ethyl-1-butanol, 1-heptanol, 2-heptanol, 3-heptanol, 1-octanol, 2-octanol, 2-ethyl-1-hexanol, 1-nonanol, 1-decanol, 1-undecanol, 1-dodecanol, benzyl alcohol,

cyclohexanol, 1-methylcyclohexanol, 2-methylcyclohexanol, 3-methylcyclohexanol, 4-methylcyclohexanol, 2-methoxyethanol, 2-ethoxyethanol, 2-(methoxymethoxy)ethanol and the like, and particularly, methanol, ethanol, 1-propanol, 2-propanol, 1-butanol, 2-butanol, isobutyl alcohol, tert-butyl alcohol, 1-pentanol, 2-pentanol, 3-pentanol, 2-methyl-1-butanol, isopentyl alcohol, tert-pentyl alcohol, 3-methyl-2-butanol, neopentyl alcohol, 1-hexanol, 2-methyl-1-pentanol, 4-methyl-2-pentanol, 2-ethyl-1-butanol, cyclohexanol and the like are preferable. Methanol, ethanol, 1-propanol, 2-propanol, 1-butanol, 2-butanol, isobutyl alcohol, tert-butyl alcohol, 1-pentanol, 2-pentanol, 3-pentanol, 2-methyl-1-butanol, isopentyl alcohol, tert-pentyl alcohol, 3-methyl-2-butanol, neopentyl alcohol and the like are particularly preferable.

Methanol, ethanol, 1-propanol, 2-propanol, 1-butanol, 2-butanol, isobutyl alcohol, 2-methyl-1-butanol, isopentyl alcohol and the like are most preferable. Methanol, ethanol, 1-propanol and 2-propanol are particularly preferable, and ethanol is especially preferable.

As divalent alcohol, 1,2-ethanediol, 1,2-propanediol, 1,3-propanediol, 2-butene-1,4-diol, 2-methyl-2,4-pentanediol, 2-ethyl-1,3-hexanediol, diethylene glycol, triethylene glycol, tetraethylene glycol, polyethylene glycol, dipropylene glycol, polypropylene glycol and the like are preferable. 1,2-propanediol and polyethylene glycol are most preferable. As a trivalent alcohol, glycerol is preferable.

Ketones are not particularly limited, and a ketone having 3 to 6 carbon atoms is generally preferable.

Specific examples of ketones include acetone, methylethylketone, methylbutylketone, methylisobutylketone and the like. Acetone and methylethylketone are preferable, and acetone is particularly preferable.

Examples of nitrogen compounds include nitromethane, acetonitrile, triethylamine, pyridine, formamide, N-methylformamide, N,N-dimethylformamide, N,N-dimethylacetamide,

N-methylpyrrolidone and the like, and acetonitrile is particularly preferable.

Examples of sulfur compounds include dimethyl sulfoxide, sulfolane and the like. Dimethyl sulfoxide is preferable.

Examples of fatty acids include formic acid, acetic acid, propionic acid, oleic acid, linoleic acid, linolenic acid and the like. Formic acid and acetic acid are preferable, and acetic acid is more preferable.

Fats and oils are not particularly limited, and can be natural fats and oils from plants and animals, synthetic fats and oils or processed fats and oils.

Examples of vegetable oil include olive oil, coconut oil, palm oil, palm kernel oil, flaxseed oil, camellia oil, brown rice germ oil, canola oil, rice oil, peanuts oil, corn oil, wheat germ oil, soy bean oil, perilla oil, cottonseed oil, sunflower kerel oil, kapok oil, evening primrose oil, shea butter, sal butter, cacao butter, sesame oil, safflower oil and the like, and examples of animal fats and oils include lard, milk fat, fish oil, beef fat and the like. Furthermore, fats and oils obtained by processing them by fractionation, hydrogenation, transesterification (e.g., hydrogenated oil) and the like also can be used. Medium-chain triglyceride (MCT), partial glyceride of fatty acid, phospholipid and the like can also be used.

Examples of medium-chain triglyceride include triglyceride wherein the fatty acid has 6 to 12 carbon atoms, preferably 8 to 12 carbon atoms. Examples of partial glyceride of fatty acid include monoglyceride and diglycerides wherein the fatty acid has 6 to 18 carbon atoms, preferably 6 to 12 carbon atoms.

Of the above-mentioned fats and oils, vegetable fats and oils, synthetic fats and oils and processed fats and oils are preferable from the aspects of handlability, odor and the like.

Fats and oils are preferably selected in consideration of the price of fats and oils, stability of reduced coenzyme $Q_{10}$, solubility of coenzyme $Q_{10}$ and the like.

For example, olive oil, coconut oil, palm oil, palm kernel oil, canola oil, rice oil, soy bean oil, cottonseed oil, MCT and the like are preferable, olive oil, rice oil, soy bean oil, canola oil, MCT and the like are particularly preferable.

From the aspect of the solubility of coenzyme $Q_{10}$, MCT can be particularly preferably used.

When the composition of the present invention is used for a food or pharmaceutical agent, ethanol, water and fats and oils usable for the food or pharmaceutical agent are preferably used, from among the above-mentioned solvents. The composition of the present invention can contain other appropriate materials, besides the above-mentioned solvent, such as a carrier. That is, the composition can comprise an excipient, disintegrant, lubricant, binder, antioxidant, coloring agent, anticoagulant, absorption promoter, solubilizing agent for the active ingredient, stabilizer, active ingredient other than reduced coenzyme $Q_{10}$, or combinations thereof. The carrier can be a pharmaceutically acceptable carrier.

The above-mentioned excipient is not particularly limited. For example, sucrose, lactose, glucose, cornstarch, mannitol, crystalline cellulose, calcium phosphate, calcium sulfate and the like can be used as an excipient.

The above-mentioned disintegrant is not particularly limited. For example, starch, agar, calcium citrate, calcium carbonate, sodium hydrogencarbonate, dextrin, crystalline cellulose, carboxymethylcellulose, tragacanth and the like can be used as a disintegrant.

While the above-mentioned lubricant is not particularly limited. For example, talc, magnesium stearate, polyethylene glycol, silica, hydrogenated vegetable oil and the like can be used as a lubricant.

The above-mentioned binder is not particularly limited. For example, ethylcellulose, methylcellulose, hydroxypropylmethylcellulose, tragacanth, shellac, gelatin, gum arabic, polyvinylpyrrolidone, polyvinyl alcohol, polyacrylic

acid, polymethacrylic acid, sorbitol and the like can be used as a binder.

The above-mentioned antioxidant is not particularly limited. For example, ascorbic acid, tocopherol, vitamin A, β-carotene, sodium hydrogensulfite, sodium thiosulfate, sodium pyrrosulfite, citric acid and the like can be used as an antioxidant.

The above-mentioned coloring agent is not particularly limited. For example, those allowed to be added to pharmaceutical products and food and the like can be used as a coloring agent.

The above-mentioned anticoagulant is not particularly limited. For example, stearic acid, talc, light anhydrous silicic acid, water-containing silicon dioxide and the like can be used as an anticoagulant.

The above-mentioned absorption promoter is not particularly limited. For example, higher alcohols, higher fatty acids, sucrose fatty acid ester, surfactants such as sorbitan fatty acid ester, sorbitan polyoxyethylene fatty acid ester and the like, and the like can be used as an absorption promoter.

The solubilizing agent for the above-mentioned active ingredient is not particularly limited. For example, organic acids such as fumaric acid, succinic acid, malic acid and the like, and the like can be used as a dissolution aid.

The above-mentioned stabilizer is not particularly limited. For example, benzoic acid, sodium benzoate, ethyl parahydroxybenzoate and the like can be used as a stabilizer.

The active ingredient other than the above-mentioned coenzyme $Q_{10}$ can be any other suitable active agent, such as an amino acid, vitamin, mineral, polyphenol, organic acid, saccharides, peptide, protein and the like.

While the amount of the reduced coenzyme $Q_{10}$ contained in the composition of the present invention is not particularly limited, the weight of the reduced coenzyme $Q_{10}$ contained in the whole composition is generally not less than about 0.01 wt%,

preferably not less than about 0.1 wt%, more preferably not less than about 1 wt%, particularly preferably not less than about 2 wt%, and more preferably not less than about 3 wt%.

While the upper limit is not particularly limited, it is generally not more than about 70%, preferably not more than about 60 wt%, and more preferably not more than about 50 wt% in consideration of the viscosity of the composition and the like.

When practicing the present invention, the temperature is not particularly limited. To exhibit the reduced coenzyme $Q_{10}$-stabilizing effect to the maximum, the temperature is normally not more than 50°C, preferably not more than 40°C, more preferably not more than 30°C.

When processing into a dosage form for the oral administration mentioned below, moreover, the composition of the present invention is more preferably a liquid (including not only solution but also suspension, slurry or liposome) at ambient temperature or a temperature not less than the ambient temperature.

While the composition of the present invention can be used as it is, the composition can be processed into a dosage form for oral administration such as capsule (microcapsule, hard capsule, soft capsule), tablet, syrup, drink and the like and used preferably.

In addition, it can be processed into a dosage form for parenteral administration such as cream, suppository, toothpaste and the like and used preferably. Particularly preferred is a capsule, especially a soft capsule.

The capsule base material is not particularly limited, and gelatin derived from beef bones, cattle skin, pig skin, fish skin and the like, and other base materials (e.g., gum stabilizers) that can be used as food additives, such as seaweed-derived products (e.g., carageenan, alginic acid and the like), vegetable seed-derived products (e.g., locust bean gum, guar gum and the like), agents for production (e.g., celluloses) and the like) can also be used.

The stabilization method and production method of the present invention are preferable performed in combination under a deoxygenation atmosphere. That is, to exert the effect of the invention to the maximum extent, for example, the method of the present invention is preferably performed and the composition of the present invention is preferably prepared and/or preserved under a deoxygenation atmosphere such as inert gas atmosphere (e.g., nitrogen atmosphere etc.) and the like.

The above-mentioned processing and preservation after processing are also preferably performed under the above-mentioned deoxygenation atmosphere such as inert gas atmosphere and the like.

As mentioned above, by the co-presence of reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$, the stability of reduced coenzyme $Q_{10}$ can be improved.

Reduced coenzyme $Q_9$ and reduced coenzyme $Q_{11}$ exhibit the same effect as provided by reduced coenzyme $Q_{10}$ in the body. Therefore, even when reduced coenzyme $Q_9$ and reduced coenzyme $Q_{11}$ contained in the reduced coenzyme $Q_{10}$ are ingested, they do not prevent the effect of the reduced coenzyme $Q_{10}$ but act in the same manner as the reduced coenzyme $Q_{10}$.

The present inventors have moreover studied intensively and found that the absorbability of reduced coenzyme $Q_9$ in the body is greater than that of the reduced coenzyme $Q_{10}$.

As mentioned above, since reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ act in the same manner in the body, a composition containing reduced coenzyme $Q_9$ and reduced coenzyme $Q_{10}$ in combination is expected to show higher absorption of coenzyme Q as a whole.

According to the present invention, reduced coenzyme $Q_{10}$ can be preferably protected from oxidation, and a composition free of an oxidation product of a reducing agent such as dehydroascorbic acids and the like can be provided optimally. Moreover, a composition showing high biological absorbability of reduced coenzyme $Q_{10}$ can also be provided.

**EXAMPLES**

The present invention is explained in more detail in the following by referring to Examples, which are not to be construed as limitative.

In Examples, the purity of reduced coenzyme $Q_{10}$, and the weight ratio of reduced coenzyme $Q_{10}$ and oxidized coenzyme $Q_{10}$ were determined by HPLC analysis as discussed below. However, the purity of the obtained reduced coenzyme $Q_{10}$ does not define the limit value of the purity in the present invention. Likewise, the proportion of reduced coenzyme $Q_{10}$ in the weight ratio of reduced coenzyme $Q_{10}$ and oxidized coenzyme $Q_{10}$ does not define the upper limit value thereof.

(HPLC analysis conditions)

column: SYMMETRY C18 (manufactured by Waters) 250 mm (length) 4.6 mm (inner diameter), mobile phase; $C_2H_5OH:CH_3OH=4:3$ (v:v), detection wavelength; 210 nm, flow rate; 1 ml/min, retention time of reduced coenzyme $Q_{10}$; 9.1 min, retention time of oxidized coenzyme $Q_{10}$; 13.3 min.

(Production Example 1)

Oxidized coenzyme $Q_{10}$ (100 g) and L-ascorbic acid (60 g) were added to 1000 g of ethanol, and the mixture was stirred at 78°C to perform a reduction reaction. After 30 hr, the mixture was cooled to 50°C, and 400 g of ethanol was added while maintaining at the same temperature. The ethanol solution (containing 100 g of reduced coenzyme $Q_{10}$) was cooled to 2°C at a cooling rate of 10°C/hr with stirring to give a white slurry. The obtained slurry was filtered under reduced pressure, the wet crystals were washed with cold ethanol, cold water and cold ethanol in this order (temperature of cold solvent used for washing, 2°C) and dried under reduced pressure (20 - 40°C, 1 - 30 mmHg) to give white dry crystals (95 g). All operations except reduced-pressure drying were performed under a nitrogen atmosphere. The weight ratio of reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$ of the obtained crystals was 99.4/0.6.

(Production Example 2)

Oxidized coenzyme $Q_9$ (10 g) and L-ascorbic acid (7 g) were added to 100 g of ethanol, and the mixture was stirred at 78°C to perform a reduction reaction. After 30 hr, the mixture was cooled to 50°C, and ethanol (40 g), hexane (140 g) and water (140 g) were added in this order while maintaining at the same temperature. After removing the aqueous layer, the organic layer was concentrated under reduced pressure to give reduced coenzyme $Q_9$ as crystals.

(Production Example 3)

The reduced coenzyme $Q_{10}$ (9.85 g) obtained in Production Example 1 and reduced coenzyme $Q_9$ (0.15 g) obtained in Production Example 2 were mixed to give reduced coenzyme $Q_{10}$ containing 1.5 wt% of reduced coenzyme $Q_9$ (reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$=99.4/0.6).

(Production Example 4)

Oxidized coenzyme $Q_{10}$ (10 g) containing 0.1% of oxidized coenzyme $Q_{11}$ and L-ascorbic acid (6 g) were added to 100 g of ethanol, and the mixture was stirred at 78°C to perform a reduction reaction. After 30 hr, the mixture was cooled to 50°C, and 40 g of ethanol and water (10 g) were added while maintaining the same temperature. The ethanol solution (containing 10 g of reduced coenzyme $Q_{10}$) was cooled to 2°C at a cooling rate of 10°C/hr with stirring to give a white slurry. The obtained slurry was filtered under reduced pressure, the wet crystals were washed with cold ethanol, cold water and cold ethanol in this order (temperature of cold solvent used for washing, 2°C) and dried under reduced pressure (20 - 40°C, 1 - 30 mmHg) to give white dry crystals (9.5 g). All operations except reduced-pressure drying were performed under a nitrogen atmosphere. The obtained crystals contained 0.1% of reduced coenzyme $Q_{11}$ and the weight ratio of reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$ of the obtained crystals was 99.4/0.6.

(Example 1)

The reduced coenzyme $Q_{10}$ (reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$=99.4/0.6) containing 1.5 wt% of reduced coenzyme $Q_9$

obtained in Production Example 3 and crystals of reduced coenzyme $Q_{10}$ (reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$=99.4/0.6) free of reduced coenzyme $Q_9$, which were obtained in Production Example 1, were maintained in a condition exposed to air at 25°C. The results of reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$ ratio after the lapse of 24 hr are shown in Table 1.

Table 1

| | weight ratio of reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$ |
|---|---|
| reduced coenzyme $Q_{10}$ containing 1.5% of reduced coenzyme $Q_9$ | 96.7/3.3 |
| reduced coenzyme $Q_{10}$ free of reduced coenzyme $Q_9$ | 95.5/4.5 |

(Example 2)

50 mg of the reduced coenzyme $Q_{10}$ (reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$=99.4/0.6) containing 1.5 wt% of reduced coenzyme $Q_9$ obtained in Production Example 3 or 50 mg of reduced coenzyme $Q_{10}$ (reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$=99.4/0.6) free of reduced coenzyme $Q_9$, which were obtained in Production Example 1, was added to 5 g of ethanol and stirred in the air at 25°C. The resulting reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$ ratio after stirring for 6 hr are shown in Table 2.

Table 2

| | weight ratio of reduced coenzyme $Q_{10}$/oxidized coenzyme $Q_{10}$ |
|---|---|
| reduced coenzyme $Q_{10}$ containing 1.5% of reduced coenzyme $Q_9$ | 90.2/9.8 |
| reduced coenzyme $Q_{10}$ free of reduced coenzyme $Q_9$ | 87.2/12.8 |

(Example 3)

Crj:CD (SD ) rats (5-week-old, 15 males, 15 females, body weight 260 g - 300 g) were divided into 3 groups (5 per group) for each of male and female. A first group was used as a control group, and corn oil (3 ml/kg) was orally administered once a day for 14 days. A second group was orally administered a corn oil solution of the reduced coenzyme $Q_9$ obtained in Production Example 2, which was prepared to meet the dose of reduced coenzyme $Q_9$ of 600 mg/kg, once a day for 14 days at a dose of 3 ml/kg. A third group was orally administered a corn oil solution of reduced coenzyme $Q_{10}$ obtained in Production Example 1, which was prepared to meet the dose of reduced coenzyme $Q_{10}$ of 600 mg/kg, once a day for 14 days at a dose of 3 ml/kg. At 24 hr after the final administration, blood samples were collected to give plasma samples. Using HPLC, the concentration of coenzyme Q in the obtained plasma was measured. The results are shown in the bar graph of Fig. 1.

In Fig. 1, the vertical axis shows the concentration of total coenzyme Q in the plasma, and each bar shows the average ±standard deviation. As is clear from Fig. 1, in both male and female, the concentration of total coenzyme Q in the plasma increased in the reduced coenzyme $Q_9$ administration group as compared to the reduced coenzyme $Q_{10}$ administration group.

(Preparation Example)

To a mixture of canola oil, diglycerol monooleate (Poem DO-100 V manufactured by Riken Vitamin), hydrogenated oil, bees wax and lecithin were added crystals of reduced coenzyme $Q_{10}$ containing 0.6 wt% of oxidized coenzyme $Q_{10}$ and 0.1 wt% of reduced coenzyme $Q_{11}$, and a soft capsule of gelatin containing 30 mg of reduced coenzyme $Q_{10}$ and having the following formulation was prepared by a conventional method.

| | |
|---|---|
| reduced coenzyme $Q_{10}$ | 10.0 wt% |
| diglycerolmonooleate | 32.0 wt% |

| | |
|---|---|
| canola oil | 33.0 wt% |
| hydrogenated oil | 17.0 wt% |
| bees wax | 6.0 wt% |
| lecithin | 2.0 wt% |

Example 4 (oral absorbability test)

Crj:CD(SD) rats (about 77-week-old, 10 male rats) were prepared. Reduced coenzyme $Q_{10}$ was orally administered to 5 of them, and a mixture of reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_{11}$ (containing 0.1% of reduced coenzyme $Q_{11}$) was orally administered to the remaining 5 of them, each as a 25 mg/ml soy bean oil solution at a dose of 4.0 ml/kg. At 2 hr from the administration, blood was drawn and centrifuged to give plasma samples. Using HPLC, the concentration of coenzyme $Q_{10}$ in the obtained plasma was measured. The results are shown in the bar graph of Fig. 2. As is clear from Fig. 2, the concentration of coenzyme $Q_{10}$ in the plasma was about 3.4 μg/ml resulting from the administration of both reduced coenzyme $Q_{10}$ and a mixture of reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_{11}$.

While some of the embodiments of the present invention have been described in detail above, those of ordinary skill in the art can enter various modifications and changes to the particular embodiments shown without substantially departing from the novel teaching and advantages of the present invention. Such modifications and changes are encompassed in the spirit and scope of the present invention as set forth in the appended claims.

This application is based on application No. 2006-126897 filed in Japan, the contents of which are incorporated hereinto by reference.

**CLAIMS**

1. A method for stabilizing reduced coenzyme $Q_{10}$, which method comprises preparing a reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$,

thereby stabilizing reduced coenzyme $Q_{10}$.

2. The method of claim 1, wherein the amount of the reduced coenzyme $Q_9$ is not less than 1 wt% relative to reduced coenzyme $Q_{10}$.

3. The method of claim 1, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

4. The method of claim 1, wherein the method comprises

preparing one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to the reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

5. The method of claim 1, wherein the method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition.

6. The method of claim 1, wherein the reduced coenzyme $Q_{10}$-containing composition is prepared under a deoxygenation

atmosphere.

7. A reduced coenzyme $Q_{10}$-containing composition comprising reduced coenzyme $Q_{10}$ and one or both of (a) and (b):

(a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$, and

(b) reduced coenzyme $Q_{11}$.

8. The composition of claim 7, wherein the amount of the reduced coenzyme $Q_9$ is not less than 1 wt% relative to reduced coenzyme $Q_{10}$.

9. The composition of claim 7, wherein the composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

10. The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is in crystalline form.

11. The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is dissolved or suspended in a solvent.

12. The composition of claim 7, wherein the reduced coenzyme $Q_{10}$ is a melt.

13. The composition of claim 7, which further comprises a pharmaceutically acceptable carrier.

14. The composition of claim 7, which is in a form suitable for administration to a mammal and comprises reduced coenzyme $Q_{10}$ as an active ingredient.

15. The composition of claim 7, which further comprises at least one component selected from the group consisting of an excipient, a disintegrant, a lubricant, a binder, an antioxidant, a

coloring agent, an anticoagulant, an absorption promoter, a solubilizing agent for the active ingredient, a stabilizer, an active ingredient other than reduced coenzyme $Q_{10}$, and combinations thereof.

16. An oral dosage form comprising the composition of claim 15, which dosage form is a capsule.

17. The oral dosage form of claim 16, wherein the capsule is a microcapsule, a soft capsule, or a hard capsule.

18. A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

preparing one or both of (a) reduced coenzyme $Q_9$ and (b) reduced coenzyme $Q_{11}$, and then

adding one or both of (a) the reduced coenzyme $Q_9$ and (b) the reduced coenzyme $Q_{11}$ to reduced coenzyme $Q_{10}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$.

19. The method of claim 18, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

20. A method for producing a reduced coenzyme $Q_{10}$-containing composition, which method comprises

providing a composition comprising oxidized coenzyme $Q_{10}$ with one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$, and then

reducing oxidized coenzyme $Q_{10}$ and reducing one or both of oxidized coenzyme $Q_9$ and oxidized coenzyme $Q_{11}$ to prepare the reduced coenzyme $Q_{10}$-containing composition,

wherein the composition comprises reduced coenzyme $Q_{10}$ and one or both of (a) not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$ and (b) reduced coenzyme $Q_{11}$.

21. The method of claim 20, wherein the reduced coenzyme $Q_{10}$-containing composition comprises not less than 0.6 wt% of reduced coenzyme $Q_9$ relative to reduced coenzyme $Q_{10}$.

**ABSTRACT OF THE DISCLOSURE**

The present invention provides a method for stabilizing reduced coenzyme $Q_{10}$, which is useful as a food, nutritional product, nutritional supplement, animal drug, drink, feed, cosmetic, pharmaceutical product, therapeutic drug, prophylactic drug and the like. The present invention also provides a method of producing a reduced coenzyme $Q_{10}$-containing composition which includes the co-presence of reduced coenzyme $Q_{10}$ and reduced coenzyme $Q_9$ and/or reduced coenzyme $Q_{11}$.

**Fig. 1**




**Total coenzyme Q in rat plasma**

**Fig. 2**




**Total coenzyme $Q_{10}$ in rat plasma**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| First Named Inventor/Applicant Name: | Takahiro UEDA |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Attorney Docket Number:** | 701554 |
| Filed as Large Entity | |

## Utility Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility application filing | 1011 | 1 | 300 | 300 |
| Utility Search Fee | 1111 | 1 | 500 | 500 |
| Utility Examination Fee | 1311 | 1 | 200 | 200 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 1202 | 1 | 50 | 50 |
| Independent claims in excess of 3 | 1201 | 1 | 200 | 200 |
| **Miscellaneous-Filing:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **1250** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 1724143 |
| **Application Number:** | 11741290 |
| **International Application Number:** | |
| **Confirmation Number:** | 2693 |
| **Title of Invention:** | STABILIZATION METHOD OF REDUCED COENZYME Q10 |
| **First Named Inventor/Applicant Name:** | Takahiro UEDA |
| **Customer Number:** | 23460 |
| **Filer:** | John Jr. Kilyk/Magdalena Greer |
| **Filer Authorized By:** | John Jr. Kilyk |
| **Attorney Docket Number:** | 701554 |
| **Receipt Date:** | 27-APR-2007 |
| **Filing Date:** | |
| **Time Stamp:** | 15:37:36 |
| **Application Type:** | Utility |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment was successfully received in RAM | $1250 |
| RAM confirmation Number | 279 |
| Deposit Account | 121216 |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 and 1.17

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | ApplicationTransmittal.pdf | 274451 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Application Data Sheet | ADS.pdf | 277686 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied ADS fillable form | | | | | |
| 3 | | Application.pdf | 3383668 | yes | 34 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Specification | 1 | 27 |
| Claims | 28 | 31 |
| Abstract | 32 | 32 |
| Drawings | 33 | 34 |

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Fee Worksheet (PTO-06) | fee-info.pdf | 8551 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 3944356 | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/SB/06 (12-04)

**4/27/2007**

Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD

Substitute for Form PTO-875

11/741,290

### APPLICATION AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE ($) | SMALL ENTITY FEE ($) | | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY FEE ($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | | | | | | | 300 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | | | | | | | 500 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | | | | | | | 200 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 21 minus 20 = | 1 | X$25= | | OR | X$50 | 50 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 4 minus 3 = | 1 | X$100= | | | X$200= | 200 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR | | | | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | N/A | | | N/A | |
| | | | TOTAL | | | TOTAL | 1250 |

* If the difference in column 1 is less than zero, enter "0" in column 2.

### APPLICATION AS AMENDED – PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | N/A | | OR | N/A | |
| | | | | | TOTAL ADD'T FEE | | OR | TOTAL ADD'T FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | N/A | | OR | N/A | |
| | | | | | TOTAL ADD'T FEE | | OR | TOTAL ADD'T FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*